# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON JORJANI,<br><br>**Plaintiff,**<br><br>v.<br><br>**NEW JERSEY INSTITUTE OF TECHNOLOGY**, *et al.*,<br><br>**Defendants.** | Docket No.: 18-cv-11693<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of New Jersey Institute of Technology's decision not to renew Plaintiff Jason Jorjani's contract as a philosophy lecturer. The matter comes before the Court on Plaintiff's motion to amend. ECF Nos. 17-18. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

The underlying facts of this matter are set forth in the Court's March 11, 2019 Opinion, familiarity with which is assumed. ECF No. 14. In short, in Fall 2017, Plaintiff Jason Jorjani ("Plaintiff") worked as a contracted philosophy lecturer at Defendant New Jersey Institute of Technology ("NJIT"). Plaintiff was surreptitiously recorded making statements regarding the future of European politics and other controversial topics. On September 19, 2017, the New York Times ("NYT") published an op-ed ("Op-Ed") containing an edited version of the recorded conversation ("Recording").

After viewing the Op-Ed and Recording—and allegedly knowing it was heavily edited—Defendants Joel S. Bloom (President of NJIT) and Kevin J. Belfield (Dean of the NJIT College of Science and Liberal Arts) sent a faculty- and staff-wide email condemning the views expressed in the Recording ("B&B Email"). Five days later, NJIT suspended Plaintiff and launched an investigation. Over the next several weeks, Defendants Gareth J. Russel (Chair of the NJIT Biology Department), Andrew Klobucar (Chair of the NJIT Biology Department), and Neil J. Maher (Chairman of the NJIT Federated Department of History) (collectively, "Individual Defendants" and with NJIT, "Defendants") made statements condemning the views expressed in the Recording and described in the Op-Ed

---

[1] The following facts, taken from the Complaint and documents "integral to or explicitly relied upon in the [C]omplaint," are accepted as true for the purpose of this Opinion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

1

(with the B&B Email, "Statements"). On February 13, 2018, Plaintiff learned his employment contract would not be extended beyond the 2017-2018 school year.

Plaintiff filed suit complaining of First-Amendment retaliation by NJIT and defamation by the Individual Defendants based on the Statements. Defendants moved to dismiss the defamation counts with prejudice pursuant to FRCP 12(b)(6). ECF No. 9. On March 11, 2019, the Court granted Defendants' motion except that those counts dismissed for lack of malice could be replead. ECF Nos. 14-15.

On April 8, 2019, Plaintiff filed the present motion (1) informing the Court that Plaintiff would not replead the defamation counts but (2) seeking leave to add causes of action for (a) conspiracy to violate First Amendment rights and (b) tortious interference with a contract and prospective economic advantage. Mot, ECF No. 17-2 ¶¶ 6-7.

## II. DISCUSSION

Defendants oppose Plaintiff's motion to amend, arguing the proposed claims are futile. Opp., ECF No. 21. Plaintiff disagrees. *See* Reply, ECF No. 22.

### A. Standard of Review

Federal Rule of Civil Procedure 15(a) governs motions to amend. At this stage, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave is in the court's discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). The proposed amended claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Conspiracy to Violate Plaintiff's Civil Rights (Proposed Count Two)

In the proposed second count, Plaintiff alleges Defendants Bloom and Belfield "conspired together and with others, and reached a mutual understanding to engage in a course of conduct, to deprive Plaintiff of . . . his right[s] to free association and free speech." Proposed Amended Complaint ("PAC") ¶ 63, ECF No. 17-3. Overt acts include Bloom and Belfield's September 20, 2017 email ("B&B Email") and the investigation and suspension of Plaintiff. PAC ¶ 65.

Defendants argue Plaintiff's proposed conspiracy claim "consists solely of conclusory assertions loosely tied to the elements of a claim." Opp. at 11. However, Defendants primarily cite cases decided on a summary judgment standard or after courts

determined no underlying constitutional deprivation had occurred. *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (no constitutional deprivation); *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 547 (D.N.J. 2013) (finding unsupported allegations insufficient at summary judgment stage).

At the motion to dismiss stage, Plaintiff need only *allege* "that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (superseded by statute on other grounds). The alleged facts must show an actual meeting of the minds. *Prince v. Aiellos*, No. 09-cv-5429, 2010 WL 4025846, at *7 (D.N.J. Oct. 12, 2010). Specifically:

> Plaintiff's allegations of a conspiracy must provide some factual basis to support the existence of [an] agreement and concerted action. In this regard, a plaintiff must allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law. It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. To the contrary, Plaintiff must show that the alleged conspirators directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement.

*Id.* (cleaned up).

Here, Plaintiff alleges Bloom and Belfield initiated a campaign against Plaintiff by sending their September 20, 2017 email ("B&B Email"), which stated:

> NJIT is a university that embraces diversity and sees it as a source of strength. The statements made by Mr. Jorjani in a video recently published by The New York Times are repugnant and antithetical to our institution's core values.

PAC ¶ 35. Plaintiff also alleges "Defendants Bloom and Belfield were clearly signaling that they supported an intellectual witch hunt against Plaintiff, for they explicitly took issue with off campus statements allegedly made by Plaintiff [and] resolved to subject Plaintiff to both institutional censorship and discipline." PAC ¶ 39-40. Further, Plaintiff alleges Bloom "caused an investigation to be made." PAC ¶ 44.

While close, these allegations are sufficient to allege a meeting of the minds to end Plaintiff's association with NJIT, which Plaintiff asserts violated his constitutional rights.[2] By jointly issuing the B&B Email, the Court can infer Bloom and Belfield agreed on the language, including that Plaintiff's statements were "repugnant and antithetical to [NJIT's] core values." Given their positions as President of NJIT and Dean of Plaintiff's college, it

---

[2] The Court takes no view on whether the non-renewal of Plaintiff's contract constitutes a deprivation of Plaintiff's First Amendment Rights, as Defendants only argue Plaintiff failed to sufficiently allege an agreement existed. However, contrary to Plaintiff's statements, this does not mean Defendants have "conceded" the existence of an underlying First Amendment violation.

3

is reasonable to infer from that language that Bloom and Belfield agreed to take steps to end Plaintiff's employment.[3] Plaintiff's allegation that Bloom initiated the investigation into his conduct buttresses that conclusion. *See* PAC ¶¶ 42, 44.

Accordingly, the proposed second cause of action against Defendants Bloom and Belfield for conspiracy to violate Plaintiff's civil rights is not futile, and the motion to amend as to that claim is **GRANTED**.

### C. Tortious Interference Claims (Proposed Counts Three and Four)

Plaintiff seeks to add claims for tortious interference with a contract (Count Three) and prospective economic advantage (Count Four) against the Individual Defendants. Specifically, the proposed Amended Complaint alleges:

> In launching the campus wide campaign against Plaintiff, including suspending Plaintiff and subjecting him to a pretextual investigation, and in making/sending the [Statements,] Defendants Bloom, Belfield, Russell, Klobucar and Maher [(1)] intentionally and improperly interfered with the performance of Jorjani's contract with NJIT [and (2)] intentionally and maliciously, without excuse or justification, interfered with this prospective economic relationship.

*See* PAC ¶¶ 123, 133. Defendants argue these claims are duplicative of the dismissed defamation counts, and thus fail for the same reasons. Opp. at 7.

Under New Jersey law,

> If an intentional tort count . . . is predicated upon the same conduct on which the defamation count is predicated, the defamation cause completely comprehends the [intentional tort] cause. That is to say, if the alleged defamation is not actionable, then its consequences are also not actionable because the conduct that caused those consequences was privileged.

*LoBiondo v. Schwartz*, 733 A.2d 516, 530 (N.J. App. Div. 1999). Tortious interference claims are intentional torts. *Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001). Accordingly, Plaintiff's tortious interference claims are deficient for the same reasons as the previously asserted defamation counts. *See* Opinion (Mar. 11, 2019); *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt.*, 160 A.3d 44, 108–10 (N.J. App. Div. 2017) ("These same First Amendment principles apply even if the claim does not sound in defamation but in some other theory of recovery.").

Plaintiff's citation to *Cohen v. Cowles Media Co.* is inapposite. *See* Reply at 2 (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991)). In that case, the Supreme

---

[3] Plaintiff also generally alleges Bloom and Belfield issued the B&B Email for the purpose of dissociating Plaintiff from NJIT due to his protected conduct. *See* PAC ¶¶ 35-40, 63, 65-66, 69. Defendants' states of mind may be alleged generally. *See* FRCP 9(b). The facts contained in the PAC make those general allegations plausible, and thus sufficient at this stage.

4

Court held that the First Amendment does not preclude a newspaper's liability for promissory estoppel when it promised the plaintiff confidentiality in exchange for information. *Cohen*, 501 U.S. 663, 665 (1991). The Court made clear that the plaintiff was not "attempting to use a promissory estoppel cause of action to avoid the strict requirements for establishing a libel or defamation claim." *Id.* at 671. Instead, the Court merely held the defendant-newspaper to its promise and awarded compensation for the newspaper's failure to keep it. *Id.* at 671-672. Here, there is no allegation that Defendants promised or guaranteed Plaintiff not to speak out against him, then did so anyway. Instead, Plaintiff merely alleges the speech previously underlying his defamation counts results in tortious-interference liability. PAC ¶¶ 124, 133 (alleging Bloom, Belfield, Russel, Klobuchar, and Maher intentionally interfered with Plaintiff's rights by making the Statements).[4] Such claims are precluded under New Jersey law. *See LoBiondo*, 733 A.2d at 530 ("[I]f the alleged defamation is not actionable, then its consequences are also not actionable because the conduct that caused those consequences was privileged."). Accordingly, Plaintiff's motion to amend as to Counts Three and Four is **DENIED**.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion to amend, ECF Nos. 17-18, is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

**Date: June 26, 2019**

WILLIAM J. MARTINI, U.S.D.J.

---

[4] The Proposed Amended Complaint also alleges Defendants "subject[ed Plaintiff] to a pretextual investigation" and "conducted a modern day intellectual witch hunt." PAC ¶¶ 124-25; 133-34. But those allegations appear to be based on the Statements and Plaintiff fails to respond to Defendants' argument that "the method of committing the tortious interference was allegedly by making the defamatory statements." Opp. at 10. Accordingly, the Court understands Counts Three and Four to be based on the Statements and not some seperate conduct. *See Aiellos v. Zisa*, 09-cv-3076, 2010 WL 421081, at *5 & n.8 (D.N.J. Feb. 2, 2010) (finding failure to meaningfully respond waived claims).

5