**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON JORJANI,<br><br>    Plaintiff,<br>v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY, FADI P. DEEK, *et al*.,<br><br>    Defendants. | Civil Action No.:   18-11693 (WJM)<br>                    20-1422 (WJM)<br><br>**(CONSOLIDATED)**<br><br><br>**OPINION** |

**FALK, U.S.M.J.**

These cases arise out of the non-renewal of Jason Jorjani's contract as a lecturer at the New Jersey Institute of Technology ("NJIT").   In the first case -- *Jorjani v. NJIT, et al.*, 18-11693 (WJM) ("*Jorjani I")* -- Plaintiff alleges a conspiracy by NJIT's President and NJIT's Dean for the College of Arts and Sciences to violate his First Amendment rights.   In *Jorjani II -- Jorjani v. Deek, et al*., 20-1422 (WJM) -- Plaintiff expands his conspiracy theory to include a panoply of additional defendants, including NJIT trustees, department chairs, and attorneys. The cases are now consolidated under the *Jorjani I* docket number.   [CM/ECF No. 56.]

**DISCOVERY BACKGROUND**

These cases have a lengthy history that is not repeated here.   Prior Opinions contain more detail.   *See, e.g.*, *Jorjani v. NJIT*, 2021 WL 82325 (D.N.J. Jan. 11, 2021); *Jorjani v. Deek*, 2020 WL 5422802 (D.N.J. Sept. 20, 2020); *Jorjani v. NJIT*, 2019 WL 2611128 (D.N.J. June 26,

2019); *Jorjani v. NJIT*, 2019 WL 1125594 (D.N.J. Mar. 12, 2019).   Relevant to discovery, on February 5, 2020, the Court held a formal hearing and case management conference to address ongoing, outstanding discovery issues.   A transcript of that conference can be found on the Court's docket.   [*See* ECF No. 41 (Transcript of February 5, 2020 Hearing ("Tr.")).]   Following that conference, on April 3, 2020, the Court entered an Order prepared by the parties memorializing the rulings made on February 5, as well as subsequent agreements made between the parties regarding discovery.   [*See* ECF No. 45; the "April 3 Order").]   Thereafter, the Court received numerous letters advising that the parties had (1) continuing disputes about matters discussed on February 5; (2) new disputes about a variety of subjects, including the attorney-client privilege; and (3) disputes about compliance with the April 3 Order.   These issues were discussed during telephonic case management conferences on May 20, 2020, and July 21, 2020.   Ultimately, on September 9, 2020, the Undersigned entered an Order directing the parties to present all of their discovery issues in two separate sets of briefs.   [*See* ECF No. 54.]   The first set of briefs was to cover issues relating to the attorney-client privilege and the crime-fraud exception to that privilege; the second set was to cover the remaining discovery and case management issues.   (Id.)

On January 11, 2021, I issued an Opinion on the privilege disputes (the "Privilege Opinion").   Now before the Court are the parties' remaining discovery and case management issues.

Comprehensive letter briefs have been submitted supporting by declarations and exhibits.[1]   Many of the disputes are interrelated, present only general questions of relevance and

---

1 Plaintiff's Letter is referred to herein as "PL" and Defendants' as "DL."

–2–

proportionality, and contain overlapping argument.  Accordingly, this Opinion proceeds as follows: the general discovery standard is set forth, and then the parties disputes are listed and decided *seriatim* in the basic manner they were presented.[2]

## **DISCOVERY STANDAD**

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding "any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).  Relevance is a broader inquiry at the discovery stage than at the trial stage, *see Nestle Food Corp. v. Aetna Cas. & Surety Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990), and "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Pearson v. Miller*, 211 F.3D 57, 65 (3d Cir. 2000).

While relevant information need not be admissible, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence."  *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  A court may limit or deny otherwise appropriate discovery when the information

---

[2] A factual background section is omitted – it can be found in the Privilege Opinion, 2021 WL 82325, and since we write only for the parties, familiarity with the background is assumed.

sought is not proportional to the needs of the case when certain factors are considered, including burden and expense.  *Schick v. Cintas Corp.*, 2020 WL 1873004, at *3 (D.N.J. Apr. 15, 2020); *see also Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (even if discovery is relevant, should be disallowed "where the potential harm caused by production outweighs the benefit").

## DISCUSSION

**A.    Disputes Presented by Plaintiff**

    **1.    Compliance with the April 3, 2020 Order**

On February 5, 2020, the Court held a discovery hearing, on-the-record, to address discovery and case management issues.   That conference resulted in the entry of an Order on April 3, 2020.   Plaintiff contends that Defendants have not complied with two aspects of the April 3 Order.

First, the Order states:

> ORDERED that Defendants, no later than April 20, 2020, shall provide supplemental responsive answers to Plaintiff's Interrogatory Nos. 2 through 5 dated August 16, 2019 to the extent of identifying, for the last seven years, all NJIT employees who have been discovered to have either not filled out their annual Outside Activity Questionnaire, or to have filled out their Outside Activity Questionnaire incorrectly. Such responses shall state:
>
> A) The identification of the NJIT employee by first and last initial;
> B) The actions taken against the NJIT employee, if any; and
> C) The date such actions were taken.

Defendants responded to the Order by identifying one additional employee -- in addition to four others that had been previously disclosed.   Plaintiff is dissatisfied with this response, contending that it was provided in a letter from counsel and is an "unsworn nullity."   He also contends that there are, in his opinion, hundreds of employees with OAQ violations that have not

–4–

been disclosed.   Plaintiff apparently comes up with "hundreds" individuals because of a spreadsheet Defendants produced earlier in discovery that listed various NJIT lecturers/professors and the last date they completed an OAQ, some of which appear to have been last updated years in the past or not at all.

Defendants counter that they have provided the information that they have that is responsive to the question and will put it in a sworn interrogatory response.   Further, they claim Defendants reading and interpretation of the spreadsheet is simply wrong; the OAQ rules only require the updating of OAQ forms as circumstances change, and for those listed on the spreadsheet the circumstances have not changed.   They claim there is "nothing more to be done."

***Decision***:   The Court agrees that Plaintiff is entitled to a sworn discovery response. Other than that, there is nothing further to decide here.   It appears that Plaintiff has perhaps misinterpreted a spreadsheet.   To the extent Plaintiff disputes Defendants' response, it is what it is.   A sworn discovery response is exactly that – sworn.   And Plaintiff will have to accept what is listed there as Defendants' response.   He can utilize that response however he deems it appropriate under the Federal Rules.

Second, the April 3 Order also states:

> ORDERED that Defendants, no later than April 20, 2020, shall provide supplemental responsive answers, to Plaintiff's Interrogatory Nos. 15 and 17 dated August 16, 2019.

The Interrogatories at issue state, generally:

> **Interrogatory 15**:  Pursuant to which New Jersey Statute and/or which NJIT Bylaws did the above referenced person(s) take such action [i.e. the suspension or "paid administrative leave" of Plaintiff on or about September 25, 2017] ?

>**Interrogatory 17:** required the following: Pursuant to which New Jersey Statute and/or which NJIT Bylaws did the above referenced person(s) take such action [i.e. authorized the investigation of Plaintiff on or about September 25, 2017]?

Pursuant to the Order, Defendant provided a supplemental answer, but Plaintiff claims it is deficient. Defendants' response essentially states that the identified NJIT decision-makers acted pursuant to statutory authority, but that it would be "inappropriate for any NJIT fact witness, under oath, to identify specific statutory sections or certify to an interrogatory that implicates matters of law." (DL at 5.)

*Decision*:   Defendant should attempt to provide a more specific answer to these interrogatories. This issue was discussed during the February 5 hearing, and my initial inclination was that an answer should be provided, but the parties were left to further confer to that end. (Tr. 14:17-16:9.)   While the Court notes Defendants' objection about providing a legal conclusion, to the extent necessary, this could be considered a contention interrogatory and answered accordingly.

Plaintiff requests contempt or sanctions for Defendants alleged continuing failure to answer these questions, but that is not supported by the record. Defendants have provided a supplemental response that appears to be in good faith and balances concerns about providing a legal opinion from a lay witness. (DL at 5; Exhibit 1.)   That is not contempt or sanctionable.

**2.**     **Plaintiff's November 16, 2019 Document Demands**

Plaintiff's submission lists 30 document demands, served in November 2019 and answered in February 2020, that he contends Defendants have responded to inadequately or not at all. They are grouped into categories below.

### Requests 1-3

These demands seek all student evaluations for all faculty of the Department of Humanities for three time periods, (1) 2015-16; (2) 2016-17; and (3) since Plaintiff's separation from NJIT.  (PL at 4-5.)   Plaintiff claims that these documents are relevant to damages and to show that he performed well "vis-à-vis his colleagues and had an excellent chance for on-going retention or promotion." (Id.)   Defendants counter that the request is unduly burdensome and not relevant.

***Decision*:**   Plaintiff's request to compel is denied.    These requests do not seek relevant information.   Plaintiff's case is about alleged failure to renew his lecturer's contract in violation of the First Amendment and alleged retaliation.   How students reviewed faculty during any of the above time periods is not relevant.   Nor has Plaintiff shown how this discovery, even if relevant, would be proportional to the needs of the case.   Plaintiff was separated for purported reasons that had nothing to do with student evaluations.   And Defendant represents that there are approximately 100 Humanities courses taught each semester.   A request for all evaluations for 100 courses covering multiple academic years is not proportional to whatever minimal relevance these documents could possibly have.

### Requests 4, 7-8

Plaintiff requests all appointment, re-appointment, and non-appointment letters for all Humanities Department faculty for the same time periods identified in Requests 1-3.   Plaintiff claims these demands seek information that would be relevant to damages.   Defendants again contend that this case has nothing to do with other professors or faculty members, and that such a request is unduly burdensome.

–7–

*Decision*:  Plaintiff's request is denied.   Plaintiff has not shown how this information is relevant to this case, which is a Section 1983 case alleging First Amendment retaliation and conspiracy.   Why another lecturer or professor would or would not be retained has little or nothing to do with Plaintiff's individual facts and his case, without some information connecting the issues.[3]

**Requests 5-6, 9-10**

Plaintiff seeks the production of OAQ's and Annual College Disclosure Forms for all members of the NJIT Humanities Faculty for the 2015-16, and 2016-17 academic years.  Plaintiff claims that this information is relevant and will establish "viewpoint discrimination" because if OAQ's were filed that contained "liberal or left leaning political associations, but they were never subjected to surveillance, plotting, and entrapment," then it would establish the conspiracy he alleges.   (PL at 8.)   Defendants again argue lack of relevance and undue burden.  They further allege that Plaintiff was terminated for many reasons, already detailed, including because he was doing things on school time other than teaching his classes.

*Decision*:  Plaintiff's request to compel is denied.   Plaintiff has not established how this information is relevant at all or why he should be permitted to peruse all faculty OAQs for two calendar years.   Plaintiff has already been provided with the names and circumstances of faculty who had issues with their OAQs.   No further information is required.

---

[3] While these requests do not seek relevant information no matter the specific title of the other NJIT-affiliated individuals involved, it should be noted that Defendants repeatedly state that Plaintiff was a NJIT lecturer, subject to termination or renewal at the discretion of the institution without further explanation or regard for tenure, etc., and that his continued attempts to use NJIT professors/full faculty members as his comparators is misplaced.   (*E.g.*, DL at 6 & n.2.)

−8−

### Requests 11 and 12

Plaintiff requests production of online "receipts" proving that NJIT Humanities faculty took required online ethics courses during the relevant time period.

*Decision***:**   Denied.   The request is facially irrelevant.   Defendants do not dispute Plaintiff took the necessary online classes.   Moreover, participation in online ethics courses is not an issue in the case, and Plaintiff completely fails to explain how these documents bear on the claims or defenses asserted.

### Requests 13-17

These demands seek the production of law firm retainer agreements relating to any investigation regarding Plaintiff and four other NJIT lecturers/individuals (William J. Marshall III; Dr. Sebastian; Dr. Xu; and Xuan Liu) who may have been the subject of legal investigations.

*Decision*: This request is granted in part and denied in part.   Subject to any claim of privilege, which has not been briefed in these submissions, Defendants should produce the retainer agreement relating to the investigation of Plaintiff himself.   However, Plaintiff's submission does not articulate any relevance to law firm retainer agreements relating to any of the other identified individuals.   Moreover, at the February 5 Hearing, the Court made clear that this type of discovery would not be permitted at this time:

> Well, I mean, I'm not going to order that. As a matter of fact, I'm going to deny that at this point, without prejudice. In other words, you'll get the basic information, then you'll have the opportunity to take depositions. You could take a deposition of someone, a 30(b)(6), with knowledge of these situations, and they can provide you some answers, but I'm not going to have the documents and the investigations produced. That's collateral at this point and goes beyond what I think is necessary. So that's that.

(Tr. 9:13-22.)

With respect to the retainer agreement relating to any investigation of Plaintiff himself, if Defendants contend the agreement contains privileged information, it may be submitted *in camera* prior to being produced.

**Requests 18-21**

Plaintiff seeks the production of any materials, including transcripts, relating to the investigation of the individuals identified in Demands 13-17.

*Decision*: Plaintiff's request is denied. Plaintiff does not explain how this bears on his individual facts and the reasons that NJIT has put forth as to why he is no longer a lecturer at NJIT. Moreover, the Court has already ruled on this subject and stated such matters are collateral and, at best, a subject for exploration at a deposition. (*See* Tr. 9-13-22, *supra*).

**Requests 23-26**

Plaintiff demands the production of any documents where a complaint was made about a member of the NJIT faculty, by someone outside the NJIT community, and sent directly to President Bloom, Dean Belfield, Provost Deek, or an Ethics Liaison Officer.

Plaintiff claims that outside complaints led to, or were part of, the process that started the alleged conspiracy to terminate him. As a result, he wants any communications from any outside source to the identified individuals complaining about an NJIT faculty member.

*Decision*: Denied. Plaintiff has not yet shown any relevance to this request. This case is about Plaintiff's individual circumstances and NJIT's response. There is no basis, even under the expansive discovery rules, to collect and produce every complaint made about a NJIT faculty member. Such discovery would divert the focus of this case, is a classic fishing expedition, and would create an unnecessary and perhaps expensive side show.

**Requests 27-31**

Plaintiff demands copies of "all speeches, statements, or other official pronouncements" made by President Bloom or Dean Belfield in favor of diversity, from 2015 to the present. (PL at 16-17.)   Plaintiff claims that shortly before he was suspended, President Bloom sent a mass email where he condemned Plaintiff's views and endorsed diversity.   Plaintiff claims that if Defendants are running a public institution where "only pro-diversity views" are permitted, then there is a "blatant" violation of the First Amendment.   (PL at 17.)

*Decision*:   These requests are somewhat confusing.   They are denied.   NJIT has already produced its diversity and inclusiveness policies.   NJIT makes clear that it supports diversity and inclusiveness.   Putting that aside, the Dean and President are public figures, and Defendants claim it is impossible and impracticable to catalogue all of their public comments regarding diversity and produce them.   Moreover, it is not clear that all the Dean's and President's statements on diversity are written; thus, the demand could require the creation of documents that may not otherwise exist, which is not required by Rule 34.  *See, e,g.*, *Mon River Towing, Inc. v. Indus. Terminal & Salvage Co.*, 2008 WL 2412946, at *1 (W.D. Pa. June 10, 2008) (collecting cases).   In short, as written, these demands would require the production of every public comment on diversity either the Dean or President have made for 6 years, which even if there was some relevance to this request—which has not been shown—is overbroad and disproportionate to the needs of this case.

**B.     Disputes Presented by Defendants**

      **1.     Production of Documents:
        (1) that Contain Derogatory Terms; and
        (2) Facebook and LinkedIn Materials**

–11–

Defendants seek from Plaintiff two categories of documents.  <u>First</u>, any and all documents that contain 15 identified derogatory terms.  (*See* DL at 13; Request 33).[4]  <u>Second</u>, any communications on Facebook or LinkedIn.  (Requests 34-35).  Defendants' request for these documents relates back to the *New York Times* Op-Ed that the parties are well familiar with.

For relevancy context, the short recap is this.  Plaintiff was recorded in a Manhattan bar speaking with someone he believed to be affiliated with the Alt-Right.  Instead, the person he was speaking with was supposedly a member of a left-wing group seeking to investigate the Alt-Right.  This person secretly recorded the conversation, which lasted somewhere around two hours.  The two-hour video is referred to as the "Full Video."  The Full Video was then edited down to around 3 minutes and embedded within the NYT Op-Ed that was published in 2017; this edited video is referred to as the "Short-Form Video."  Defendants state that Plaintiff's comments in the video support, among other things, racism and Adolf Hitler.  These comments and the NYT Op-Ed were allegedly the catalyst for Plaintiff being placed on administrative leave.  Plaintiff has claimed that the Short-Form video appearing in the NYT was deceptively edited and taken out of context.  He has also criticized the Full Video and claims that, in totality, it supports his position that the Short-Form Video is deceptively edited.  Thus, the parties have a disagreement over Plaintiff's words and beliefs.

Since Plaintiff takes issue with his characterization in both videos, Defendants claim that they need to investigate his other written statements to confirm that Plaintiff is who they say he

---

4 The derogatory terms are stated in DL at 13 and will not be repeated herein.  Defendants refer to them as the "Listed Terms" and the Court will do the same.

is – i.e., someone that possesses Alt-Right, pro-Hitler, and racist beliefs.  For that reason, they are seeking communications to show that Plaintiff is that person.  They claim this is relevant both to Plaintiff's credibility and to the *Pickering* balance test[5] that they claim justifies NJIT's decision to separate him from NJIT.

Plaintiff's papers provide 3 pages of argument relating to this subject, but all are dedicated almost exclusively to why Defendants' reliance on *Pickering* will, in his opinion, ultimately fail.  In other words, three pages of merits argument on the ultimate application of *Pickering*.  Plaintiff fails to analyze the requests under the Rule 26 liberal discovery standard or articulate an objection based on undue burden or expense.

*Decision*:  The request for any communications containing the Listed Terms is **GRANTED**.  The request for all Facebook and LinkedIn communications is **GRANTED IN PART AND DENIED IN PART**.

As Defendants state, the Court believes that it is relevant to both credibility and potentially to a *Pickering* balance whether Plaintiff uses language identified in his Listed Terms in everyday life.  It could bear on credibility.  It could bear on NJIT's decision to separate him from lecturing there.  And it does not appear to be unduly burdensome, expensive or oppressive

---

5 The *Pickering* Balance Test as stated here refers to the Supreme Court's Opinion in *Pickering v. Bd. Of Ed.*, 391 U.S. 563, 568 (1968). This test "requires the courts to 'balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' *Munroe v. Central Bucks School Dist.*, 805 F.3d 454, 466 (3d Cir. 2015)) (DL at 19). "This balancing test permits the public employer to show that the plaintiff's speech did actually disrupt the workplace and/or that the speech was "likely" to disrupt the workplace. *Munroe*, 805 F.3d at 472 (citations omitted)." *Id.*  It is enough to say that Defendants contend *Pickering* alone supports any decision to separate Plaintiff from NJIT; while Plaintiff contends *Pickering* is never successfully applied in the context of higher education. These are merits questions for another time.

in any way. The scope of discovery is liberal. And there is a clear dispute over the context of language used in the Full and Short Form videos. Indeed, at the February 5 hearing, Plaintiff's counsel reiterated, on-the-record, that Plaintiff claims the videos are misleading. *See* Tr. 38:17-24.[6] Therefore, the discovery sought could bear on issues in the case. Discovery is different than merits, and relevance is measured by the scope of Rule 26, regardless of Plaintiff's insistence that he will prevail on the merits of the *Pickering* question. Thus, the request for discovery relating to the Listed Terms is granted.

However, the request for the Facebook and LinkedIn communications is more complicated. It is not entirely clear what remains in dispute following the parties meet-and-confer and Defendants' narrowing of their demands. Defendants state the "<u>current request is for communications on either Facebook or LinkedIn</u>" and attach a footnote to that sentence stating: "[b]oth Facebook and LinkedIn permit a user to either post and thus communicate with multiple people at once, or to send individual messages to another member of the platform. Defendants seek both types of communications limited both by the timeframe of Plaintiff's employment and the subject matter." (DL at 14 & n.3.) Plaintiff's opposition is a repeat of the *Pickering* balance objection directed to Request 33 and is not persuasive for the same reasons. The Court will treat Requests 34 and 35 as follows:

- to the extent Requests 34 and 35 seek communications that contain Listed Terms

---

6   The cited colloquy is:
    THE COURT: Because, for one thing, I guess Mr. Haefner said that the Plaintiff's claim is
    that the video was sort of misleading about - - -
    MR. KELLY: That's right.
    THE COURT: - about who he is.
    MR. KELLY: That's right.
    THE COURT: So, I think he gets a little leeway to look into that there - - -

> on either Facebook or LinkedIn, the request is granted, as it would actually be covered by Request 33.

- to the extent Requests 34 and 35 seek communications on Facebook and LinkedIn involving Plaintiff's employment, they are also granted, as it would be indisputably relevant, within the meaning of Rule 26, to this case.

However, to the extent Requests 34 and 35 seek Facebook and LinkedIn communications beyond the two bullet points above, any request to compel is denied. Facebook is a medium where people post things like innocuous personal photos, memes, or comments daily, sometimes hourly. Personal messages also can cover any subject imaginable. Defendants have not established that anything beyond the two bullet points above would be relevant to this case.

### 2. Plaintiff's Designation of Certain Documents "Attorney's Eyes Only"

There is a Discovery Confidentiality Order ("DCO") entered in this case that contains two tiers of confidentiality. Tier One is "confidential," which allows for the use of documents in this case only and limits their dissemination. Tier Two is attorney's eyes only, which limits the documents to counsel in the case.

The parties have a dispute whether Plaintiff's designation of three categories of documents qualify as "Attorney's Eyes Only" ("AEO"). The categories are: "(1) correspondence with colleagues regarding the Iranian Renaissance; (2) other various documents related to the Iranian Renaissance, including letters and proposals purportedly sent to various government officials in the United States and Israel; (3) correspondence between Plaintiff and his now-fiancé regarding various issues including his investigation by and litigation against NJIT." (DL at 20.)

Defendants <u>agree</u> that they will treat these documents as confidential under the basic tier of confidentiality in the DCO.  Thus, the issue is whether Defendants' counsel can share these documents with their clients.  This dispute was raised in Defendants' Letter.  Since Reply papers were not permitted, Plaintiff has not responded to this dispute in writing.  That said, it is difficult for the Court to imagine how these types of documents could possibly qualify for AEO protection.  Examples of the types of documents that qualify for AEO protection are documents containing sensitive competitive information between businesses or trade secrets.  Just from how the three categories of documents are described, there is serious doubt they could qualify.  Nevertheless, in the absence of complete briefing, the Court will not resolve the designation dispute at this time.

If Plaintiff desires, he may submit a supplemental letter, not to exceed 5 pages, explaining why documents falling within these three categories should be marked attorney's eyes only.  The documents should also be submitted for *in camera* review.  Plaintiff should submit any such submission within 10 days of the date of this Opinion and Order.

3. **Defendants' Request to File an Application For Contempt and Sanctions**

Defendants contend that Plaintiff's counsel has violated the DCO and should be held in contempt and sanctioned.  Specifically, they contend that documents produced in discovery in *Jorjani I* were used to prepare the Complaint in *Jorjani II*.  The assertion is that Plaintiff's counsel in *Jorjani I* – Mr. Kelly – provided documents to counsel for Plaintiff in *Jorjani II* – Mr. Haspel.[7]  Defendants claim this violates the DCO and amounts to contempt.  According to

---

7  Mr. Kelly is not Plaintiff's counsel of record – he has been admitted *pro hac vice*.  Counsel admitted *pro hac* vice are not considered counsel of record.  *See* L. Civ. R. 101.1(c).  Plaintiff's counsel of record in *Jorjani I* was Evan Foulke, Esq. His counsel in *Jorjani II* was Mr. Haspel.

Defendant, Plaintiff's defense for his conduct is that he does not believe the documents were "truly" confidential.   (DL at 22.)[8]

Counsel's belief about whether documents were "really" confidential is beside the point. If there is a dispute over whether a document is confidential, the DCO provides a method to raise and resolve that dispute.   To be clear, if it occurred, Plaintiff's counsel's use of documents between the two cases would have been inappropriate and would possibly have violated the DCO.   However, sanctions and contempt are matters of discretion.  *In re Sales Practices Prudential Litig.*, 278 F.3d 175 (3d Cir. 2001).   And had Plaintiff simply moved to file an amended complaint in *Jorjani I*, instead of filing a new case like *Jorjani II*, he would have been free to use the documents obtained in discovery to craft his pleading.   Most importantly, at this point, the two matters have been consolidated, and there is only one case.   And Defendants have not identified any harm that has resulted from what occurred.   However, going forward, the Court expects strict compliance with all Orders, including the Discovery Confidentiality Order, and any further misuse of confidential information may result in the full range of available sanctions.[9]

---

On June 25, 2020, Mr. Foulke withdrew as counsel in *Jorjani I* and was replaced by Mr. Haspel. And now the cases are consolidated.

8 This issue was raised in Defendants' letter and Plaintiff did not have an opportunity to respond. However, the existence of this dispute was set forth in informal letters previously submitted to the Court, with Plaintiff's position apparently being the shared documents were not "truly" confidential.   Regardless, since the Court is denying the relief requested, it will proceed to resolve this issue.

9 Defendants' Letter also raises alleged deficiencies with respect to Plaintiff's responses to three of their supplemental document demands.  (DL at 23.)   However, the letter concedes that "the parties have not yet met and conferred on these issues" and that they are raised only to prevent any argument relating to waiver.   (Id.)   Since the parties have not yet met and conferred, this

## **CONCLUSION**

The parties' various disputes are **GRANTED IN PART AND DENIED IN PART** as set forth individually above. Further, counsel are directed to confer and submit a proposed revised scheduling order to govern the remainder of the case. The Court will schedule a case management conference upon the receipt of the Order to discuss moving this case forward toward a resolution on the merits.

                                                                              **s/Mark Falk**
                                                                              **MARK FALK**
                                                                              **Chief United States Magistrate Judge**

**DATED: January 12, 2021**

---

issue is deferred and, if necessary, may be raised informally pursuant to the procedures set forth in the Undersigned's Scheduling Order regarding the presentation of disputes.

–18–