UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON JORJANI,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY et al.,<br><br>Defendants. | Civ. Nos. 2:18-cv-11693<br>2:20-cv-1422<br><br>**(CONSOLIDATED)**<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

      Pending before the Court is Plaintiff Jason Jorjani's ("Plaintiff") appeal, ECF No. 62, of Magistrate Judge Falk's January 11, 2021 Order, ECF No. 59, denying Plaintiff's application to compel Defendants to produce certain discovery over which they have asserted attorney-client privilege. Defendants filed an opposition to the appeal, ECF No. 63, to which Plaintiff replied. ECF No. 64. The Court did not hear oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's appeal is **GRANTED in part** and **DENIED in part**; Judge Falk's January 11, 2021 Order is **AFFIRMED in part** and **REVERSED in part**; and this matter is referred to the Magistrate Judge for further proceedings consistent with this Opinion.

    **I.**    **BACKGROUND**

      A detailed recitation of the underlying facts may be found in the Court's prior Opinions of March 12, 2019, ECF No. 14, and June 26, 2019, ECF No. 28, and in Judge Falk's January 11, 2021 Opinion, ECF No. 58, familiarity with which is assumed. In short, this matter concerns an alleged illicit conspiracy by Defendant New Jersey Institute of Technology ("NJIT") and certain members of its administration to violate the First Amendment rights of Plaintiff, a contracted philosophy lecturer at NJIT, because they disapproved of his extracurricular political speech and participation in organizations deemed to be associated with alt-right politics.

      Plaintiff alleges the scheme was born from a January 2017 email exchange between Defendant Holly Stern (NJIT's General Counsel) and Defendant Christine Li (NJIT's Associate General Counsel and Ethics Liaison Officer) in which they discussed a recent employment case concerning the termination of a tenured employee at a Florida university after he made controversial, extracurricular remarks about the Sandy Hook school

shooting. Plaintiff alleges that Defendants Stern and Li used the arguments in the case to devise a pretext for terminating him and violating his First Amendment rights.

Months later, in the Fall of 2017, Plaintiff was surreptitiously recorded making statements about the future of European politics, immigration into the West, and race. The New York Times published an op-ed containing an edited version of the recorded conversation. After viewing the op-ed and recording, Defendants Joel S. Bloom (NJIT's President) and Kevin J. Belfield (NJIT's Dean of the College of Science and Liberal Arts) sent a faculty- and staff-wide email condemning the views expressed. Five days later, NJIT suspended Plaintiff and retained Saiber, a New Jersey law firm, to conduct an investigation. After Saiber issued a forty-page report in February of 2018, Plaintiff learned his employment contract would not be extended beyond the 2017-2018 school year.

Defendants maintain that Plaintiff's contract was not renewed because Saiber's report concluded that Plaintiff had intentionally mislead NJIT regarding his outside activities; had violated the requirements concerning the Outside Activities Questionnaire by failing to disclose his relationship with and ownership interest in the Alt Right Corporation and Arktos Media, Ltd; had canceled at least thirteen (13) classes without the knowledge and approval of his Department; and his speech had caused and would continue to cause extreme disruption to the NJIT learning environment. But Plaintiff maintains that Defendants worked together to fabricate pretextual reasons for not renewing his contract when, in reality, they disapproved of his extracurricular speech and association with certain organizations. He initiated this now-consolidated action against Defendants alleging First Amendment retaliation and conspiracy to violate his constitutional rights.

During discovery, Plaintiff moved to compel Defendants to produce certain documents, all of which appear to be emails, that he argues prove the alleged illicit conspiracy. *See* Pl. Br. to Judge Falk, ECF No. 62-2. Defendants asserted attorney-client and work-product privilege over the documents and provided Plaintiff with a privilege log. *See* Privilege Log, ECF No. 62-2. Plaintiff primarily argued that the crime-fraud exception to the attorney-client privilege lifts the veil of protection on approximately thirty (30) of the documents, and that Defendants either failed to establish privilege or waived privilege as to fourteen (14) additional documents.[1] Pl. Br. to Judge Falk at 5, 7, ECF No. 62-2.

By way of Opinion dated January 11, 2021, Judge Falk emphatically denied Plaintiff's motion. ECF No. 58. As to the approximately thirty (30) documents Plaintiff sought to compel under the crime-fraud exception, Judge Falk found that Plaintiff "monumentally fail[ed] to establish any basis to apply [the exception] in this case." *Id.* at 12. As to the fourteen (14) additional documents Plaintiff sought to compel based on

---

[1] The approximately thirty (30) documents that Plaintiff seeks to compel based on the crime-fraud exception are those identified in rows 14 through 42 of Defendants' privilege log. Pl. Br. to Judge Falk at 5, ECF No. 62-2; Privilege Log, ECF No. 62-2. The fourteen (14) additional documents with which Plaintiff takes issue are those identified in the following rows: 214, 220, 275, 276, 323, 324, 375, 376, 377, 380, 385, 393, 394, 395. Pl. Br. to Judge Falk at 7, ECF No. 62-2; Privilege Log, ECF No. 62-2.

waiver of privilege, Judge Falk found these documents to be clearly protected under either the attorney-client privilege or the work-product doctrine. *Id.* at 12-15. Plaintiff now asks this Court to reverse that decision and Order Defendants to produce the withheld documents.

## II. LEGAL STANDARD

When considering an appeal of a magistrate judge's decision on a non-dispositive pretrial matter, a district court may modify or vacate the ruling only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A ruling is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quotation marks and citations omitted). A ruling is considered "contrary to law" if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Ace. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). The burden of showing that a ruling is "clearly erroneous or contrary to law" rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). Where the appeal concerns a discovery dispute over which "the Magistrate Judge exercises broad discretion and is entitled to great deference," *Coyle v. Hornell Brewing Co.*, No. 08-2797 (JBS), 2009 WL 1652399, at *3 (D.N.J. June 9, 2009), the ruling "will be reversed only for an abuse of [that] discretion." *Rhett v. N.J. State*, No. 07-1310 (DRD), 2007 WL 1456199, at *4 (D.N.J. May 14, 2007).

## III. ANALYSIS

Plaintiff offers several arguments on appeal, the majority of which do not persuade the Court that Judge Falk's decision is clearly erroneous, contrary to law, or an abuse of his discretion, but one of which gives the Court pause and motivates the referral of this discovery dispute back to the Magistrate Judge for further review.

First, Judge Falk found that Defendants' privilege log satisfied their discovery obligations to Plaintiff and complied with the Federal Rules of Civil Procedure. Contrary to Plaintiff's demand that Defendants support their privilege log with an affidavit, and as Judge Falk stated, "[t]here is no requirement that an affidavit accompany a privilege log." Op. at 12, n.8, ECF No. 58. Federal Rule of Civil Procedure 26(b)(5)(A) requires a party withholding otherwise discoverable information based on privilege to: (1) expressly make that claim, and (2) describe the nature of the withheld information "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendants' privilege log does just that, as evidenced by Judge Falk's ability to rely upon the log to determine whether Defendants' properly invoked privilege on fourteen (14) of the challenged documents. *See* Op. at 12-15, ECF No. 58; Privilege Log, ECF No. 62-2.

Plaintiff continues to argue, however, that the privilege log is "bare" because he cannot discern whether the communications were made for the purposes of obtaining or providing legal assistance. Pl. Br. at 3-4, ECF No. 62-1. The Court agrees with this sentiment only as it applies to those documents identified in rows 19, 20, 21, 23, 24, and 37 through 40—documents that are within the subset of those Plaintiff seeks to compel under the crime-fraud exception, but which, from the privilege log alone, appear to be between only high-ranking members of NJIT's administration and not between, to, or from NJIT's attorneys.[2] *See* Privilege Log, ECF No. 62-2. If the documents are not protected by the attorney-client privilege, Plaintiff is entitled to receive them in discovery pursuant to Federal Rule of Civil Procedure 26(b)(1). It is to this limited extent that the Court reverses Judge Falk's Order and refers the matter back to the Magistrate Judge for an examination of the documents identified in rows 19, 20, 21, 23, 24, and 37 through 40 to determine whether they are privileged material.

Next, Judge Falk did not err or otherwise abuse his discretion in finding that Plaintiff failed to make a *prima facie* showing that the crime-fraud exception applied to the privileged material. "[T]he purpose of the crime-fraud exception to the attorney-client privilege [is] to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citation omitted). "Typically, application of the crime-fraud exception 'begins with presentation of the factual basis for a good faith belief that the exception would apply,' followed by '*in camera* evaluation of the material by the court[.]'" *In re Neurontin Antitrust Litig.*, 801 F. Supp. 2d 304, 307 (D.N.J. 2011) (quoting *Prudential Ins. Co. of Am. v. Massaro*, 47 Fed. App'x 618, 619 (3d Cir. 2002)); *see Speth v. Goode*, 607 Fed. App'x 161, 165 (3d Cir. 2015). If the party seeking discovery has made a *prima facie* showing—that is, has presented a factual basis "to support a good faith belief by a reasonable person that the materials may reveal evidence of a crime or fraud"—to warrant *in camera* evaluation, then the court may proceed to the next stage of the analysis, which requires the court to apply a stricter standard to determine whether to actually pierce the asserted privilege. *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 379 (D.N.J. 2006) (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 96-97 (3d Cir. 1992)).

Judge Falk explained that Plaintiff failed to allege any activity or wrongdoing that would constitute a crime or fraud sufficient to invoke the exception and justify *in camera* review. Op. at 10, ECF No. 58. Plaintiff argues that in so finding, Judge Falk ignored Third Circuit precedent applying the crime-fraud exception to tort allegations in civil cases such as this one. Pl. Br. at 4-6, ECF No. 62-1. To the contrary, the available case law on this issue, to which Judge Falk cited in his Opinion, suggests courts in this Circuit have not

---

[2] For example, rows 19 and 20 of the privilege log identify emails between Eric Katz (an NJIT professor and Chairman of the Humanities Department who was named as a Defendant in this matter but later dismissed) and Defendant Kevin Belfield (NJIT's Dean of the College of Science and Liberal Arts), with the subject line "Re: Inquiry regarding Prof. Jason Reza Jorjani." Privilege Log, ECF No. 62-2. It is not immediately clear why these emails are considered attorney-client privileged.

applied the exception to tort allegations in civil cases. *See, e.g.*, *Speth v. Goode*, No. 95-264 (JBS), 2013 WL 3412050, at *7 (D.N.J. July 3, 2013) ("Gathering possible evidence of a tort, however, is not a sufficient basis to conduct an *in camera* review or to trigger the crime-fraud exception to the attorney-client privilege."), *aff'd*, 607 Fed. App'x 161, 165 (3d Cir. 2015); *Tighe v. Buschak*, No. 1:11-cv-00224-TFM, Slip Op. (W.D. Pa. July 5, 2013) (citing *U.S. v. Doe*, 429 F.3d 450, 454 (3d Cir. 2005); *In re Impounded*, 241 F.2d 308, 316 (3d Cir. 2001); and *In re Grand Jury Proceedings*, 604 F.2d 798, 802 (3d Cir. 1979), for the proposition that "[a]lthough [these Opinions] refer, generally, to the exception's applicability to 'torts,' none actually apply the exception in a civil case in which a tort is alleged.").[3]

Plaintiff discounts this caselaw as unpublished and non-precedential and would instead have the Court follow *Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992) to apply the crime-fraud exception here. Pl. Br. at 5-6, ECF No. 62-1. But Plaintiff's reliance on *Haines* is misplaced. *Haines* stands for the proposition that the crime-fraud exception applies when there is a factual basis to believe a *fraud* has been committed, not when a routine tort has been committed. *See* 975 F.2d at 88 ("The Court then determined that there was *prima facie* evidence that the defendants were engaged in an ongoing fraud and that they had obtained attorney assistance to further that fraud . . . ."); *see also Haines v. Liggett Group, Inc.*, 814 F. Supp. 414, 417 (D.N.J. 1993) (outlining plaintiff's claims and noting that she "asserts claims in intentional tort—for *fraud* and conspiracy—alleging that Defendants 'individually and in concert, concealed and intentionally failed to disclose significant and material information and data regarding the health consequences of smoking'" and "distorted and otherwise misrepresented the health effects of smoking to the public." (emphasis added)).

Finally, Plaintiff argues that Judge Falk "ignored considerable evidence of unlawful activity" and misapprehended Plaintiff's argument about the January 24, 2017 email between Defendants Stern and Li signaling the start of the alleged conspiracy against Plaintiff. Pl. Br. at 6-10, ECF No. 62-1. For example, Plaintiff argues that in his letter briefs to Judge Falk, he quoted extensively from email evidence that demonstrates he was the subject of an unlawful conspiracy. *Id.* at 7. Judge Falk found, however, that instead of presenting proof of wrongdoing, Plaintiff merely "held up a few emails and cited his version of the events and claimed that this destroys the attorney-client privilege." Op. at 10, ECF No. 58; *see also* Op. at 9-10 ("[T]he sole basis for [Plaintiff's] attempts to invoke the crime-fraud exception is his own narrative of the facts unsupported by any evidence" and strongly contested by Defendants."). That Plaintiff disagrees with the outcome of his underlying motion to compel simply because it was unfavorable to his interests does not mean the outcome warrants reversal.

---

[3] A copy of the *Tighe* decision is attached to Defendants' opposition brief as Exhibit A to the Declaration of Marc D. Haefner. ECF No. 63-1.

Other than the Court's point concerning the assertion of attorney-client privilege over documents 19, 20, 21, 23, 24, and 37 through 40, the Court finds neither clear error nor the misapplication of law nor the abuse of discretion in Judge Falk's well-reasoned Opinion properly denying Plaintiff's motion to compel. The Court will therefore affirm Judge Falk's Order in part and deny it in part.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's appeal, ECF No. 62, is **GRANTED in part** and **DENIED in part** and Judge Falk's January 11, 2021 Order, ECF No. 59, is **AFFIRMED in part** and **REVERSED in part**. This matter is referred to the Magistrate Judge for further proceedings consistent with this Opinion.

An appropriate Order shall follow.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2021**