# DEEK

# DEPOSITION

# EXCERPTS

Page 43

1    quite a bit of the article, yes.

2    BY MR. KELLY:

3        Q    I'm going to put up Exhibit No. 1 again for

4    you.  All right?

5        A    Sure.

6        Q    Is Exhibit No. 1 freely available to you

7    again?

8                  MR. HAEFNER:  Yes.

9    BY MR. KELLY:

10       Q    Dr. Deek, you authored this letter.

11   Correct?

12       A    I did not.

13       Q    You did not author this letter?

14       A    I signed the letter.  Right.

15       Q    You signed it?

16       A    Right.

17       Q    Who did you rely upon to author -- who

18   authored this letter, to your knowledge?

19       A    In this case, this is the date's out of

20   view, this was provided to my assistant to --

21   September 25th -- by University counsel.

22       Q    Oh.  Was it Ms. Holly Stern who authored

23   this?

24                  MR. HAEFNER:  Objection to the form.

25   He's not going to discuss what counsel did and didn't

Page 44

1    do.

2              MR. KELLY:   Well, he just said

3    university counsel provided this.

4              MR. HAEFNER:   He said it was provided

5    to his assistant from --

6              MR. KELLY:   No.   That's not correct,

7    Mr. Haefner.

8    BY MR. KELLY:

9         Q    Let me get at it.   To your knowledge, Dr.

10   Deek, who authored this letter?

11             MR. HAEFNER:   Objection to the extent

12   it would reveal attorney/client privilege, you're

13   instructed not to answer.   Otherwise, you can answer.

14             MR. KELLY:   He's shaking his head.

15   What does that mean?

16             THE WITNESS:   I am taking my counsel

17   from counsel not to answer.

18   BY MR. KELLY:

19        Q    You're taking the advice of counsel, and

20   you're not going to answer who authored this letter.

21   But you're saying it wasn't you.   Is that right?

22        A    I already said it wasn't me.   It wasn't, and

23   I will repeat.   'Cause that fact I know.   It was not

24   me.

25        Q    Okay.   It was an attorney --

Page 45

1       A     In general, Mr. Kelly, in general on

2    appointing and terminating, on renewing, non-renewing,

3    and in letters like this, they are not authored by my

4    office.  We obtain those from other offices.

5       Q     And you obtained this letter from counsel

6    somewhere.  Is that right?

7                   MR. HAEFNER:  Objection to the form of

8    the question.  Calls for privileged information.

9                   MR. KELLY:  It does not call for

10   privilege.  Please mark that for a ruling.  We'll

11   certify that one for the court.  I think we're going

12   to have a lot of that today, but we'll have to just

13   get through it as best we can.

14   BY MR. KELLY:

15      Q     Nevertheless, despite not authoring this

16   letter, you did sign it, Dr. Deek.  Correct?

17      A     Absolutely.  That's my signature.  Yes.

18      Q     Right.

19      A     It's my -- it's my electronic signature.

20   It's my -- yeah.  But that's me, of course.  It's

21   provided to my assistant to use.  Yes.  On University

22   business.

23      Q     I see.  Your assistant would have been Cara

24   Bartolomeo.  Is that right?

25      A     No.  That's a different assistant.

Page 147

1          Q     It says, "Plaintiff's claims are barred or

2    otherwise fail because at all relevant times, NJIT:

3    one, published, disseminated and enforced a neutral

4    policy regarding disclosure of outside activities and

5    conflicts of interests; and two, plaintiff

6    unreasonably failed to follow NJIT's policy."

7               Is that correct?

8          A     My understanding that that is correct.

9          Q     And that's what you're asserting in this

10   lawsuit.  Correct?

11         A     Right.

12         Q     Now, in support of that defense, that's a

13   defense based upon alleged OAQ violations.  Correct?

14         A     Yes.  I believe so.

15         Q     You are relying upon the Saiber report of

16   February 2018.  Is that correct?

17               MR. HAEFNER:  Objection to the form of

18   the question.  You can go ahead and answer.

19               THE WITNESS:  Yes.  Yes.

20   BY MR. KELLY:

21         Q     Is there anything you don't understand about

22   that question?

23         A     No.

24         Q     Along with the advice of Holly Stern.

25   Correct?

Page 148

1              MR. HAEFNER:  Objection to the form of

2    the question.  You can go ahead and answer.

3    BY MR. KELLY:

4         Q    Let me rephrase it.  You were also relying

5    for that defense on the advice of Holly Stern.

6    Correct?

7              MR. HAEFNER:  The witness is instructed

8    not to answer about advice from counsel.

9              MR. KELLY:  Please mark that for a

10   ruling to certify that question.  To be clear, at this

11   point, I'm not asking what her advice was.  I just

12   want to confirm that he relied upon that advice and

13   that NJIT has relied upon that advice.

14              Do you understand that, Mr. Haefner?

15              MR. HAEFNER:  I understand.

16              MR. KELLY:  And you're still directing

17   him not to answer?

18              MR. HAEFNER:  Correct.

19   BY MR. KELLY:

20        Q    Okay.  Now, going down to page 15 of the

21   answer, Dr. Deek.  Do you see that?

22        A    Yes, sir.

23        Q    Okay.  On page 15, there's a fifteenth

24   separate defense of avoidance.  Correct?

25        A    What's the question?

Page 149

1      Q      The question is:  Do you see that?

2      A      Oh, yeah.  I do see it.  Yes.  Yes.

3      Q      The one that reads, "No award of punitive

4  damages is supported as a matter of law because

5  defendant's alleged actions and inactions were not

6  willful, wanton, malicious, especially egregious or

7  with a reckless disregard for plaintiff's statutory or

8  other rights."  Correct?

9      A      Correct.

10      Q      And you don't maintain that NJIT's actions

11  were willful or in reckless disregard -- strike that.

12  Do you disagree that the actions of NJIT amount to

13  willful or reckless disregard of plaintiff's First

14  Amendment rights.  Correct?

15              MR. HAEFNER:  Objection.  Compound.

16  You can go ahead and answer.

17              THE WITNESS:  Correct.

18  BY MR. KELLY:

19      Q      Let me break it down, then.  You dispute

20  that defendant's actions were willful or malicious.

21  Correct?

22      A      Correct.

23      Q      And you dispute that defendant's actions --

24  I said defendants last time, right?  Defendant's

25  actions?

Page 150

1              MR. HAEFNER:  I'm not sure, Mr. Kelly.

2    BY MR. KELLY:

3        Q    Okay.  I'll ask it again.  Dr. Deek, you

4    dispute the defendant's actions were willful and

5    wanton.  Correct?

6        A    Correct.

7        Q    And you dispute that the defendants acted in

8    reckless disregard with plaintiff's First Amendment

9    rights.  Correct?

10       A    Correct.

11       Q    And in making that argument, you have relied

12   upon the advice of Holly Stern.  Correct?

13             MR. HAEFNER:  Objection to the form of

14   the question -- or not to the form.  Instruct the

15   witness not to answer the question.

16             MR. KELLY:  Please mark that for a

17   ruling as well.  I'd like to certify the question.

18   BY MR. KELLY:

19       Q    Furthermore, in disputing that your actions

20   were in reckless disregard of plaintiff's First

21   Amendment rights, you have also relied upon the Saiber

22   report of February 9, 2018.  Correct, Dr. Deek?

23       A    The what?  The what?

24             MR. HAEFNER:  Saiber report.

25             THE WITNESS:  Yes, sir.

Page 151

1    BY MR. KELLY:

2        Q    Do you see the seventh and eighth

3    affirmative defenses on page 14 of Exhibit 10?

4        A    I do.

5        Q    And they state that a decision -- well,

6    correct me if I'm wrong -- withdrawn.  Regarding the

7    eighth affirmative defense, it states that the

8    decision not to renew the plaintiff was legitimate and

9    non-retaliatory.  Is that correct?

10       A    Yes, sir.

11       Q    And the basis for that is, again, the Saiber

12   report of February 9, 2018.  Correct?

13                MR. HAEFNER:  Objection to the form of

14   the question.  You can go ahead and answer.

15                THE WITNESS:  Yes.

16   BY MR. KELLY:

17       Q    Did you also rely on the advice of Holly

18   Stern?

19                MR. HAEFNER:  Objection.  Witness is

20   instructed not to answer.

21                MR. KELLY:  Please mark that one for a

22   ruling, as well.  I'd like to certify that question

23   for a ruling on later.

24   BY MR. KELLY:

25       Q    Now, you've also asserted in the seventh

Page 157

1       Q    You maintain you did not knowingly violate

2   the law.   Correct?

3       A    Let me rephrase this.  No.  I don't want to

4   rephrase anything.  You said I did not know that we

5   violated the law?  Is that what you said?

6       Q    I want to make sure I have your defense

7   correct.  You are asserting in this lawsuit that you

8   have not knowingly violated the law.  Correct?

9       A    That's correct.  We did not knowingly

10  violate the law.  Yes.

11      Q    Okay.  But the law can be kind of

12  complicated.  Correct?

13      A    I think so.  Like most laws.  Yes, sir.

14      Q    And you indicated earlier that when you have

15  an issue of sensitivity or complexity, you turn to

16  other people to help you determine the best course of

17  action.  Correct?

18      A    That's correct.  I am the chief academic

19  officer.  My secondary title, the executive vice-

20  president, makes me the chief operating officer.

21  There is much more to running a university than that.

22  And therefore, I consult with others.  Yes, sir.

23      Q    And amongst those people you consult with

24  are Holly Stern.  Correct?

25      A    Correct.

Page 158

```
 1        Q    And you consulted with her to make sure you

 2   did not knowingly violate the law with regard to Jason

 3   Jorjani.  Correct?

 4               MR. HAEFNER:  Witness is instructed not

 5   to answer the question.

 6               MR. KELLY:  Please mark that for a

 7   ruling.  I'd like to have that question certified.

 8   BY MR. KELLY:

 9        Q    By the way -- you'll correct me if I'm

10   wrong, Dr. Deek -- but Saiber was not the only outside

11   law firm that NJIT consulted with to determine the

12   appropriate course of action with regard to Jorjani.

13   Was it?

14               MR. HAEFNER:  You can answer "yes" or

15   "no" or "I don't know."

16               THE WITNESS:  I don't know.

17   BY MR. KELLY:

18        Q    Okay.  If I showed you your privilege log

19   listing other attorneys, would that refresh your

20   recollection?

21        A    It might remind me what firm, yes, they are

22   from.  Because I obviously do recall meeting with

23   attorneys, but I don't know if they were all from one

24   firm.

25        Q    I appreciate that.
```

Page 159

1        A     To be frank.

2        Q     Yes.  I'm attempting to show you what was

3    marked previously as plaintiff's Exhibit No. 1.  It's

4    defendant's ESI privilege log dated January 28, 2020.

5    The font is very small.  But can you see that?

6                   MR. HAEFNER:  Yes.

7    BY MR. KELLY:

8        Q     Okay.  Let me maximize it a little bit.

9    I've got it up to 200 percent.  Is that more legible?

10                   MR. HAEFNER:  Yes.

11   BY MR. KELLY:

12       Q     Okay.  If we scroll down, page 8.  Looking

13   at entries for 124 on, they indicate that Holly Stern

14   consulted with Trish O'Reilly of the Walsh Law Firm

15   and Trevor Lyons of the Walsh Law Firm on or about

16   September 21, 2017.  Correct?

17       A     Trish et al. is correct.  I remember that.

18       Q     And that's Mr. Haefner's law firm.  The one

19   that's defending you today.  Correct?

20       A     Yes.

21       Q     Did the Walsh Pizzi law firm help to

22   formulate your response to the Jason Jorjani

23   situation?

24                   MR. HAEFNER:  Objection.  Witness is

25   instructed not to answer.

Page 160

1          MR. KELLY:  I'm just asking if he

2    consulted with you.  It's right there on your

3    privilege log there, sir.  What's objectionable?

4          MR. HAEFNER:  He said that there's been

5    consultation.

6          MR. KELLY:  Right.

7          MR. HAEFNER:  You asked, "Did they

8    formulate a response," which is the substance of

9    the --

10          MR. KELLY:  No.  I didn't ask what the

11    substance of the response was.  Right?  I'm just

12    asking what the subject of the inquiry was.

13          MR. HAEFNER:  The subject of the

14    inquiry is response to Leibel's [ph] New York Times

15    article.  That's why it's the subject line of the

16    email.

17          MR. KELLY:  That's right.  And that was

18    only the Jorjani article.  Right?

19          MR. HAEFNER:  I mean, the witness is

20    not going to testify about what the privilege says,

21    Mr. Kelly.

22          MR. KELLY:  No, no.  I want to make

23    sure that I've appropriately identified the elements

24    here.  And I need to know what the subject matter was.

25    That's right there in the local rule.

Page 161

1   BY MR. KELLY:

2       Q    When it says "Response to Leibel's New York

3   Times article," that means the Jorjani op-ed that we

4   discussed earlier.  Correct, Dr. Deek?

5           MR. HAEFNER:  He can answer.  I mean,

6   you're asking what he thinks that means.  He can

7   answer what he thinks it means.

8           THE WITNESS:  Correct.

9   BY MR. KELLY:

10      Q    So without saying what it was they advised

11  you to do, it remains true that the Walsh Pizzi Law

12  Firm helped to formulate the response to Jorjani's

13  situation.  Correct?

14          MR. HAEFNER:  But you've built into the

15  question, "helped to formulate the response."

16          MR. KELLY:  That's right.

17          MR. HAEFNER:  Which is the legal

18  advice.

19          MR. KELLY:  No, no, no.  I didn't say

20  "what steps did they actually take?"  Or "what steps

21  did they advise you to take."  I just want to know

22  that they helped you formulate the response.

23          MR. HAEFNER:  Witness is instructed not

24  to answer the question.

25          MR. KELLY:  Mark that for a ruling.  I