## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON JORJANI,<br><br>                Plaintiff,<br><br>v.<br><br>NEW JERSEY INSTITUTE OF<br>TECHNOLOGY, et al.<br><br>                Defendants. | Civil Action No. 2:18-cv-11693<br>WJM-JSA |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO MOTION TO DISQUALIFY

---

Marc D. Haefner
Tricia B. O'Reilly
Eric S. Padilla
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100
*Attorneys for Defendants*

*On the Brief:*

Marc D. Haefner
Tricia B. O'Reilly
Eric S. Padilla

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

RELEVANT BACKGROUND ...................................................................3

ARGUMENT .............................................................................................5

    I.    DISQUALIFICATION IS A DISFAVORED REMEDY THAT MUST BE SUPPORTED BY SUBSTANTIAL EVIDENCE.............5

    II.   DISQUALIFICATION UNDER RPC 1.12 IS NOT APPROPRIATE IN THIS CASE..........................................................5

    III.  PUBLICLY AVAILABLE NEW JERSEY SUPREME COURT RECORDS REFLECT THAT PLAINTIFF IS NOT REPRESENTED BY A LAWYER LICENSED TO PRACTICE IN NEW JERSEY ...........................................................................11

CONCLUSION ........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Alexander v. Primerica Holdings, Inc.,*
822 F. Supp. 1099 (D.N.J. 1993) ....................................................................5

*Carlyle Towers v. Crossland Sav.,*
944 F. Supp. 341 (D.N.J. 1996) .....................................................................5

*Escobar v. Mazie,*
2022 WL 1210207 (App. Div. Apr. 25, 2022) ..............................................8

*Essex Chem. Corp. v. Hartford Acc. & Indem. Co.,*
993 F. Supp. 241 (D.N.J. 1998) .....................................................................5

*Parallel Networks, LLC v. Abercrombie & Fitch Co.,*
2016 WL 3883392 (E.D. Tex. Apr. 1, 2016).................................................9

*Wright v. Lamas,*
2019 WL 1496055 (E.D. Pa. March 29, 2019)..............................................9

## RULES

RPC 1.12 ................................................................................................ 4, 5 10

RPC 1.12(a)......................................................................................................6

RPC 1.12(b)(1)..............................................................................................6, 7

RPC 1.12(b)(2)..................................................................................................7

Rule 1:21-1(a) ................................................................................................11

Rule 1:27-1 .....................................................................................................13

## PRELIMINARY STATEMENT

Plaintiff's Motion to Disqualify Defense Counsel (the "Motion"), in which he makes reckless allegations without evidence, is simply another example of Plaintiff's baseless and unnecessary multiplication of proceedings in this case. Indeed, Plaintiff and his counsel – neither of whom it appears is a currently licensed New Jersey lawyer -- have long forgotten the merits of this case, opting instead to attack the attorney-client privilege, the attorneys themselves, and now retired Judge Falk.   At some point, Plaintiff must engage with the merits of this matter and Defendants respectfully submit that that time should be now.

Plaintiff bases this latest distraction on an inadvertent error, namely, Plaintiff did not receive written notice from defense counsel that Judge Falk commenced employment with the Walsh firm ("Walsh" or the "Firm").   Of course, there was nothing clandestine about Judge Falk joining Walsh.   Indeed, given the numerous press stories about Judge Falk's retirement from the court and the open way the Firm highlighted Judge Falk's employment both on its own website and in the legal press, Plaintiff has not – and in fact, cannot – point to any evidence of any actual impropriety or prejudice.   While the written notice was not provided, that presents no basis under the case law for Plaintiff to hurl wild accusations of ethical violations, devoid of any actual evidence of a substantive lapse and in the absence of any

concomitant prejudice to Plaintiff.   Respectfully, Plaintiff's Motion should be denied.

## **RELEVANT BACKGROUND**

Given the Court's familiarity with the extensive procedural history of this matter, Defendants recite only those facts relevant to the disposition of the instant motion.

Since the inception of this matter in 2018 this firm, Walsh Pizzi O'Reilly Falanga LLP (the "Firm") has represented Defendants.[1]   On July 18, 2018, the Honorable Mark Falk (ret.), United States Magistrate Judge ("Judge Falk") was assigned as the magistrate judge in this matter.   On May 14, 2021, a full four and half months before Judge Falk retired, the case was reassigned to the Honorable Jessica S. Allen, United States Magistrate Judge.   On or about September 27, 2021, Judge Falk retired from the bench and thereafter began employment with the Firm. Judge Falk has neither worked on, nor received any portion of any fee from, this case.   *See* Certification of Marc D. Haefner, ("Haefner Cert.") ¶ 3.   At no time since Judge Falk joined the Firm did anyone discuss this matter with him and both lawyers and staff were explicitly directed not to do so.   *See* Haefner Cert., ¶¶ 4-5.   Also, Judge Falk has not had access to the systems utilized by the Firm to manage case-related documents.   *See* Haefner Cert., ¶ 6.

---

[1] This includes the subsequent matter captioned *Jorjani v. Deek, et al.*, No. 2:20-cv-01422, consolidated with the instant action by Order dated December 9, 2020.

On September 16, 2022, Plaintiff filed the Motion to Disqualify Defense Counsel (the "Motion"), contending that the Firm should be disqualified from continuing its representation of Defendants pursuant to Rule 1.12 of the New Jersey Rules of Professional Conduct ("RPC"). For the reasons set forth below, Defendants respectfully submit that the Motion should be denied.

## ARGUMENT

### I.    DISQUALIFICATION IS A DISFAVORED REMEDY THAT MUST BE SUPPORTED BY SUBSTANTIAL EVIDENCE

Disqualification is a disfavored remedy.  In fact, this Court has stated that "[m]otions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications. *Essex Chem. Corp. v. Hartford Acc. & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998) (citing *Carlyle Towers v. Crossland Sav.,* 944 F. Supp. 341, 345 (D.N.J. 1996); *Alexander v. Primerica Holdings, Inc.,* 822 F. Supp. 1099, 1114 (D.N.J.1993)).  Although doubts are to be resolved in favor of disqualification, ***a party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof.***  *Id.* (citing *Carlyle Towers,* 944 F. Supp. at 345; *Alexander,* 822 F. Supp. at 1114.) (emphasis added).

Here, as set forth below, Plaintiff's surmise can neither carry this "heavy burden" or meet any standard of proof, much less a "high" standard.

### II.    DISQUALIFICATION UNDER RPC 1.12 IS NOT APPROPRIATE IN THIS CASE

RPC 1.12 provides:

> (a) Except as stated in paragraph (c), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, mediator or other third-party neutral, or law clerk to such a person, unless all parties to the proceeding have given consent, confirmed in writing.

5

(b) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

1. the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
2. written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

(c) A lawyer shall not negotiate for employment with any person who is involved as a party or as an attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, arbitrator, mediator, or other third-party neutral.  A lawyer serving as law clerk to such a person may negotiate for employment with a party or attorney involved in a matter in which the law clerk is participating personally and substantially, but only after the lawyer has notified the person to whom the lawyer is serving as a law clerk.

Thus, pursuant to RPC 1.12(a), Judge Falk was barred from representing anyone in this matter because he had previously participated in the matter as a judge. Further, because of Judge Falk's *de jure* disqualification, the undersigned Firm was required to do three things: a) screen Judge Falk from any participation in the matter; b) not apportion any fees from this matter to Judge Falk; and c) provide written notice to Jorjani's counsel and the tribunal.  RPC 1.12(b)(1) (setting out screening and fee requirements) and (2) (setting out notice requirement).

As set forth above and in the accompanying certifications, RPC 1.12(b)(1) has been met because Judge Falk has been screened, Judge Falk has not participated in

the matter, and Judge Falk has been apportioned no part of the fees from this matter. (*See* Haefner Cert., *passim*).

As to the written notice required by RPC 1.12(b)(2), Plaintiff is correct that such written notice was not sent.  Tellingly, however, the fact of Judge Falk joined the Firm was widely publicized, as is evident from the Law360 article appended to Plaintiff's own counsel's certification in support of the Motion.  (*See* Kelly Cert., Ex. 1).  In addition, this information was published through: (1) a Firm press release dated September 30, 2021 (Haefner Cert., Ex. A); (2) an article published by yahoo!finance dated October 1, 2021 (Haefner Cert., Ex. B); (3) an article published by PRNewswire dated October 1, 2021 (Haefner Cert., Ex. C); and (4) an article published by ROI-NJ dated October 4, 2021 (Haefner Cert., Ex. D).  That Judge Falk joined the Firm was no secret to the bench or the bar in this District.  Indeed, Judge Falk's association with the Firm is openly displayed on the Firm's website. Plaintiff's substantial reliance on such public sources to seek the Firm's disqualification months later proves that this open display reached the very people who are now complaining about a lack of written notice.

From the failure to provide written notice in the exact manner mentioned by the rule, Plaintiff cavalierly reasons "it is only reasonable to assume that Defense Counsel have violated RPC 1.12(b)(1)."  (Moving Br., at 4).  But Plaintiff's wild guesswork of ethical impropriety based solely on failure to get written notice and

nothing more is just the sort of surmise that cannot carry Plaintiff's heavy burden to prove that disqualification is warranted.  Simply put, Defendants' acknowledgement that affirmative written notice was not specifically provided to Plaintiff does not support Plaintiff's reckless and conspiratorial leap that the defense counsel and Judge Falk engaged in improper conduct by consulting with Judge Falk on this matter after his employment.

Indeed, Plaintiff's accusation that the former Chief Magistrate Judge and defense counsel have engaged in ethical violations is entirely divorced from any actual facts that could show such a substantive violation.  In the end, the error that led to Plaintiff not specifically getting written notice should not now operate to deprive Defendants of counsel of their choosing at this stage in this matter, which recently eclipsed the four-year mark.

Further, case law does not support Plaintiff's request for disqualification in these circumstances.  For example, in an informative decision, the Appellate Division recently affirmed a lower court ruling denying a motion to disqualify which sought disqualification in part because of a lack of written notice.  *See Escobar v. Mazie*, No. A-3761-20, 2022 WL 1210207, at *3 (App. Div. Apr. 25, 2022).  There, a former judge who participated in mediation sessions among the parties became affiliated with newly retained defense counsel by virtue of a merger of two firms.

8

*Id.* at \*2.  Considering and agreeing with the trial court's holding that the lack of

notice was not dispositive, the Appellate Division explained:

> Although finding Wilentz should have notified plaintiff's counsel the
> mediator had joined the firm and the procedures it had put in place to
> screen him from the case, the judge found its failure to do so did not
> disqualify Wilentz from representing defendants.  The judge noted
> there was no dispute that plaintiff's counsel became aware of the
> merger shortly after it occurred through the public announcement and
> immediately brought it to the firm's attention, thus achieving the
> essential purpose of the notice requirement – to apprise interested
> parties of the circumstances and ensure the procedures required by the
> Rule are established contemporaneously with the individual's arrival at
> a law firm.

*Id.* at \*3 (internal quotations omitted).  Similarly, in *Wright v. Lamas*, No. 13-cv-

06420-WB, 2019 WL 1496055, at \*7 (E.D. Pa. March 29, 2019), a seven to eight-

month period for notice of a former judge's employment was found to be sufficient

because there was no actual participation by the judge in the matter after the judge's

employment, and the appropriate screening procedures were then fully in place.

Further, in *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, the United

States District Court for the Eastern District of Texas considered, and rejected, a

motion for disqualification based upon a delay in providing notice of a former judge

having joined the firm representing defendants.  No. 6:10-cv-111, 2016 WL

3883392, at \*3 (E.D. Tex. Apr. 1, 2016).  Weighing a delayed notice against "the

seriousness of deprivation of counsel at this late stage," disqualification of defense

9

counsel was found to be unwarranted under the circumstances, which included the advanced state of the case and right of a party to choose its own counsel. *Id.*

Thus, Plaintiff's conclusory statement that the absence of written notice demonstrates a failure to comply with the balance of RPC 1.12 is without basis. As discussed above, the following facts are sufficient to enable Plaintiff and this Court to "ascertain compliance with the provisions of" RPC 1.12:

- Judge Falk has had no involvement in this matter whatsoever since joining the Firm. *See* Haefner Cert., ¶ 3.

- Judge Falk has been apportioned no part of any fee in connection with this matter. *See id.*

- The Firm's lawyers and staff have been specifically directed not to discuss this matter with Judge Falk. *See* Haefner Cert., ¶ 5.

- Judge Falk has in fact had no communications with any of the Firm's lawyers or staff relating to this matter. *See* Haefner Cert., ¶ 4.

- Judge Falk does not have access to the electronic platforms used by the Firm to store, view, edit, or otherwise interact with documents relating to this matter. *See* Haefner Cert., ¶ 6.

We are mindful of the fact that written notice was not specifically given. Nevertheless, we respectfully submit that, under the totality of the circumstances, the Firm's disqualification on the Motion presented is not warranted.

### III.   PUBLICLY AVAILABLE NEW JERSEY SUPREME COURT RECORDS REFLECT THAT PLAINTIFF IS NOT REPRESENTED BY A LAWYER LICENSED TO PRACTICE IN NEW JERSEY

Perhaps explaining Plaintiff's general approach to this case – which has been to multiply the proceedings with arguments on privilege (none of which has been seen as colorable by the Court) and other distractions (such as arguing about the proper steps to seal documents under the Local Rules), Defendants have just discovered that Joseph Haspel, who signed the pending Motion to Disqualify the undersigned Firm, is not licensed to practice law in New Jersey.[2]  Indeed, it appears as though Mr. Haspel has been administratively ineligible to practice law in the State of New Jersey since November 10, 2015.  (*See* New Jersey Supreme Court Order dated November 10, 2015, Haefner Cert., Ex. E).  That is, in November of 2015 his license was suspended for failure to make annual payments to the Court or for failure to meet CLE requirements.[3]  Thus, even prior to his 2020 appearance in this matter,

---

[2] Mr. Haspel acts as Mr. Kelly's local counsel because Mr. Kelly has never been barred in New Jersey and is thus admitted here *pro hac vice*.

[3] Administrative ineligibility is defined as:

The attorney is not currently eligible to practice law in New Jersey for one or more reasons, including failure to pay the annual attorney assessment to the New Jersey Lawyers' Fund for Client Protection, failure to comply with continuing legal education (CLE) requirements, failure to register with IOLTA or maintain IOLTA accounts, or failure otherwise to meet the requirements of Rule 1:21-1(a). Administrative ineligibility is not the result of discipline, but attorneys who are administratively ineligible are not allowed to practice New Jersey law.

it appears that Mr. Haspel was suspended from the practice of law in New Jersey. This would appear to reflect an intentional determination to withdraw from New Jersey bar membership since 2015.  Mr. Haspel was presumably aware of the fact that for seven years he had neither paid bar association dues he was accustomed to paying, nor had he undertaken the rigorous New Jersey CLE requirements for a lengthy period of time.[4]   Indeed, the New Jersey Supreme Court issued an order every year from 2015 through 2020 with Mr. Haspel's name in it.  (*See* New Jersey Supreme Court Orders for 2015, 2016, 2017, 2018, 2019, 2020, Haefner Cert., Ex. E)

Eventually, according to (i) a publicly available New Jersey Supreme Court Order dated July 12, 2021; and (ii) the Judiciary's attorney index, it appears that Mr. Haspel's license to practice law in New Jersey was fully revoked because he had been suspended from practicing in New Jersey for so many consecutive years.[5]  (*See*

---

(*See* Definitions and Explanations for Attorney Status, Haefner Cert., Ex. F).

[4] The Supreme Court's Orders describe the efforts undertaken by the Trustees of the New Jersey Lawyers' Fund for Client Protection and/or the Supreme Court Board on Continuing Legal Education to provide notice to attorneys subject to administrative ineligibility or revocation, including (i) mailing such notices and the relevant Orders; (ii) publication in the *New Jersey Law Journal*; and (iii) posting such information on the Judiciary's website.  (*See* Haefner Cert., Ex. E).

[5]  "License Administratively Revoked" is defined as:

> For seven consecutive years, the attorney was declared by Supreme Court Order to be administratively ineligible to practice law for failing

New Jersey Supreme Court Order dated July 12, 2021, Haefner Cert., Ex. E; *see also* Screenshot of "Attorney Detail," Haefner Cert., Ex. G).

Despite being ineligible to appear in New Jersey since 2015, Mr. Haspel was substituted as counsel for Plaintiff in this action on June 25, 2020 (D.E. # 51).  This substitution was required because Mr. Kelly is not a member of the New Jersey bar and his prior New Jersey counsel had withdrawn.  Remarkably, it appears as though Mr. Haspel's substitution was filed after the issuance of not fewer than ***six New Jersey Supreme Court Orders identifying Mr. Haspel as ineligible to practice law in the State of New Jersey***.  (*See generally*, Notices to the Bar, https://www.njcourts.gov/attorneys/notices.html).

Thus, it appears that despite Court filings in this matter that suggest otherwise, Plaintiff has not had a licensed New Jersey attorney representing him in this matter since June 25, 2020.

Notwithstanding the foregoing, and unlike Plaintiff's counsel's speculative guesswork in the instant Motion, we do not presume that this discovery is full and

---

to pay the annual attorney assessment to the New Jersey Lawyers' Fund for Client Protection and the Supreme Court has revoked the attorney's license on this administrative basis.  It is not a status based on discipline, but the attorney is not allowed to practice New Jersey law. Any subsequent application for admission to the New Jersey bar shall be in accordance with the provisions of Rule 1:27-1.

(*See* Haefner Cert., Ex. F).

final evidence of some additional impropriety such as Mr. Kelly, an attorney practicing pursuant to a *pro hac vice* which requires him to partner with a licensed New Jersey attorney, being aware of, benefitting from or otherwise assisting in Mr. Haspel's seeming unlicensed legal representation in this case.  What is clear is that Mr. Haspel's extended period of ineligibility to practice in New Jersey – and what is now a full revocation of that right – is a problematic discovery that demands Plaintiff's attention and response.

Having reviewed the public records that seem to indicate that Plaintiff's "New Jersey counsel" has had his New Jersey license revoked, we make no cross-motion at this time.  Rather, we leave the resolution of Plaintiff's current and past lack of an attorney properly barred in New Jersey in the hands of the Court for such further direction as Your Honor deems appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request entry of an Order both (A) denying the Motion in its entirety; and (B) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 3, 2022

Respectfully submitted,

**WALSH PIZZI O'REILLY FALANGA LLP**

*s/ Marc D. Haefner*

By:   Marc D. Haefner
       Tricia B. O'Reilly
       Eric S. Padilla

Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100

*Attorneys for Defendants*