NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON JORJANI,<br><br>      **Plaintiff,**<br><br>v.<br><br>NEW JERSEY INSTITUTE OF<br>TECHNOLOGY, FADI P. DEEK, *et al*.,<br><br>      **Defendants.** | **Civil Action No. 18-11693 (WJM) (JSA)**<br><br><br>**OPINON AND ORDER** |

**JESSICA S. ALLEN, U.S.M.J.**

Before the Court is Plaintiff Jason Jorjani's ("Plaintiff") motion to disqualify the law firm of Walsh Pizzi O'Reilly and Falanga LLP (the "Firm") from continuing to represent Defendants[1] in this case.  (ECF No. 110).  Defendants oppose the motion.  (ECF No. 111).  The motion is decided without oral argument, pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, and for good cause shown, Plaintiff's motion is **DENIED**.

**I.      BACKGROUND**

This case arises from Defendants' non-renewal of Plaintiff's contract as a philosophy lecturer at NJIT.  In essence, Plaintiff alleges that NJIT and certain members of its administration engaged in a conspiracy to violate Plaintiff's First Amendment rights because they disapproved of his political speech, views, and participation in certain political organizations.  Prior opinions in this case provide

---

[1] Defendants are New Jersey Institute of Technology ("NJIT"); Joel S. Bloom; Kevin J. Belfield; Gareth J. Russell; Andrew Klobuchar; Neil J. Maher; Fadi P. Deek; Holly Stern; and Christine Li (collectively, "Defendants").

a more detailed factual and procedural background.[2]   Since the Court writes only for the parties, the Court presumes the parties have familiarity with the facts and extensive procedural history. Therefore, a factual and procedural background section is omitted.

## II.      **THE INSTANT MOTION**

This case was commenced on July 17, 2018.  (ECF No. 1).  From the inception, Defendants have been represented by the Firm.  (ECF No. 7).  The Honorable Mark Falk, (Ret.) ("Judge Falk"), presided over this case as the assigned Magistrate Judge until May 14, 2021, when the matter was reassigned to the Undersigned.  On or about September 27, 2021, Judge Falk retired from the bench and joined the Firm.  (Defs.' Br. at 3; ECF No. 111).

Nearly one year later, on September 16, 2022, Plaintiff moved to disqualify the Firm, pursuant to New Jersey Rule of Professional Conduct ("RPC") 1.12.  (ECF No. 110).  RPC 1.12 precludes, among other things, a lawyer from representing a party in a case in which the lawyer previously participated, personally and substantially as judge, and imputes that disqualification to the lawyer's firm, unless the firm timely screens the disqualified lawyer and provides prompt written notice to the parties and court.  *See* RPC 1.12(a)-(b).  Plaintiff contends that Judge Falk is disqualified from representing Defendants.  (Pl.'s Br. at 3-4; ECF No. 110-3; Pl.'s Reply Br. at 2-3; ECF No. 113).  Plaintiff further contends that Judge Falk's disqualification should be imputed to the Firm because the Firm neither timely screened Judge Falk nor provided Plaintiff's counsel with prompt written notice of Judge Falk's employment.  (*Id.*).

---

[2] *See, e.g., Jorjani v. NJIT*, 2022 WL 1811304 (D.N.J. June 2, 2022); *Jorjani v. NJIT*, 2021 WL 4237255 (D.N.J. Sept. 17, 2021); *Jorjani v. NJIT*, 2021 WL 82325 (D.N.J. Jan. 11, 2021); *Jorjani v. Deek*, 2020 WL 5422802 (D.N.J. Sept. 20, 2020); *Jorjani v. NJIT*, 2019 WL 2611128 (D.N.J. June 26, 2019); *Jorjani v. NJIT*, 2019 WL 1125594 (D.N.J. Mar. 12, 2019).

Defendants concede that Judge Falk has a conflict, and thus cannot represent Defendants; yet they contend that disqualification is improper. (Defs.' Br. at 3, 6; ECF No. 111). In support of their position, Defendants advance two main arguments. First, in compliance with RPC 1.12(b)(1), Judge Falk has been screened from the case and has not been apportioned any fees therefrom. (*Id.* at 5-6). Second, while the Firm inadvertently failed to provide Plaintiff with written notice, pursuant to RPC 1.12(b)(2), Judge Falk's new association with the Firm was well-publicized and Plaintiff's counsel undisputedly became aware of Judge Falk's employment. (*Id.* at 1, 7-10). Thus, according to Defendants, disqualification is not warranted under the circumstances. (*Id.*).[3]

## III.   **LEGAL STANDARD**

Local Civil Rule 103.1(a) establishes that the American Bar Association's Rules of Professional Conduct, as revised by the Supreme Court of New Jersey, govern the conduct of the members of the bar admitted to this Court. *See United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996), *cert. denied* 519 U.S. 1011 (1996); *see also Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 456 (D.N.J. 2010). "Resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against a client's right to freely choose his

---

[3] In opposition, Defendants raise a separate but somewhat related issue. They contend that Plaintiff's then-counsel of record, Joseph Haspel, Esq., had been suspended from the practice of law in New Jersey in 2015, for failure to make annual payments and fulfill CLE requirements. (Certification of Marc D. Haefner, Esq., at Ex. E (herein, "Haefner Certification" or "Haefner Cert.")). According to Defendants, despite the apparent suspension of his New Jersey license, Mr. Haspel entered an appearance on behalf of Plaintiff in this action on June 25, 2020. (ECF No. 51). He continued to serve as Plaintiff's counsel of record for two years, including signing and filing Plaintiff's motion to disqualify the Firm. (*See* ECF No. 110). In their opposition papers, Defendants do not appear to seek any affirmative relief in response to Mr. Haspel's actions. Rather, Defendants seem to highlight the foregoing for the purpose of invoking the old proverb -- "those who live in glass houses shouldn't throw stones." That said, Mr. Haspel submitted a letter apologizing for his mistaken assumption that he was in good standing to practice law in this Court. (ECF No. 114). On October 26, 2022, Patrick Trainor, Esq., entered an appearance as Plaintiff's counsel of record. (ECF No. 115). On October 28, 2022, Mr. Trainor and Mr. Haspel executed a substitution of counsel. (ECF No. 117). While it is undisputed that Mr. Haspel could not properly appear in this Court, and should not have done so, he has been replaced by New Jersey licensed counsel, Mr. Trainor. Accordingly, this issue is now moot.

counsel." *Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J.1995).

Disqualification motions are disfavored. *See Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). The party seeking disqualification must carry a heavy burden of proof before a lawyer will be disqualified. *See Kaselaan & D'Angelo Assoc., Inc. v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992). Disqualification is considered "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993). Although violation of a RPC may result in disqualification, it is "never automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). Courts must consider "countervailing policies, such as permitting a litigant to retain counsel of his choice and enabling lawyers to practice without excessive restrictions." *Id*. As the Third Circuit has noted,"[s]ometimes disqualification is more disruptive than helpful even though an attorney may not have satisfied his or her professional obligations. And, indeed, courts in our Circuit <u>often deny disqualification even when finding or assuming conflicts under the professional conduct rules</u>." *In re Boy Scouts of America*, 35 F.4th 149, 160 (3d Cir. 2022) (citing cases) (emphasis added).

Although not addressed by the parties in their respective submissions, if the RPCs have been violated, the Third Circuit has instructed courts to consider whether disqualification is warranted by reviewing certain factors. These particular factors may vary from case to case, "but generally include [1] the ability of litigants to retain loyal counsel of their choice, [2] the ability of attorneys to practice without undue restriction, [3] preventing the use of disqualification as a litigation strategy, [4] preserving the integrity of legal proceedings, and [5] preventing unfair prejudice." *Id*. (brackets and

4

numbers added) (herein, the "*Boy Scouts* factors").[4]

Here, Plaintiff asserts that the Firm should be disqualified under RPC 1.12, which provides

in relevant part:

> (a) Except as stated in paragraph (c), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, mediator or other third-party neutral, or law clerk to such a person, unless all parties to the proceeding have given consent, confirmed in writing.
>
> (b) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
>
> 1. the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> 2.  written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

*Id.*  Guided by the Third Circuit's instructions, this Court considers whether Defendants violated

RPC 1.12, and if so, whether disqualification is warranted based on the *Boy Scouts* factors.

## IV.    ANALYSIS

It is undisputed that former Judge Falk's role as the Magistrate Judge in this case disqualifies

him from representing Defendants, pursuant to RPC 1.12(a).  The critical issue is whether Judge

Falk's disqualification should be imputed to the Firm, pursuant to RPC 1.12(b).  To answer that

---

[4] The Third Circuit in *In re Boy Scouts* referenced the *Wyeth* case, wherein the district judge set forth a similar set of factors to be considered by the reviewing court when assessing the appropriateness of disqualification.  Those factors include: (1) prejudice to the non-moving party; (2) prejudice to the moving party; (3) the cost—in terms of time and money—to retain new counsel; (4) the complexity of the issues in the case and the time it would take for new counsel to acquaint themselves with the facts and issues; and (5) which party, if either, was responsible for creating the conflict. *See Wyeth*, 692 F. Supp. 2d at 459; *see also High Five Games, LLC v. Marks*, 2018 WL 2278103, at *5-6 (D.N.J. May 18, 2018) (citing *Wyeth* for relevant factors to consider).

question, this Court first evaluates whether the Firm complied with the following three requirements set forth in RPC 1.12(b) by: (1) timely screening Judge Falk from any participation in the matter, (*see* RPC 1.12(b)(1)); (2) not apportioning him any fees therefrom (see *id*.); and (3) providing written notice to Plaintiff's counsel and the tribunal to enable them to determine compliance with RPC 1.12(b). *See* RPC 1.12(b)(2).

### A.  Screening and No Apportionment of Fees

With respect to the first two requirements, Defendants submit the Haefner Certification, which states, in relevant part:

- "[Judge Falk] has neither worked on, participated in, nor received any portion of any fee from, this case since joining the firm," (Haefner Cert., ¶ 3);
- "At no time since Judge Falk joined the Firm did anyone working at the Firm discuss the Jorjani matter with Judge Falk," (Haefner Cert., ¶ 4);
- "Lawyers and staff working on this matter were directed not to discuss it with Judge Falk," (Haefner Cert., ¶ 5); and
- "Judge Falk does not have access to the systems utilized by the Firm to manage case-related documents in this matter," (Haefner Cert., ¶ 6).

Plaintiff argues that the Haefner Certification is insufficient to establish that the Firm complied with RPC 1.12(b)(1). According to Plaintiff, the certification does not detail when these directives were given nor has Judge Falk submitted a supporting certification. (Pl.'s Reply Br. 4).

Based on its review of the Haefner Certification, the Court is satisfied that the Firm has complied with both requirements of RPC 1.12(b)(1). Mr. Haefner is an officer of the Court representing, under the penalty of perjury, that Judge Falk "has neither worked on," nor "participated in. . . the case since joining the firm," and that "[a]t no time" since Judge Falk joined the Firm did "anyone working at the Firm discuss" this case with Judge Falk. (Haefner Cert., ¶¶ 3-4). Thus, contrary to Plaintiff's claim, Haefner's Certification *is* specific about when Judge Falk was screened

from the case—that is, since he commenced employment with the Firm. (*Id.*) As to Plaintiff's contention that Judge Falk must submit an affidavit, this Court disagrees. An attorney certification attesting to compliance with the Rules of Professional Conduct, such as RPC 1.12(b) here, is sufficient. *See, e.g., American Tax Funding LLC v. City of Schenectady*, 2014 WL 6804297, at \*4 (N.D.N.Y. Dec. 2, 2014) (accepting certification from counsel, without an affidavit of any type from conflicted lawyer, regarding screening pursuant to the New York Rule of Professional Conduct 1.12). As the *American Tax* court explained, "attorneys who appear before the Court are deemed to be officers of the Court and are expected to address the Court truthfully at all times. The Court accepts [the attorney's] representation as truthful." *Id.* at \*4 n.4. As such, the Court finds the Firm has complied with RPC 1.12(b)(1).

### B.  Written Notice to Plaintiff's Counsel

As to the third requirement, the Firm concedes that it did not provide written notice of Judge Falk's new employment to Plaintiff's counsel. However, Defendants rely on *Escobar v. Mazie*, 2022 WL 1210207 (N.J. App. Div. Apr. 25, 2022), to argue that the contemporaneous disclosure of Judge Falk's employment in numerous publications effectively made Plaintiff's counsel aware of Judge Falk's association with the Firm and is sufficient to avoid disqualification. (Defs.' Br. at 7-8).

In *Escobar*, the plaintiff's counsel moved to disqualify opposing counsel based on, in part, a lack of written notice pursuant to RPC 1.12(b)(2). The Court found the lack of written notice was insufficient to support disqualification:

> Although finding Wilentz should have notified plaintiff's counsel the mediator had joined the firm and the procedures it had put in place to screen him from the case, the judge found its failure to do so did not disqualify Wilentz from representing defendants. The judge noted there was no dispute that plaintiff's counsel became aware of the merger shortly after it occurred

> through the public announcement and immediately brought it to the firm's attention, thus achieving the essential purpose of the notice requirement – to apprise interested parties of the circumstances and ensure the procedures required by the Rule are established contemporaneously with the individual's arrival at a law firm.

*Id*. at *3.

Here, Defendants explain that news of Judge Falk joining the Firm was widely publicized through several news outlets, including: (1) the publication of a Law360 article dated September 30, 2021 (*see* Certification of Frederick C. Kelly, Esq., at Ex. 1); (2) a Firm press release dated September 30, 2021 (Haefner Cert., ¶ 7 & Ex. A); (3) an article published by yahoo!finance dated October 1, 2021 (Haefner Cert., ¶ 8 & Ex. B); (4) an article published by PRNewswire dated October 1, 2021 (Haefner Cert., ¶ 9 & Ex. C.); and (5) an article published by ROI-NJ dated October 4, 2021 (Haefner Cert., ¶ 10 & Ex D).  This fact is undisputed.

However, to the extent the Court's analysis in *Escobar* is instructive, the proper inquiry turns on whether Plaintiff's counsel became aware of Judge Falk's employment shortly after it occurred. *See Escobar*, 2022 WL 1210207 at *3.  Some courts have found that the written notice requirement has been satisfied even if the notice is delayed or accomplished through indirect disclosure.  *See, e.g., id.* (delayed notice sufficient); *Burkhardt v. Kastell*, 2018 WL 2921911, at *2 n.1 (N.J. App. Div. June 18, 2018) (written notice provision of RPC 1.12(b)(2) satisfied through indirect disclosure via law firm's letterhead); *see also Networks v. Abercrombie & Fitch Co.*, 2016 U.S. Dist. LEXIS 104166, at *8-9 (E.D. Tex. Apr. 1, 2016) (three week delay in providing notice of judge's employment with law firm was timely).

Plaintiff's counsel states that he did not become aware of Judge Falk's association until "months after" it happened.  (Plaintiff's Reply Br. at 4; ECF No. 112).  Accordingly, based on the

present record, it does not appear that Defendants provided Plaintiff's counsel with prompt notice of Judge Falk's employment as contemplated by RPC 1.12(b)(2). Yet, it is unclear whether the essential purpose of the written notice requirement was achieved since Plaintiff's counsel became aware of Judge Falk's employment, albeit "months later" through news articles. This Court's review of the judicial landscape has not uncovered any cases squarely addressing these circumstances. Nonetheless, even assuming the Firm's indirect disclosure contemporaneous with Judge Falk's new employment does not comply with RPC 1.12(b)(2), this does not end the inquiry. As the Third Circuit has made clear, a court may not reflexively disqualify counsel. To that end, this Court must determine whether disqualification is warranted by applying the *Boy Scouts* factors.

### C. Application of the *Boy Scouts* Factors

Disqualification is a drastic remedy not to be lightly imposed. *See Alexander*, 822 F. Supp. at 1114. As the Third Circuit instructs, the *Boy Scouts* factors must be considered and approached with "a keen sense of practicality." *Wyeth,* 692 F. Supp. at 459 (citation omitted).

The first *Boy Scouts* factor is the ability of a party to retain counsel of its choice. *Id.* at 160. The Firm has represented Defendants since the beginning of the case. The case has been pending for more than four (4) years. The parties have been engaged in complicated and disputed discovery and motion practice. The Firm has a deep understanding of the case and the issues. Absent a compelling reason to the contrary, Defendants should be entitled to retain counsel of their choice.

The second *Boy Scouts* factor—the ability of attorneys to practice without undue restriction— supports allowing the Firm to remain in the case. *Id.* Disqualifying an entire law firm due to one lawyer's employment, when that lawyer has been timely screened from participating in the case and is not receiving any portion of the fee therefrom, would be inappropriate and unduly drastic.

9

The third *Boy Scouts* factor is preventing the use of disqualification as a litigation strategy. *Id.* On the present record, there is nothing to suggest that Plaintiff's motion was brought as part of a larger litigation strategy.

The fourth factor is whether allowing the Firm to remain in the case would upset the integrity of the legal proceedings. *Id.* The Court finds that permitting the Firm to remain as defense counsel would not impact the integrity of the proceedings. At most, the Firm may have committed a technical violation by failing to provide prompt written notice of Judge Falk's employment to Plaintiff's counsel. Yet, Judge Falk has been screened and has not been apportioned any fee associated with this case, in compliance with RPC 1.12(b)(1). Moreover, Judge Falk's employment was publicly announced and disseminated.

The final *Boy Scouts* factor is preventing unfair prejudice. *Id.* Removing the Firm and forcing new lawyers to be substituted into the case would have a palpable prejudicial impact on Defendants. The Firm has developed and implemented Defendants' defense to the allegations in the Complaint, as well as spent years litigating pretrial and discovery motion practice and related issues. Indeed, there are additional discovery disputes pending before this Court. To date, the level of defense counsel's involvement has been substantial. Requiring Defendants to retain new counsel now would undoubtedly result in substantial expenditure of time and money and further delay the case—all at a time when the Court is attempting to move the case forward to a resolution on the merits. On the other hand, Plaintiff has not demonstrated how, if at all, he would be prejudiced by the Firm remaining in the case. Further, the Court does not find any such prejudice exists. This is not a case involving a particularly egregious ethical violation, for example, when a lawyer has obtained confidential information from a client and then later attempts to use confidential

information against that client in a different case.  *See, e.g. Carreno v. City of Newark*, 834 F. Supp. 2d 217 (D.N.J. 2011) (disqualification warranted in case of side-switching lawyer that misused confidential information).  In short, the Firm's actions do not warrant the drastic consequence of disqualifying Defendants' long-standing counsel.

Accordingly, after considering the relevant factors identified by the Third Circuit in *In re Boy Scouts,* this Court finds that Plaintiff has not carried his burden of showing that the Firm should be disqualified.  Indeed, Plaintiff has not shown that disqualification, a drastic remedy, is absolutely necessary.

## V.    CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS on this 16th day of March, 2023**,

**ORDERED** that Plaintiff's motion to disqualify the Firm, (ECF No. 110), is **DENIED**.

s/Jessica S. Allen
**JESSICA S. ALLEN**
**United States Magistrate Judge**
