<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **JASON JORJANI,**<br><br>　　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**NEW JERSEY INSTITUTE OF**<br>**TECHNOLOGY, et al.,**<br><br>　　　　　**Defendants.** | **Civil Action Nos.  18-11693 (WJM)**<br><br><br>**OPINION** |

<u>**ALLEN, U.S.M.J.**</u>

　　　Before the Court are the parties' respective letter applications stemming from deposition disputes.  First, the parties seek rulings with respect to several objections asserted by counsel for Defendants[1] at the depositions of: (1) Defendant NJIT Provost and Senior Executive Vice President, Fadi P. Deek ("Deek"); (2) Defendant Kevin J. Belfield ("Belfield"), Dean of the NJIT College of Science and Liberal Arts; and (3) former defendant Eric Katz[2] ("Katz"), Professor of Philosophy and Chair of Department of Humanities.  Each of defense counsel's objections is based on the attorney-client privilege.  Second, Plaintiff Jason Jorjani ("Plaintiff") contends that certain deposition testimony supports his application to compel the production of written communications previously identified on Defendants' privilege log and to compel the depositions of defense

---

[1] Defendants are New Jersey Institute of Technology ("NJIT"); Joel S. Bloom ("Bloom"); Kevin J. Belfield ("Belfield"); Gareth J. Russell ("Russell"); Andrew Klobuchar ("Klobuchar"); Neil J. Maher ("Maher"); Fadi P. Deek ("Deek"); Holly Stern ("Stern"); and Christine Li ("Li") (sometimes collectively, "Defendants").

[2] On September 10, 2020, Katz was dismissed from the case by Order issued by the Honorable William J. Martini, U.S.D.J. (ECF No. 34).

attorneys Tricia O'Reilly ("O'Reilly") and M. Trevor Lyons ("Lyons") of the Walsh Pizzi O'Reilly and Falanga law firm ("Walsh Firm"), arguing that Defendants have waived the attorney-client privilege.  Plaintiff further seeks to compel written communications between Katz and Christine Li ("Li"), Associate General Counsel and Ethics Liaison Officer, as well as between Katz and Belfield, arguing no privilege attaches to these communications based on Katz's deposition testimony.  Finally, Defendants contend that Plaintiff's counsel has repeatedly advanced frivolous arguments to invade the attorney-client privilege, and thus Defendants request sanctions be imposed on Plaintiff's counsel, pursuant to 28 U.S.C. § 1927.

The Court did not hear oral argument, pursuant to Fed. R. Civ. P. 78.  After carefully considering all of the parties' submissions, and for the reasons set forth below, as to the propriety of defense counsel's objections to deposition questions based on the attorney-client privilege, the Court OVERRULES IN PART AND SUSTAINS IN PART defense counsel's objections.  Plaintiff's application to compel the production of the communications previously listed on Defendants' privilege log based on waiver of the attorney-client privilege and to compel the deposition testimony of attorneys O'Reilly and Lyons are DENIED.  Plaintiff's application to compel the production of written communications between Katz and Li as well as between Katz and Belfield previously listed on Defendants' privilege log is DENIED.  Defendants' application for sanctions is DENIED.

## I.     RELEVANT BACKGROUND

The facts and procedural history of this case are well-known to the parties and detailed in multiple opinions and orders.  (*See, e.g.,* ECF Nos. 14, 28, 58, 60, 75, 95 & 131).  The Court recites only those facts and procedural history relevant to addressing the instant discovery disputes and applications.

Plaintiff filed suit against Defendants, arising from the non-renewal of Plaintiff's contract as a philosophy lecturer at NJIT.  In essence, Plaintiff alleges that NJIT and certain members of its administration engaged in a conspiracy to violate Plaintiff's First Amendment rights because they disapproved of his political speech, views, and participation in certain political organizations.

The parties have been engaging in extensive fact discovery since 2019.  The genesis of the instant discovery disputes and applications dates back to November 16, 2021.  A recitation is necessary before addressing the merits of the parties' respective positions.

On November 16, 2021, this Court held a Telephone Status Conference wherein the parties' raised disputes that arose during court ordered fact witness depositions.  (*See* ECF No. 83).  Specifically, in response to several questions posed by Plaintiff's counsel, defense counsel objected on the basis of the attorney-client privilege and then instructed the witnesses not to answer to preserve the privilege ("deposition disputes").  The parties did not contact the Court for assistance to resolve these disputes during the depositions.  As a result, the Court issued an Order on November 17, 2021 ("November 17th Order"), (ECF No. 88), directing counsel to meet and confer to informally resolve the deposition disputes, and then submit a joint letter on or before December 22, 2021, confirming whether these deposition disputes had been resolved.  (*Id.*).  This Court further adjourned the scheduled depositions of Li and Holly Stern ("Stern"), General Counsel of NJIT, as well as the continued deposition of Joel Bloom ("Bloom"), President of NJIT, pending the resolution of these deposition disputes.  (*Id.*).  The deadline to submit the joint status letter was extended through January 12, 2022 ("January 12th letter").  (ECF No. 91).

Based on this Court's review of the January 12th letter, it became apparent that the scope of the deposition disputes had morphed into additional disputes regarding waiver of privilege based on Defendants' affirmative defenses and Plaintiff's challenges to written communications

previously listed on Defendants' privilege log ("additional disputes").  As a result, this Court issued an Order on January 19, 2022, (ECF No. 92), directing the parties to file a joint letter by January 28, 2022, detailing the specific unresolved deposition disputes with supporting legal authority and the relevant excerpts from the deposition transcripts at issue. (*Id.*) The January 19th Order further directed the parties to submit a second joint status letter on or before February 1, 2022, addressing whether they have resolved the newly raised additional disputes, and if not, explain which disputes remained. (*Id.*)

On January 28, 2022, the parties submitted their joint letter, regarding the outstanding deposition disputes and attached several excerpts from the transcript of Deek's deposition.  (ECF Nos. 93 & 93-1).  On February 1, 2022, the parties submitted their second joint letter, addressing the additional disputes and attached excerpts from the transcript of Katz's deposition.  (ECF Nos. 94 & 94-1).

On August 5, 2022, this Court issued an Order, scheduling oral argument to address the parties' various discovery disputes and directing them to file a corrected and complete set of all deposition transcript pages referenced in their January 28th submission.  (ECF No. 100).  In response, Plaintiff's counsel submitted a letter on August 9, 2022, requesting an opportunity to brief the various disputes more fully and also attached the corrected deposition transcript pages. (ECF No. 101).  This Court granted Plaintiff's counsel's request by Order of August 15, 2022. (ECF No. 102).  To that end, the Court directed Defendants to file an opening letter brief on or before August 29, 2022, in support of their deposition objections on the basis of privilege and directed Plaintiff to file an opening letter brief on the same date, in support of his demand for the production of all documents on Defendants' privilege log and for the depositions of attorneys O'Reilly and Lyons.  (*Id.*).  The parties also were directed to file their respective responsive letter

briefs on or before September 12, 2022.  (*Id.*).  As such, the oral argument scheduled for August 25, 2022 was canceled.

The parties timely submitted their respective letter briefs, voluminous supporting documents, and excerpted deposition transcripts.  (ECF Nos. 103, 104, 105, 106, 107, and 108).[3]

## II.   DISCUSSION

### A.  Deposition Objections and Instructions Not to Answer[4]

As previously noted, the deposition disputes concern specific questions posed to deponents Deek, Belfield, and Katz and defense counsel's objections based on the attorney-client privilege[5] and instructions not to answer to preserve the privilege. The disputes span multiple pages from the depositions of all three deponents[6] as demonstrated by the voluminous excerpts from the

---

[3] Plaintiff's counsel contends that the parties have not been given a full opportunity to brief these disputes based on the Court's direction to submit joint letters and individual letter briefs rather than formal motions.  This Court disagrees.  Plaintiff's position puts form over substance.  The parties have been given a fulsome opportunity to present their respective legal positions with citations to supporting authority and exhibits in multiple submissions to the Court, including two joint letters and two letter briefs per party without any page limits.  (See, e.g., ECF Nos. 93, 94, 103, 104, 105, and 107).  *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (noting that courts have broad discretion in the management of the discovery process.).

[4] In their opening letter brief, Defendants note that during Deek's deposition they objected to Plaintiff's counsel's question to Deek, seeking the identity of the person who drafted Plaintiff's non-renewal letter.  (Deek Dep. Tr. 43-45, ECF No. 104-1).  Defendants now concede that Plaintiff's counsel's question was proper as the author's identity is not privileged.  (ECF Nos. 93 at 1, 103 at 13-14).  Accordingly, this dispute has been resolved without the need for the Court to address it on the merits.  To the extent the parties have not done so already, they shall meet and confer on whether Plaintiff still seeks a response to this question.  If so, the Court finds it unnecessary to resume a live deposition for the limited purpose of Deek answering this one question, which is no longer in dispute.  As such, if Plaintiff requests a response to this question, Deek shall answer the question in writing under oath.

[5] As the deposition testimony submitted confirms, defense counsel asserted only the attorney-client privilege as a basis to object.  (See ECF Nos. 93-1, 101, 104-1, 104-3, and 105-2).  Further, the parties' letter briefs of August 29th and September 12th advance substantive arguments regarding only the attorney-client privilege.  Accordingly, this Court's analysis is limited to whether Defendants properly invoked the attorney-client privilege and, if so, whether that privilege has been waived based on the relevant deposition testimony.

[6] This Court's review of the excerpted Bloom deposition testimony confirms that defense counsel did not object to any of Plaintiff's counsel's questions posed to Bloom by asserting the attorney-client privilege.  Further, defense counsel did not instruct Bloom not to answer on the basis of privilege.  As a result, it appears there is no dispute for the Court to address in this regard.

deposition transcripts submitted by the parties.  (*See, e.g.*, ECF Nos. 93-1, 101, 104-1, 104-2, 104-3, 105-2, & 105-4).

In reviewing the excerpted transcripts, the disputed questions relate to the following topics: (i) whether and when the deponent spoke with and/or generally sought legal advice from Stern and/or Li, (*see* Belfield Dep. Tr. at 88, 92, 95, & 99, ECF No. 101-3); (ii) whether the deponent sought legal advice about certain subject matters, (*see* Katz Dep. Tr. at 109-110, ECF No. 101-1; Belfield Dep. Tr. at 133, 134, 135, 136, 173); (iii) whether the deponent relied on the advice of counsel to understand and comply with the law and related legal issues, such as the First Amendment, as they pertain to Plaintiff and his employment, (*see* Deek Dep. Tr. at 158, 159, 161, ECF No. 101-2; Belfield Dep. Tr. at 66-68, 70, 102); (iv) whether the deponent relied on the advice of counsel in formulating and asserting certain affirmative defenses in this case, (*see* Deek Dep. Tr. at 147-148, 150, 151); (v) why the deponent needed legal advice in connection with Plaintiff's outside activities and in responding to a media inquiry, (*see* Belfield Dep Tr. at 121, 122); (vi) whether Stern was concerned with Plaintiff's outside activities, (*see* Belfield Dep. Tr. at 72); and (vii) whether counsel ever told the deponent to "sign this letter," (*see* Belfield Dep. Tr. at 201).

Defendants concede that it is permissible to require either an attorney or the client to "disclose the topic at the level of generality with which law school courses are ordinarily described." (ECF No. 93 at 2) (internal citations omitted).  They, however, submit that disclosure of any further details creates a risk of invading the privilege.  (*Id.*, 103, 107 & 108). To that end, Defendants acknowledge that both their privilege log and the deposition testimony confirm that counsel was consulted on general employment law issues.  Yet, Defendants aver that the specific disputed questions posed to Deek, Katz, and Belfield improperly seek detailed information

protected from disclosure by the attorney-client privilege.  Accordingly, Defendants ask this Court to uphold the objections.

Plaintiff counters that his questions properly sought to elicit facts about whether the deponents relied on the advice of counsel regarding Plaintiff and his employment, and thus the privilege does not extend to such facts.  Further, Plaintiff contends that counsel may properly inquire about specific subject matters discussed with counsel because the subject matter of these communications with counsel is not protected by the privilege.  According to Plaintiff, only the specific advice is privileged.  As his attorney did not ask what specific advice, if any, was given with regards to Plaintiff, his counsel did not seek to disclose protected communications about legal advice.

Federal Rule of Civil Procedure 30(c)(2) states in relevant part that "a person may instruct a deponent not to answer only when necessary to preserve a privilege…." Fed. R. Civ. P. 30(c)(2).  Plaintiff asserts both federal and state law claims in this action, and thus, the federal law on privilege governs.  *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (citing *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d at 100, 104 (3d Cir. 1982)).  Accordingly, to resolve the current privilege dispute, Federal Rule of Evidence directs the Court to apply federal privilege law.  *See id.* at 66.

The Third Circuit has held that the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

7

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979).  However, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly.  The privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege."  *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (internal citations and quotations omitted).

As the Third Circuit has explained, "[f]acts are discoverable, the legal conclusions regarding those facts are not.  A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."  *Rhone-Poulenc Rorer v. Home Indem. Co..* 32 F.3d 851, 854 (3d. Cir. 1994).  As the Supreme Court instructed in *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981):

> [The] protection of the privilege extends only to *communications* and not to facts…. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'"

*Id.* (internal citation omitted).

Guided by these principles and governing law, the Court finds the questions posed to Belfield regarding whether and when he spoke with and/or sought legal advice generally from Stern and/or Li , (*see* Belfield Dep. Tr. at 88, 92, 95, & 99, ECF No. 101-3), seek to elicit a fact rather than the content of any communication with counsel.  For example, Plaintiff's counsel asked Belfield, "Did you discuss Professor Jorjani with Stern at this time?"  (*Id*. at 88:6-7).  Plaintiff's counsel also asked Belfield, "With that stipulation, Dean Belfield, does that refresh your recollection as to whether or not you sought the legal assistance of Holly Stern on November 28,

2016?" (*Id.* at 92:15-18).  Defendants' counsel objected and instructed Belfield not to answer based on the attorney-client privilege.  (*See id.* at 92:21-22, 95:14-23, and 99:16-20). The fact of consultation generally, even about Plaintiff, is not privileged while the substance of such communications is protected by the privilege.  *See Upjohn Co.*, 449 U.S. at 395-96; *see also See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2008 U.S. Dist. LEXIS 89174, at * 9 (W.D. Pa. Nov. 4, 2008).  To that point, Belfield ultimately answered affirmatively without any objection in response to Plaintiff's counsel's question, "Did you seek legal advice in November of 2016, from Holly Stern?" (Belfield Dep. Tr. at 94:25–95:1-2, 9).  Contrary to Defendants' assertions, the foregoing deposition questions do not address the content of the privileged communication with counsel.  Rather, these questions seek to elicit the fact of consultation, and if so, when the consultation occurred.  While the Court notes that Plaintiff should be able to deduce this information based on the privilege log entries, Plaintiff's counsel may properly pose questions to deponents regarding fact of consultation. Such questions do not invade the attorney-client privilege.  As a result, Defendants' objections, (Belfield Dep. Tr. at 88, 92, 95, & 99), are **OVERRULED**.

The Court, however, reaches a different conclusion regarding counsel's objections and instructions not to answer questions about whether the deponent sought legal advice about certain subject matters.  Based on the questions phrased by Plaintiff's counsel, (*see, e.g.*, Belfield Dep. Tr. at 133, 134, 135, 136, 173; Katz Dep. Tr. at 109-110), the Court finds that such questions posed to Belfield and Katz seek communications protected by the attorney-client privilege as these questions seek to elicit answers about a particular subject for which counsel was consulted and/or legal advice was given.

Plaintiff's counsel posed the following disputed questions to Belfield: (1) "Were you seeking legal advice in that correspondence [dated December 9, 2016]?" (*Id.* at 133:21-22); (2) "Same question with regard to 40. Dean Belfield, it appears to be an email dated December 9, 2016, from yourself to Eric Katz. Incidentally, no one else is copied on that according to the privilege log. Were you seeking legal advice from Mr. Katz in that email?" (*Id.* at 134:7-12); (3) "The question, Dean Belfield, is: With regard to log entry 40 on Exhibit 4, were you seeking legal advice there, sir?" (*Id.* at 135:8-10); (4) "In that correspondence indicated on line 77, were you seeking legal advice, sir?" (*Id.* at 135:23-24); (5) "Were you seeking legal advice in that correspondence?" (*Id.* at 136:14-15); and "Did you ever ask Holly Stern for advice in this regard?" (*Id.* at 173:21-23). In response to each of these questions, defense counsel instructed the deponent not to answer to preserve the privilege. (*See id.* at 133, 134, 135, 136, and 173).

Plaintiff's counsel posed the following disputed question to Katz: "Let me ask you this, Professor Katz. In April of 2017, were you discussing Jorjani's OAQ compliance with Holly Stern and Christine Li." (Katz Dep. Tr. at 109:19-22). Defense counsel objected based on the attorney-client privilege and instructed Katz not to answer. (*See id.* at 109-110).

Preliminarily, the Court notes that Plaintiff's counsel's posed questions to Belfield about a specific written communication between him and Katz, which was previously identified as Defendants' privilege log entry number 40. However, the Undersigned previously found that written communication to be privileged. (See ECF Nos. 75 & 76). This Court will not revisit that prior ruling.

As to each of Plaintiff's specific questions posed to Belfield and Katz, this Court finds that they invade the attorney-client privilege by seeking information about the particular subject matter for which counsel was consulted and/or legal advice was given. This Court finds the reasoning in

10

*In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429 (E.D. Pa. 1981), to be persuasive.  In *re Arthur Treacher's*, the court noted that the specific subject matter of a communication with counsel is protected by the attorney-client privilege, absent a waiver.  In so doing, the court explained:

> (First), an affirmative response to such a question could be taken, by implication, to suggest that a client considered his position, with respect to the issues discussed, as either suspect or vulnerable. Second, such a rule would erode the basic public policy underlying the attorney-client privilege.  It would be a simple matter to sharpen the questions to require greater and greater specificity regarding the matter discussed so as to avoid altogether the effectiveness of the privilege.  Third, if the responses were merely limited to the most general terms of the subject discussed, it would be of little benefit or enlightenment to an opponent or to the Court, for certainly the privilege would prevent further questions going to the content of the discussions.

*Id.* at 435.  *See, e.g., Fields v. Am. Airlines, Inc.*, 2022 U.S. Dist. LEXIS 108130, at *9 (E.D. Pa. Jun. 17, 2022) (finding questions posed to deponent about whether he worked with an attorney on last chance agreements implicated attorney-client privilege and attorney work product doctrine) (internal citation omitted));  *Ideal Aerosmith, Inc.*, 2008 U.S. Dist. LEXIS 89174, at * 9 (finding that "counsel's questions, which address the content of the communication," elicit more than mere fact of consultation, and thus invades the attorney-client privilege); *United States v. Pinho*, 2003 U.S. Dist. LEXIS 12244, at * 12 n.4 (E.D. Pa. Jul. 8, 2003).

The Court finds that the questions as framed by counsel to Belfield, (*see, e.g.,* Belfield Dep. Tr. at 133, 134, 135, 136, 173), and to Katz, (*see, e.g.*, Katz Dep. Tr. at 109-110), would reveal the contents of confidential communications, including whether legal advice was sought or given about specific issues.  As Defendants have established, such questions seek to disclose detailed information provided to counsel for the purpose of obtaining legal advice, which might not have been revealed absent the privilege. *See Westinghouse Elec. Corp.,* 951 F.2d at 1423-24 ("The

privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.")  Accordingly, such questions invade the attorney-client relationship, *see Upjohn Co.*, 449 U.S. at 397, and further run the risk of allowing counsel to artfully attempt to argue the privilege has been waived.  Therefore, this Court finds that Defendants properly objected to the questions to preserve the attorney-client privilege, and thus Defendants' objections to these questions are **SUSTAINED**.

The Court reaches the same conclusion regarding questions posed to Deek and Belfield about whether they relied on the advice of counsel to formulate affirmative defenses, raise certain arguments in this case, and comply and understand laws as they relate to Plaintiff and his employment.  (*See, e.g.*, Deek Dep. Tr. at 147-148, 150, 151, 158, 159, and 161, ECF No. 101-2; Belfield Dep. Tr. at 66-68, 70, 102).  For example, Plaintiff's counsel asked Deek whether in support of Defendants' eighth and ninth affirmative defenses Deek relied on the advice of Stern. (*See, e.g.*, Deek Tr. at 147-148, 151). Plaintiff's counsel also asked Deek whether he relied on the advice of Stern in disputing that "defendant's actions were willful and wanton" and that "defendants acted in reckless disregard with plaintiff's First Amendment rights."  (*Id.* at 150). These questions do not merely ask if and when the deponent generally communicated with counsel, but instead seek to uncover the advice given about legal defenses ultimately asserted in this case. As Defendants have established, such questions are inextricably intertwined with confidential communications made for the purpose of seeking legal advice and run the risk of revealing the content of those privileged communications about the advice sought and possibly the legal advice itself.  Accordingly, the questions invade the attorney-client privilege.  Thus, this Court finds that Defendants properly objected to these questions, (Deek Dep. Tr. at 147-148, 150, 151, 158, 159,

and 161, ECF No. 101-2; Belfield Dep. Tr. at 66-68, 70, and 102), to preserve the attorney-client privilege, and **SUSTAINS** Defendants' objections to these questions.

For the same reasons, the Court **SUSTAINS** Defendants' objection to the question posed to Belfield about why he needed legal advice in connection with Plaintiff's outside activities and in responding to a media inquiry. (*See* Belfield Dep Tr. at 121, 122). The question seeks to elicit more than mere fact of consultation or a general topic of discussion. A response would "suggest that a client considered his position, with respect to the issued discussed, as either suspect or vulnerable…." *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. at 435, and thus would likely reveal the substance of privileged communications.

Further, based on the question phrased by Plaintiff's counsel to Belfield, "Was Holly Stern also concerned with it [Plaintiff's outside activities]?" (Belfield Dep. Tr. at 72:10), this Court finds not only does the question call for speculation, but it runs the risk of disclosing privileged communications between the client and counsel. Accordingly, the Court finds that Defendants properly objected to this question to preserve the privilege, and thus Defendants' objection to this question is **SUSTAINED**.

Finally, based on the question phrased by Plaintiff's counsel to Belfield as to whether counsel ever told him to "sign this letter," (Belfield Dep. Tr. at 201:2-3), the question clearly seeks to elicit testimony that would reveal the substance of a privileged communication, which would invade the attorney-client privilege. *See Upjohn Co.*, 449 U.S. at 395-96. Accordingly, Defendants' objection to this question is **SUSTAINED**.

### B. Waiver of Privilege Based on Advice of Counsel

In support of his applications to compel, Plaintiff argues that the witnesses' testimony constituted an implicit waiver of the attorney-client privilege. As a result, Defendants should be

compelled to answer the questions regarding advice of counsel, produce the underlying attorney-client written communications, and produce attorneys O'Reilly and Lyons for depositions. (ECF Nos. 93, 94,  104, 105, & 106).[7]  Plaintiff references Deek's testimony about reliance on the "privileged" investigation report prepared by the Saiber law firm ("Saiber Report") in asserting Defendants' "good faith" and "lack of willfulness" affirmative defenses. (Deek Dep Tr. at 147:19, ECF No. 104-1).  Plaintiff further argues that even if this testimony did not amount to a waiver of the privilege, Deek, Belfield, and Bloom all testified that they relied on the advice of counsel, which waives the privilege and requires the disclosure of the underlying communications. According to Plaintiff, to permit otherwise would endorse selective disclosure of privileged communications.

It appears that the crux of Plaintiff's argument is two-fold.  First, Defendants' reliance on the Saiber Report to assert several affirmative defenses waives the attorney-client privilege. Second, although deponents did not actually disclose other privileged communications, through their testimony, Defendants have somehow placed the advice of counsel in issue, and thus have waived the attorney-client privilege by implication as to all communications on Defendants' privilege log.

Defendants disavow relying on the advice of counsel in this action and submit that none of the deposition testimony cited by Plaintiff operates as a waiver of the privilege. (ECF Nos. 93, 94, 104, 105, & 106).  Defendants further argue that they have maintained the Saiber Report is not privileged.  Therefore, the witnesses' testimony about reliance on the non-privileged report does

---

[7] Plaintiff also raises an independent argument that retired Judge Falk, who is now associated with the Walsh Firm, should be disqualified, along with all defense counsel, from serving as counsel for Defendants in this case, pursuant to Rule of Professional Conduct 1.12.(a).  (ECF No. 105 at 12-13).  On September 16, 2022, Plaintiff formally moved to disqualify the Walsh Firm, (ECF No. 110), which Defendants opposed.  (ECF No. 111).  On March 16, 2023, this Court issued an Opinion and Order, denying the motion to disqualify.  (ECF No. 131).

not amount to a waiver of the privilege.  Defendants also contend that, although attorneys assisted with drafting the nonrenewal letter at issue, the deponents did not disclose any details regarding the substance of any legal advice deponents received from counsel.  Accordingly, the privilege has not been waived on this basis.

### 1.  The Saiber Report Is Not Privileged

Plaintiff's first theory of waiver presupposes that the Saiber Report is protected by the attorney-client privilege.  However, Defendants note that they previously produced the Saiber Report in discovery as they concede it is not legal advice.  Therefore, according to Defendants, they have not claimed that the privilege protects the report.  As a result, Defendants contend that Deek's testimony that he relied on a non-privileged report cannot serve as the basis to waive the attorney-client privilege protecting other communications from disclosure.  This Court agrees.  Indeed, nothing stated by Deek equates to the disclosure of any confidential communications.  Therefore, the Court concludes that Plaintiff has not met his burden of showing how Deek's testimony about an admittedly non-privileged report results in a waiver of the attorney-client privilege regarding otherwise privileged communications.  *See Pallares v. Kohn (In re Chevron Corp.)*, 650 F.3d 276, 289 (3d Cir. 2011).

### 2.  Defendants Have Not Put Advice Of Counsel At Issue

The second theory advanced by Plaintiff is an implied waiver due to Defendants placing advice of counsel at issue in this case.  Plaintiff claims that Deek, Belfield, and Bloom asserted the advice of counsel as a defense during their respective deposition testimony.  According to Plaintiff, these three deponents specifically testified that they acted in good faith and without willfulness in their affirmative defenses.  They further testified that they consulted counsel on general topics as well as the issues regarding Plaintiff.  As such, Plaintiff contends that Defendants, through the

deposition testimony, have squarely placed the advice of their counsel in issue and have waived the attorney-client privilege regarding underlying communications identified on Defendants' privilege log.    As a result, Plaintiff seeks to compel the underlying written privileged communications and the depositions of defense counsel O'Reilly and Lyons to testify about such communications.  (See ECF Nos. 93, 104 & 105).

Having reviewed Bloom's testimony, (ECF No. 105-4), this Court finds Defendants have not placed any attorney advice at issue.  First, it is unclear how any of Bloom's testimony even raises a possible waiver of the attorney-client privilege.  For example, Bloom testified that he did not make the decision to place Plaintiff on paid leave but was told about it.  (*See id.* at 112-113).  He further testified that he was not "briefed on First Amendment issues" regarding Plaintiff.  (*Id.* at 140).  None of this testimony places the advice of counsel in issue, and thus this Court finds there has been no waiver of the privilege based on any of Bloom's testimony.[8]

The Court next considers whether any of Deek's testimony is proof of waiver of the privilege.  In doing so, the Court notes that defense counsel did not reflexively object to every question about general consultation with counsel.  Rather, defense counsel instructed Deek not to answer questions posed about whether Deek relied on specific advice from counsel regarding certain topics.  For example, Deek responded affirmatively to Plaintiff's counsel's questions about whether he relies on attorneys to guide him in understanding the First Amendment as it relates to

---

[8] Plaintiff also appears to argue that a January 24, 2017 email entry on Defendants' privilege log indicates that "NJIT's University Counsel suspiciously began looking into a case from Florida Atlantic University" about outside activity compliance.  (ECF No. 104 at 4).  The extent to which Plaintiff contends that this document is somehow not privileged, he had the opportunity to challenge its designation as part of his prior motion to compel Defendants to produce certain documents on the privilege log, which District Judge Martini and Magistrate Judge Falk previously addressed.  (See ECF Nos. 58 and 66).  This Court will not revisit these prior rulings. If, however, Plaintiff contends that Defendants have waived the privilege because Defendants assert that Plaintiff did not comply with the "outside activities form" based on Plaintiff's extracurricular activities, (ECF No. 104 at 4), nothing stated in the cited testimony of Bloom, even suggests that Defendants placed advice of counsel in issue.  Accordingly, the Court finds that, based on Bloom's testimony, Defendants have not waived the privilege protecting any such communication listed on Defendants' privilege log.

Plaintiff, (*see* Deek Dep Tr. at 50:19-24; 114:20-22), and whether Deek sought "counsel as regards to the issues presented by Dr. Jorjani's extra-mural speech." (*Id*. at 51:5-9). Deek responded that he did. (*Id*. at 51:9). In response to Plaintiff's counsel's question about the identity of the attorney upon whose advice he relied, Deek answered university counsel, Holly Stern. (*Id*. at 115:14-16, 19-22; 142:20-23, 143:2-4, 8).

Plaintiff's counsel then asked Deek if he was relying on the advice of Stern to assert that same affirmative defense. (*Id.* at 148:4-6). Defense counsel instructed Deek not to answer this question. (*Id.* at 148:7-8). Deek then answered affirmatively in response to Plaintiff's counsel's question about whether he disputes that Defendants' actions were willful, wanted and "acted in a reckless disregard with plaintiff's First Amended rights, correct?" (*Id*. at 150:3-10). Plaintiff's counsel next asked "[a]nd in making that argument, you have relied upon the advice of Holly Stern. Correct?" (*Id*. at 150:11-12). Defense counsel objected and instructed Deek not to answer. (*Id*. at 150:13-15). Plaintiff's counsel next asked Deek whether he relied on the advice of Stern in asserting Defendants' eighth affirmative defense. (*Id*. at 151:5-9, 17-18). Defense counsel again instructed Deek not to answer. (*Id*. at 151:-19-20).

Plaintiff's counsel further asked Deek "[a]nd you indicated earlier that when you have an issue of sensitivity or complexity, you turn to other people to help you determine the best course of action. Correct?" (*Id*. at 157:14-17). Deek answered, "[t]hat's correct. I am the chief academic officer. My secondary title, the executive vice-president, makes me the chief operating officer. There is much more to running a university than that. And therefore, I consult others. Yes, sir." (*Id*. at 157:18-22). Deek also responded affirmatively to Plaintiff's counsel's follow up question, "[A]nd amongst those people you consult with are Holly Stern. Correct?" (*Id*. at 157:23-25). Then Plaintiff's counsel asked Deek if he consulted with Stern to make sure he "did not knowingly

violate the law with regard to" Plaintiff.  (*Id*. at 158:1-3).  Again, defense counsel instructed Deek not to answer.  (*Id*. at 4-5).

Finally, Plaintiff's counsel showed Deek specific entries on Defendants' privilege log and asked, "[l]ooking at entries for 124 on, they indicate that Holly Stern consulted with Trish O'Reilly of the Walsh Law Firm and Trevor Lyons of the Walsh Law Firm on or about September 21, 2017. Correct?"  (*Id*. at 159:12-16).  Deek answered, "Trish et al. is correct. I remember that."  (*Id*. at 159:17).  Plaintiff's counsel then asked if that's defense counsel's Mr. Haefner's law firm, who was defending Deek during the deposition.  (*Id*. at 159:18-19).  Deek answered, "[y]es."  (*Id*. at 159:20).  Plaintiff's counsel further asked Deek if the "Walsh Pizzi law firm help[ed] to formulate your response to the Jason Jorjani situation."  (*Id*. at 159:21-23).  Defense counsel instructed Deek not to answer.  (*Id*. at 159:24-25; 161:23-24).

Plaintiff's counsel posed similarly phrased questions to Belfield, which drew objections and instructions not to answer from defense counsel.  For example, Plaintiff's counsel asked Belfield if he relied on "NJIT's attorneys to guide" him through "this sensitive area," although it is unclear the specific area being referenced. (Belfield Dep Tr. at 66).  Plaintiff's counsel next asked Belfield if he relied on attorney Stern to "guide" him "through the sensitive area of academic freedom in December of 2016?"  (*Id*. at 68).  Counsel then asked whether Belfield relied upon Stern to guide him "through the First Amendment considerations presented by Dr. Jorjani in December of 2016."  (*Id*.)    Plaintiff's counsel also asked if he relied on Stern's advice "to deal with Jason Jorjani at any point in time?"  (*Id*. at 70).  In response to each of these questions, defense counsel objected based on the attorney-client privilege and instructed Belfield not to answer.  (*Id*. at 66-70).  Importantly, Belfield responded affirmatively without objection to Plaintiff's counsel's

question about whether Belfield ever relied generally on Stern to give him legal advice.  (*Id.* at 68-69).

The Court considers whether any of the cited deposition testimony of Deek or Belfield amounts to an implied waiver of the attorney-client privilege.  "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *New Jersey Manufacturers Ins. Co. v. Brady*, 2017 WL 264457, at * 8 (M.D. Pa. Jan. 20, 2017) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)).  As the party challenging the privilege, Plaintiff bears the burden of demonstrating that Defendants have waived the privilege.  *Id.* at * 8.

Here, Plaintiff advocates for a broad construction of the "in issue" doctrine, suggesting that he should be permitted to test the veracity of Defendants' "good faith" and "lack of willfulness" affirmative defenses by reviewing what may be relevant communications between client and counsel that bear on Defendants' decisions regarding Plaintiff's employment.  However, this broad construction has been rejected by the Third Circuit.

In determining whether a party has waived the attorney-client privilege, the Third Circuit, in *Rhone-Poulenc* explained that a party can waive the privilege "by asserting claims or defenses that put his or her attorney's advice in issue in the litigation…. [or] by asserting reliance on the advice of counsel as an affirmative defense." *Rhone-Poulenc,* 32 F.3d at 863 (internal citations omitted).  "[W]here a party is accused of acting willfully, *and where that party asserts as an essential element of its defense that it relied upon the advice of counsel*, the party waives the privilege regarding communications pertaining to that advice."  *Id.* (emphasis added) (internal citations omitted).  However, the Third Circuit made clear:

> [a]dvice is not in issue merely because it is relevant, and does not
> necessarily become in issue merely because the attorney's advice

> might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Id.* (citing *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 71 (D.N.J. 1992)). "While the attorney's advice may be relevant to the matters at issue, the privilege applies as the interests it is intended to protect are still served by confidentiality." *Id.* at 864.

In *Rhone-Poulenc*, a patent infringement action, the Third Circuit concluded that the plaintiffs had not "interjected the advice of counsel as an essential element of a claim in the case," and thus the plaintiffs should not have been ordered to disclose the attorney-client privileged documents. *Id.*; *see North River Ins. Co.*, 797 F. Supp. at 371 ("It appears that CIGNA Re's primary goal in seeking production of privileged documents is so that it can test the veracity and completeness of North River's disclosure to it as to the facts of the underlying claim dispute. The *Remington Arms* court convincingly rejected this ground for abrogating the attorney-client privilege by explaining that such a construction of the "in issue" doctrine would seemingly apply to any litigant offering evidence in a case on any issue that he has discussed with his attorney, and would drastically alter the traditional boundaries of the privilege.") (internal quotes and cites omitted).

Consistent with the Third Circuit's findings in *Rhone-Poulenc*, the testimony of Deek and Belfield does not describe or disclose any attorney-client privileged communications in an attempt to refute any essential element of Plaintiff's claims or assert their affirmative defenses. *See Rhone-Poulenc*, 32 F.3d at 863. Indeed, defense counsel objected to questions posed about whether Defendants relied on the advice of counsel in asserting affirmative defenses in this case or in addressing issues about Plaintiff and his employment, and then directed the deponents not to

answer.  As such, it strains credulity to suggest that Defendants have placed the advice of counsel at issue when neither Belfield nor Deek were permitted to testify about the substance of the communications with counsel.

Further, in reviewing the deposition testimony, Defendants do not attempt to justify their conduct or limit their liability by asserting that Defendants relied on the advice of counsel.  The extent to which Deek's and/or Belfield's testimony refers to consultations and/or communications with attorney Stern, it is limited to communications regarding Defendants' state of mind on Plaintiff and decisions about his employment.  Defendants, however, do not waive the privilege when the clients' "state of mind is put in issue in the action." *Rhone-Poulenc*, 32 F.3d at 864; *see also Noonan v. Kane*, 2019 WL 5722213, at * 3 (E.D. Pa. No. 5, 2019) (concluding that "[i]t does not raise an affirmative defense where a defendant states she relied on the advice of counsel when asked if she did so at her deposition.  Otherwise, opposing counsel by artful questioning of a witness could easily thwart her attorney-client privilege and the work-production protection."); *New Jersey Manufacturers Ins. Co.*, 2017 WL 264457, at * 13 (concluding that "[t]he mere fact that a party states that it relied on the advice of counsel in making a decision, standing alone, does not show that the party took an "affirmative step" to place that advice in issue…. This is especially true when the deposition testimony on which an alleged waiver is based was elicited in response to questions posed by defense counsel."); *Astrazeneca LP v. Breath Ltd.*, 2010 U.S. Dist. LEXIS 147477, at *27-28   (D.N.J. Aug. 26, 2010) (denying plaintiff's motion to compel privileged communications based on court finding that party's testimony did not amount to company having placed advice of counsel in issue, and thus there was no waiver of attorney client privilege); *Miteva v. Third Point Mgmt. Co. L.L.C.*, 218 F.R.D. 397, 398 (S.D.N.Y. 2003) (finding that although the witness "disclosed as a fact that the termination letter was written as it was on advice of counsel,

he did not selectively reveal any of the substance of the communication itself….[and the] limited acknowledgment of reliance on advise [sic] of counsel … is not sufficient to constitute disclosure of the full content of the advice, or serve as a basis for compelling that the balance of the communication be revealed.").   In short, none of the referenced deposition testimony has placed the advice of counsel in issue to constitute a waiver of the attorney-client privilege.

Equally important, Defendants have in no way plead advice of counsel as an affirmative defense. Indeed, in their submissions, Defendants expressly reject any assertion or reliance on advice of counsel in this case, let alone in connection with any of their affirmative defenses.   (ECF Nos. 103 & 107).   Defendants' disavowal of reliance on advice of counsel coupled with the testimony of Deek and Belfield confirm that no waiver has occurred.

Plaintiff's reliance on *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996), is misplaced. (ECF No. 104 at 2-3).   In *Livingstone*, the Third Circuit held that "the attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that … the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct." 91 F.3d 515, 537 (3d Cir. 1996) (internal citations omitted).   The plaintiffs filed a civil rights action, which stemmed from a prior criminal prosecution dismissed by way of agreement between the parties. In the subsequently filed civil rights civil action, the defendants sought to dismiss the action, arguing that it was barred by the agreement.   One of the plaintiffs asserted that she had not, in fact, voluntarily agreed to release her civil claims.   *Id.* at 522.   Throughout the civil proceedings, the paramount consideration was whether the plaintiffs voluntarily entered into the agreement.   *Id.* at 522-523.   In finding a waiver of the privilege, the Third Circuit reasoned that the plaintiff's criminal defense counsel "attorney played a central role in the negotiation of the release-dismissal agreement.  Under *Rumery*, the

advice of counsel is an explicit, and important, element of the voluntariness analysis." *Id.* at 537. "Mrs. Livingstone's assertion that she did not appreciate the release-dismissal agreement's legal implications is tantamount to a claim that her attorney did not give her accurate legal advice." *Id.* She had effectively put in issue the advice her attorney had provided to her. *Id.* In *Livingstone*, the Third Circuit specifically distinguished the facts present from those in *Rhone–Poulenc*, in which the Court found "that a client who made reference to the advice of counsel in seeking to establish his state of mind did not thereby waive the attorney-client privilege as to that advice." Id. at 537 n. 36.

This Court finds that facts present in *Livingstone* are distinguishable from the instant action. Unlike in *Livingstone*, here, the advice of counsel is not an express element of any claim or defense.

In short, Plaintiff has not demonstrated that Defendants, through the referenced deposition testimony, have placed the advice of counsel or contents of previously identified privileged communications in issue. Accordingly, this Court finds that Defendants have not waived the attorney-client privilege, and thus Plaintiff's application to compel production of written communications on the Defendants' privilege log and to compel the depositions of O'Reilly and Lyons are **DENIED**.

### C.  Katz's Communications

Plaintiff next argues that Katz's deposition testimony demonstrates that the attorney-client privilege does not attach to Katz's communications with either Belfield or Li listed on Defendants' privilege log. In support of his position, Plaintiff contends that Katz testified he never intended to seek legal advice from Belfield, a non-lawyer. Further, according to Plaintiff, Katz testified that he did not rely on Li's legal advice about whether Katz was complying with the law in addressing

Plaintiff's outside activities questionnaire ("OAQ"), and that Katz perceived Plaintiff's political speech and associations and OAQ issue to be a personnel issue rather than a legal one. (*Id.*, ECF Nos. 94 at 1-2, 104 at 8-10).

Plaintiff submits that he should be able to test the accuracy of the privileged nature of these communications based on Katz's testimony.  In support of his contention, Plaintiff cites to the following testimony by Katz.

> **Q**: Were you seeking legal advice from Dean Belfield?
> **Katz**: Absolutely not.  I was just telling him what was going on and asking him what we should do about it.
> **Q**: At any point in time from November 2016, on, when you addressed Dean Belfield with an issue concerning Jason Jorjani, were you seeking legal advice? Professor Katz, was Jason Jorjani's OAQ compliance a personnel issue?
> **Mr**. **Haefner**: Is Dean Belfield some crypto lawyer that I'm unaware of?
> **Q**: Listen, it's a question.
> **Mr**. **Haefner**: You can go ahead and answer.
> **Katz**: No.  I mean, my father was an attorney.  If I want legal advice, I'm going to ask a lawyer, not the dean.

(*Id.* at 36:10-25 – 37:1).

> **Q**: Professor Katz, when you wrote on December 8, 2016, here on Exhibit 13, someone needs to tell me what to do and say --
> **Katz**: Uh-huh.
> **Q**: -- did you review this really as a PR problem?
> **Katz**: Yes.

(*Id.* at 52:17-22).

> **Q**: Sure. Did – let me rephrase it.  Did the Jorjani situation that was presented to you in November 2016 and onward – by which I mean various people complaining about Jorjani's extramural political speech and associations.  Do you understand that?
> **Katz**: Yeah. Yes, I do.
> **Q**: Did that situation, in your mind, present a personnel issue, or a legal issue?
> **Katz**: Well, I'm not a lawyer, so I don't think I would consider it as a legal issue. To me it seems to be more of a personnel issue.

(*Id.* at 92:22-25 – 93:1-8).

**Q**: No, no.  Let me be clear.  Let me be clear. I'm not asking what the specific advice is.  My question was – the verb rely.  Did you rely upon the advice of Christine Li to make sure that – did Professor Katz rely upon the advice of Christine Li to make sure that he was in compliance with the law in his dealings with Jason Jorjani on the OAQ issue?

**Mr. Haefner**: Do you want a yes or no answer?

**Q**: Yes.

**Mr. Haefner**: It lacks foundation. He can give a yes/no answer.  Go ahead, Eric.

**Katz**: My answer would be no.  I never even considered my own legal position in terms of Jason's OAQ.

**Q**: So, Professor Katz, is it fair to say that, in your mind, this was strictly a – strike that.  Professor Katz, is it fair to say that, from your perspective, this was a run-of-the-mill personnel issue?

**Mr. Haefner**: Objection to the form of the question.  You can go ahead and answer.

**Katz**: Well, I wouldn't call it run-of-the-mill but it was definitely a personnel issue.

**Q**: Professor Katz, was Jason Jorjani's OAQ compliance a personnel issue?

**Mr. Haefner**: Objection to the form of the question. Asked and answered. You can go ahead and answer.

**Katz**: Yes, I believe it was a personnel issue.

(*Id.* at 103:9-25 -- 104:4-17).

Plaintiff's arguments miss the mark.  As to his communications with Belfield, Katz's testimony that he was not seeking legal advice from Belfield, a nonlawyer, does not void application of the privilege to all of their communications previously identified and determined to be privileged.  Defendants submit that this Court previously concluded that prior emailed communications between Katz and Belfield were privileged.  Indeed, as detailed in its Opinion of September 17, 2021 ("September 17th Opinion"), (ECF No. 75), this Court previously reviewed *in camera* emailed communications between Katz and Belfield, among others, identified on Defendants' privilege log, (*see, e.g.*, 19, 20, 38, 39, & 40), and determined that they were privileged because they either contained a request for legal advice, reflected discussions among non-attorney NJIT employees about a request for legal advice, and/or reflected discussions and a request among non-attorney NJIT employees to transmit legal advice given by counsel.  (ECF No. 75 at 7-8).  In reaching this conclusion, the Court reasoned, in part, "the privilege protects

communications with those that must be consulted in order for a lawyer to provide legal advice –
i.e., those that 'need to know' or have information necessary to assist the lawyer in providing legal
advice.'" (*Id*. at 6) (quoting *Margulis v. Hertz. Corp*., Civ. No. 14-1209 (JMV), 2017 U.S. Dist.
LEXIS 28311, at *22 (D.N.J. Feb. 28, 2017)) (internal citation omitted).  This Court found
persuasive the rulings from other courts that have found, "when an individual email
communication within an email chain either discusses, transmits, and/or reflects legal advice, the
communication within the document is protected by the privilege." (ECF No. 75 at 7) (cases cited
therein).  As such, the context and purpose for which the communications were made, even those
between non-lawyers, are relevant to determining whether the communication is privileged.

In considering the context and purpose for which the communications were made here,
Katz testified that he consulted with Belfield about Plaintiff and his outside activities issues to tell
him "what was going on and asking him what we should do about it."  (Katz Dep. Tr. at 36).
Katz's deposition testimony appears to support the application of the attorney-client privilege to
protect such communications consistent with this Court's prior rulings in its September 17th
Opinion.  As a result, this Court rejects Plaintiff's attempt to import wholesale surrender of the
privilege that this Court found in its September 17th Opinion, (*id.*), attached to Katz's and
Belfield's communications, based on the referenced testimony of Katz.  Accordingly, Plaintiff's
application to compel production of any such privileged communications between Katz and
Belfield on the privilege log based on Katz's testimony is **DENIED**.

The Court also rejects Plaintiff's argument that Katz's testimony demonstrates that his
communications with Li are not protected by the attorney-client privilege.  Katz testified that he
did not rely on Li's advice "to make sure that he was in compliance with the law in his dealings
with Jason Jorjani on the OAQ [outside activities questionnaire] issue."  (Katz Dep. Tr. 103:12-

16, 23-25).  Katz further testified that although he is not a lawyer Plaintiff's conduct seemed to be a personnel issue, rather than a legal issue.  (*Id.* at 92:22-25—93:1-8, 104:4-6, 10-17).

Importantly, Katz did not testify that he never sought legal advice from Li on this subject matter.  The relevant inquiry turns on the overall tenor of the communication to determine whether a request for legal advice is sought.  *See Engage Healthcare Communs. v. Intellisphere, Civ.*, 2017 U.S. Dist. LEXIS 230825, at *9 (D.N.J. Sept. 12, 2017) (special master) (quoting *In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000)) (citations omitted); *In re Lincoln Nat'l Co. Litig.*, Civ. No. 16-6605, 2019 U.S. LEXIS 224986, *15-16 (E.D. Pa. Dec. 5, 2019).  As such, the Court must consider the overall tenor of the disputed communication.

To that end, Plaintiff's counsel asked Katz if he relied on Li's advice to ensure he complied with the law to which Katz responded that he did not rely on it. (Katz Dep. Tr. at 102).  The phrasing of Plaintiff's counsel's question is predicated on Li having provided legal advice to Plaintiff.  As such, based on the testimony submitted to the Court, nothing stated by Katz detaches the privilege because actual reliance on an attorney's advice is not dispositive of whether the attorney-client privilege protects the confidential communication.  In other words, the privileged nature of a communication is not vitiated merely because the client does not heed counsel's advice. The privilege attaches by reason of the advice sought or given in a confidential communication. Accordingly, Katz's testimony that he did not rely on Li's legal advice, by itself, does not void the privileged nature of any such communication, let alone forfeit the privilege to all communications with Li previously identified on the privilege log

Similarly, Katz's testimony that he perceived Plaintiff's OAQ noncompliance to be a personnel issue, rather than a legal one, is not dispositive of whether the attorney-client privilege attaches to the communication between him and Li about this issue.  As this Court noted in its

September 17th Opinion, "'the privilege has been held to apply to communications by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the corporation.'" (ECF No. 75 at 6) (quoting *Engage Healthcare Communs.* 2017 U.S. Dist. LEXIS 230825, at *8) (internal citation omitted). Further, as one Court in this District recently noted, when in-house counsel is involved, "the Court focuses on whether the communications or documents were made to in-house counsel in their professional capacity as a lawyer." *Poe v. Drive History Sales Corp.*, 2022 WL 2235880, at *2 (D.N.J. Jun. 22, 2022); *see Margulis,* 2017 U.S. Dist. LEXIS 28311, at *14 ("the privilege applies only if the communication was made to an attorney *acting as an attorney*.").

While it is true that communications relating to business rather than legal issues are not privileged, *see Margulis*, 2017 U.S. Dist. LEXIS 28311, at *14 (internal citation omitted), application of this rule is not easy because "'in the corporate community, legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'" *Id.* (quoting *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98-99) (D.N.J. 1990). As Defendants point out, "[t]he proper inquiry in the business versus legal context 'is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal.'" *Id.* (quoting *Leonen*, 135 F.R.D. at 99). To ensure that corporate attorneys have properly asserted the privilege over a communication, "'the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services.'" *Id.* (internal citation omitted).

As this Court has determined herein, Katz's testimony does not in any way suggest that Li was not acting in her capacity as a lawyer when communicating with him about the OAQ issue. Further, in reviewing Katz's testimony in response to Plaintiff's counsel's question, it appears the communication was made to address a problem, here, compliance with the law as it relates to

Plaintiff's outside activities, which required the advice of an attorney, Li. Personnel issues often require consultation and advice from an attorney because such issues can have legal consequences for the client. Accordingly, under these circumstances, it appears, based on Katz's testimony, that this communication between Katz and Li about a personnel issue was predominantly legal, and thus the privilege attaches to it.[9] *See Shipyard Assocs., L.P. v. City of Hoboken*, , 2015 WL 4623470, at *4 (D.N.J. Aug. 3, 2015). Therefore, Plaintiff's application to compel wholesale production of communications between Katz and Li identified on Defendants' privilege log based on Katz's testimony is **DENIED**.

### D.  Defendants' Application for Sanctions

Defendants submit that Plaintiff's counsel has repeatedly failed to advance any valid argument to support invading the privilege. Defendants request sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927, arguing that his efforts to invade their attorney-client privilege are frivolous and vexatious.   (ECF No. 107 at 21).  28 U.S.C. § 1927 provides: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Id*.  To violate Section 1927, an attorney must be found to have: "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008).

---

[9] As Defendants submit, to accept Plaintiff's position that a non-lawyer's perception is dispositive would require a non-lawyer corporate employee to know whether the subject matter to be discussed with corporate counsel is purely business related without any possible legal component before consulting with the attorney.

"Sanctions may not be imposed under Section 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009).  Sanctions under Section 1927 should only be awarded "in instances of a serious and studied disregard for the orderly process of justice."  *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986).  "Once a finding of bad faith has been made, the appropriateness of assessing attorney's fees against counsel under Section 1927 is a matter for the district court's discretion." *Id*.

Plaintiff's counsel's conduct does not warrant the imposition of sanctions under Section 1927.  The Court cannot find that Plaintiff's counsel's conduct is unreasonable or in bad faith, particularly since Plaintiff has prevailed on his challenge to some of defense counsel's deposition objections.  Given Plaintiff's limited success, the application was not brought in bad faith, and therefore, Section 1927 sanctions are not appropriate.  *Grider*, 580 F.3d at 142 ("[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal.").  Moreover, Plaintiff's current application based on waiver of the attorney-client privilege was filed in response to deposition testimony, and thus could not have been raised before the depositions occurred.  (ECF No. 104 at 2-3).  Thus, Plaintiff's counsel has not rehashed the same arguments or otherwise vexatiously multiplied the proceedings.  Accordingly, there is no basis for Section 1927 sanctions in this case.

## III.   CONCLUSION

For the reasons set forth above, the Court **OVERRULES IN PART AND SUSTAINS IN PART** defense counsel's objections.  Further, Plaintiff's applications to compel the production of the communications previously listed on Defendants' privilege log based on waiver of the attorney-client privilege and to compel the deposition testimony of attorneys O'Reilly and Lyons

on this basis are **DENIED**.  In addition, Plaintiff's application to compel the production of written communications between Katz and Li as well as between Katz and Belfield previously listed on Defendants' privilege log, based on Katz's testimony, is **DENIED**.   Finally, Defendants' application for sanctions is **DENIED**.  An appropriate form of order will be entered.


**s/Jessica S. Allen**
**JESSICA S. ALLEN**
**United States Magistrate Judge**

Dated:  April 18, 2023