

**WALSH PIZZI O'REILLY FALANGA**

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Marc D. Haefner
Direct Dial: (973) 757-1013
mhaefner@walsh.law

July 25, 2023

**VIA ECF**
The Honorable Jessica S. Allen, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    <u>**Jorjani v. New Jersey Institute of Technology, et al.**</u>
               **No. 2:18-cv-11693**

Dear Judge Allen:

      This firm represents Defendants in connection with the above-referenced matter. We write together with counsel for Plaintiff Jason Jorjani ("Plaintiff") pursuant to the Court's Order dated July 14, 2023 [D.E. # 151] regarding Plaintiff's Fourth and Fifth Set of Document Demands.

**DEFENDANTS' POSITION**

      Defendants' position is that we have offered a number of compromises, including providing salary information for all university lecturers since 2016, in hopes of resolving these issues, but Plaintiff has insisted on an all or nothing approach therefore nothing set forth in the July 7, 2023 letter [D.E. # 148] has been eliminated from the list of disputes with the exception of item one of the Fifth Set of Demands seeking Plaintiff's W2s.

      Requests 1 through 5 of the Fourth RFPs seek documents upon which NJIT intends to rely in order to prove its affirmative defenses. We note that any such documents have already been produced in this case and NJIT will identify such documents in accordance with Fed. R. Civ. P. 26(a)(3).

      Requests 6 through 27 of the Fourth RFPs seek all "non-renewal letters" and "termination notices" over the course of a decade spanning 2012 through 2022, a period far broader than both Dr. Katz's time as chair of the humanities department and Plaintiff's time as a university lecturer. Whether lecturers or professors were non-renewed or terminated under circumstances Plaintiff believes to be comparable to his own has been explored and disclosed in this case, and NJIT is cognizant of its ongoing obligation to supplement such disclosures. Indeed, discovery into purported comparators for a period of seven years was completed years ago at the Court's direction, and the sufficiency of the response and/or scope allowed by the Court was unchallenged.

Hon. Jessica S. Allen, U.S.M.J.
July 25, 2023
Page 2

There is simply no basis upon which to seek a decade-long, university-wide production of such correspondence with faculty.  The Fourth RFPs' expansion to every lecturer or professor at NJIT over a ten-year period, seemingly for the sole purpose of determining if Dr. Katz accurately recalled the number of such instances during his deposition, is neither relevant nor proportionate to the needs of this case and NJIT stands by its objections.

Requests 28 through 37 of the Fourth RFPs seek the "NJIT Departmental Chairmans' records showing cancelled or rescheduled classes" from 2012 through 2021.  As discussed above, information regarding comparator evidence for a period of seven years has already been produced.  Whether classes were cancelled or rescheduled three years prior to Plaintiff's arrival at NJIT, during Plaintiff's engagement as a university lecturer, or three years thereafter is not germane to Plaintiff's claim that his contract as a university lecturer was not renewed because of the content of his speech.  Further, and contrary to the Letter's suggestion, class cancellations were among a number of bases for the decision not to renew Plaintiff's contract and NJIT need not come forward with "hard numbers" that Plaintiff cancelled classes more frequently than someone else.

Moreover, as Plaintiff is aware, the Saiber Report recounted the following:

- In the Humanities Department, faculty were informed that they should notify Dr. Katz or the department's administrative team of all class cancellations so that the Department would be aware of them, but there was no formal system in place to track canceled classes (*See* Report, at 3); and

- Elsewhere in his interview, Dr. Jorjani stated he remembered writing to Mr. Tress about the cancellation of a class due to transit issues on one occasion, but Mr. Tress did not recall being notified and our review of Dr. Jorjani's emails failed to disclose any instance where he notified the Humanities Department that he was cancelling a class (*See* Report, at 3, n.3).

Thus, of course, the irony and confusion of Plaintiff's position is manifest.  That is, Plaintiff seeks records of class cancellations of the kind that he was contemporaneously required to create but failed to do so.

Requests 38 to 45 of the Fourth RFPs seek all reappointment letters for humanities lecturers from 2012 to 2019.  Here, again, this appears directed toward adducing purported comparator evidence, which issue was litigated and resolved.  Plaintiff's reappointment letters have been produced, along with evaluations regarding Plaintiff's teaching, which presumably forms the basis for your contention that "Jorjani's teaching appears to have been strong[.]" Simply stated, as a university lecturer, Plaintiff's sole responsibility was to appear and lecture, which he frequently failed to do without legitimate excuse.  Indeed, on several occasions such failures were on account of Plaintiff's participation in the very same outside activities he repeatedly concealed.  Reviewing and producing reappointment letters for all humanities lecturers across a seven-year span is unduly burdensome and not proportionate to the needs of this case.  Such materials are not relevant to Plaintiff's claim, nor are they relevant to – and certainly do not "undercut" – NJIT's defenses.

Hon. Jessica S. Allen, U.S.M.J.
July 25, 2023
Page 3

Request number 46 of the Fourth RFPs seeks Professor Katz's student evaluations for 2017. This is because Plaintiff thinks that he "should be able to see if NJIT, in its attempt to punish a dissident speaker, furnished it [sic] students with a professor that the students liked less well than Jorjani." (Letter, at 3). There is no element of Plaintiff's claim that pertains to whether students or any other constituency liked Plaintiff's replacement more or less than Plaintiff and neither do any of NJIT's defenses relate to any such opinions.

Request number 2 of the Fifth RFPs seeks documentation relating to health benefits. As set forth in NJIT's responses, such benefits were furnished and administered by the State of New Jersey. Plaintiff is welcome to seek the same directly from the relevant office or agency, but NJIT is not obligated to do so on Plaintiff's behalf.

Request number 3 of the Fifth RFPs seeks documentation relating to additional benefits Plaintiff received. As set forth in NJIT's responses, such documentation was previously produced in this matter. Although Plaintiff is equally capable of ascertaining the contents of NJIT's prior productions, in the spirit of cooperation, we have undertaken that task for Plaintiff.

Request numbers 4 through 35 of the Fifth RFPs seek (i) all W2s issued to humanities professors and lecturers from 2015 through 2022; and (ii) all final paystubs for such individuals over the same period. In addition to implicating the legitimate privacy interests of third-parties, these requests are not, as the Letter suggests, tied to what Plaintiff "reasonably could be expected to make at NJIT over the course of his career." (Letter, at 3). Rather, the requests seek compensation information entirely unrelated to what Plaintiff could have reasonably been expected to earn. For example, the compensation paid to a tenured professor or, for that matter, a non-tenured professor, in 2022 has no bearing whatsoever on what Plaintiff may have earned had his contract been renewed. Moreover, as outlined in the reappointment letter executed by Plaintiff on June 26, 2017, Plaintiff's compensation was to be calculated based upon the adjustments set forth in the applicable collective bargaining agreement. While Defendants have proposed reasonable resolutions to these damages-related requests, they have been rejected.

**PLAINTIFF'S POSITION**

Plaintiff's position is *not* "all or nothing"; it is that that even resolving the salary issues still leaves the majority of Plaintiff's demands unmet. Specifically, Defendants have offered "every humanities' lecturers' salary from the date Dr. Jorjani started through today (with various raises that they have received) and a confirmation that the benefits program remains unchanged."

That is some progress toward only the demands Plaintiff made at items 4 through 19 of his 5th Document Demand. But the following remain unaddressed:
- Items 1-5 of the 4th Document Demand. These sought the documentary basis for Defendants' own Affirmative Defenses. They should have been supplied as part of Defendants' initial disclosures, but Defendants have never bothered to either serve or identify such materials, which are now years overdue. Defendants have now vaguely indicated that they will be identified or provided in the future at some point,

- but it would be helpful for all concerned to have a hard and fast deadline to iron these out.
- Items 6 through 28 of the 4th Document Demand. These sought non-renewal letters for any lecturer or professor that NJIT failed to renew from the years 2012 (which was the year set by Judge Falk as the initial look back period when the litigation started) to the present in 2022. Such demands are neither overly broad, nor unduly burdensome, nor unreasonably calculated to lead to admissible evidence. Professor Katz, Jorjani's Chairman at the time of his termination, testified that he did not remember one instance in his term as chairman that anyone other than Jorjani was not renewed. Katz deposition, p. 11. And he recalled only two who were fired outright under circumstances wildly different from Jorjani's. Id., pp. 11-16. The documentation sought should confirm Professor Katz's recollection. (Frankly, there should not be much documentation to provide if Katz's recollection is correct). Furthermore, even if Professor Katz was not the chairman for the entirety of the time frame in Plaintiff's demand, unless his predecessor and successor operated under radically different standards, the non-renewals and termination pattern should be fairly consistent. If Jorjani was the only teacher at NJIT singled out for such harsh treatment at NJIT, or one of a handful of men so treated, well that could be probative of his theory of the case for the fact finder waiting at the end of this litigation.
- Items 28 through 37 of the 4th Document Demand sought NJIT Departmental Chairmans' records showing cancelled or rescheduled classes for 2012 through the present (2022). NJIT has affirmatively asserted that Jorjani missed an excessive number of classes. That begs the question: excessive compared to whom? If NJIT is simply asserting this stance without any comparators we should in fairness be able to show that to the fact finder. Thus far, however, NJIT has failed to provide any hard numbers to compare Jorjani's allegedly excessive cancellations against. Yet Provost Deek testified that to get at such numbers, we would have to go through the various chairmen's records. Deek deposition, pp. 193-194. Hence these entirely appropriate demands.
- Items 38 through 45 of the 4th Document Demand sought reappointment letters for Department of Humanities lectures in the relevant time period. The reappointment letters usually give some indication of the strength of a lecturer's teaching. Jorjani's teaching appears to have been strong, even if he was cancelling lectures excessively – which would seem to undercut an aspect of the defense. Again, we should be able to document this.
- Item 46 of the 4th Document Demand sought Professor Katz's own student evaluations for 2017. Professor Katz testified that he took over Jorjani's senior seminar in 2017 and taught it himself. Katz deposition, p. 193. We should be able to see if NJIT, in its attempt to punish a dissident speaker, furnished its students with a professor that the students liked less well than Jorjani.
- Item 2 of the 5th Document Demand sought documentation demonstrating the amount paid by NJIT for Plaintiff's health care coverage during the course of his employment. Jorjani does not have the means to obtain this information. But NJIT has such information, which they should provide to Jorjani.

Hon. Jessica S. Allen, U.S.M.J.
July 25, 2023
Page 5

- Item 3 of the 5th Document Demand sought documentation demonstrating how any additional material benefits, such as pension, were calculated and paid by NJIT to Plaintiff during the course of his employment. Jorjani does not have the means to obtain this information. But NJIT has such information, which they should provide to Jorjani.
- Items 20 through 35 of the 5th Document Demand sought the final pay stub for lecturers and professors in the Department of Humanities from 2012 through the present (viz. 2022). Economic loss is not entirely captured by salary, but includes fringe benefits and health care. These are not necessarily revealed on a W2. Again, given Jorjani's claim for economic loss, he should be able to discover the benefits being paid by NJIT on behalf of his fellow lecturers as a way of gauging what he has missed from NJIT. This information would be reflected on the pay stubs, showing such amount for year to date on the final document issued for each year. Again, Jorjani would certainly be willing to accept a spreadsheet for the years in question if it reveals the information sought, but Defendants are unwilling to meet this compromise.

In light of the foregoing, the Parties look forward to meeting with Your Honor on July 31, 2023.

We thank the Court for its continued attention to this matter. If Your Honor or Your Honor's staff should have any questions or require anything further.

Respectfully submitted,

*s/Marc D. Haefner*
*s/Frederick C. Kelly*

Marc D. Haefner
Frederick C. Kelly