UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JASON JORJANI,**<br><br>    **Plaintiff,**<br>v.<br><br>**NEW JERSEY INSTITUTE OF TECHNOLOGY et al.,**<br><br>    **Defendants.** | Civ. No. 2:18-cv-11693<br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.

  This matter comes before the Court upon Plaintiff Jason Jorjani's appeals of the April 18, 2023 Opinion and Order (ECF Nos. 132, 133) and the May 1, 2023 Amended Scheduling Order (ECF No. 135) (collectively, "Orders") issued by Magistrate Judge Jessica S. Allen ("Judge Allen"). Having reviewed the parties' submissions, the Court decides the appeal without oral argument. See Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, both of Plaintiff's appeals are **DENIED** and Judge Allen's Orders are **AFFIRMED.**

### I. BACKGROUND

  This matter arises from the non-renewal of Plaintiff's contract as a philosophy lecturer at New Jersey Institute of Technology ("NJIT"). In short, Plaintiff alleges that NJIT and certain members of its administration engaged in a conspiracy to violate Plaintiff's First Amendment rights because they disapproved of his extracurricular political speech and participation in organizations associated with alt-right politics. The Court assumes familiarity with the facts and procedural history of this case and recites only what is relevant to the instant appeal.

  During the depositions of several NJIT administrators, defense counsel raised numerous objections to Plaintiff's questioning relating to the attorney-client privilege and instructed the deponents not to answer. Plaintiff contested Defendants' objections and ultimately the issue was brought before Judge Allen. Despite attempts to informally resolve the issue, the disagreement over the objections remained and expanded into a dispute regarding whether Defendants had waived their attorney-client privilege. After submitting several letter briefs on these matters, Judge Allen issued an Opinion and Order on April 18, 2023 sustaining several of defense counsel's deposition objections and denying Plaintiff's application to compel the production of certain attorney-client communications. Opinion

("Allen Op."), ECF No. 132; Order, ECF No. 133. Plaintiff now asks this Court to reverse that decision insofar as it rules against Plaintiff. Pl.'s Br. 34-35, ECF No. 136-1.

On May 1, 2023, several days after issuing her April 18, 2023 Opinion and Order, Judge Allen issued an Amended Scheduling Order, in which she denied Plaintiff's request to file a partial motion for summary judgment prior to the close of fact discovery. ECF No. 135. Plaintiff separately appeals the Amended Scheduling Order and asks this Court to order a pre-dispositive motion hearing and motion schedule. ECF No. 137-1.

## II.  LEGAL STANDARD

When considering an appeal of a magistrate judge's decision on a non-dispositive pretrial matter, a district court may modify or vacate the ruling only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A ruling is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quotation marks and citations omitted). A ruling is considered "contrary to law" if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Ace. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). The burden of showing that a ruling is "clearly erroneous or contrary to law" rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). Where the appeal concerns a discovery dispute over which "the Magistrate Judge exercises broad discretion and is entitled to great deference," *Coyle v. Hornell Brewing Co.*, No. 08-2797 (JBS), 2009 WL 1652399, at *3 (D.N.J. June 9, 2009), the ruling "will be reversed only for an abuse of [that] discretion." *Rhett v. N.J. State*, No. 07-1310 (DRD), 2007 WL 1456199, at *4 (D.N.J. May 14, 2007).

## III.  DISCUSSION

### A.  April 18, 2023 Order and Opinion

#### 1.  *Deposition Objections*

Plaintiff seeks for this Court to, in part, overrule Judge Allen's order sustaining defense counsel's objections to certain questions asked by Plaintiff's counsel during the depositions of: (1) Defendant NJIT Provost and Senior Executive Vice President, Fadi P. Deek ("Deek"); (2) Defendant Kevin J. Belfield ("Belfield"), Dean of the NJIT College of Science and Liberal Arts; and (3) former defendant Eric Katz ("Katz"), Professor of Philosophy and Chair of Department of Humanities. Pl.'s Br. 34-35. However, Plaintiff provides no argument on these rulings in his brief. Because the Court finds, as discussed *infra*, that Defendants have not otherwise waived their attorney-client privilege, and that Judge Allen's findings on this topic were not clearly erroneous, contrary to law, or an abuse of discretion, the Court **AFFIRMS** Judge Allen's rulings on these points.

### 2. *Waiver of Privilege Based on Advice of Counsel*

In his brief, Plaintiff advances several theories in support of his claim that Judge Allen erred by holding that Defendants have not put the advice of counsel in issue in this case.

#### a) Extensive Control and Influence by General Counsel in Investigation, Suspension, and Termination of Plaintiff

In Point I of his brief, Plaintiff argues that Judge Allen failed to acknowledge facts suggesting that Defendant Holly Stern ("Stern"), NJIT's General Counsel, and Defendant Christine Li ("Li"), NJIT's Associate General Counsel and Ethics Liaison Officer, "went beyond mere consultants and had direct hands" in the investigation, suspension, and termination of Plaintiff. Pl.'s Br. ¶¶ 15, 20, 25. Specifically, Plaintiff contends that Defendants' good faith affirmative defense is based on NJIT's "review" of Plaintiff, which ultimately led to NJIT retaining the Saiber law firm to investigate Plaintiff's compliance with his obligations to disclose his outside activities. Pl.'s Br. ¶ 18. Citing to a number of cases, including *Koss v. Palmer Water Dep't*, 977 F. Supp. 2d 28, 30 (D. Mass. 2013), Plaintiff likens Defendants' good faith defense to a *Faragher-Ellerth* affirmative defense[1] and argues that by asserting it, Defendants have "affirmatively plead[ed] their internal investigation to show their probity without waiving privilege." Pl.'s Br. ¶ 23. Thus, Plaintiff continues, when attorneys are "part and parcel of the investigation which goes to the heart of Defendants' affirmative defense—as both Counsel Stern and Counsel Li were in Jorjani's case—any privilege is waived, both as to attorney-client and work product." *Id.* (quotation marks omitted).

Plaintiff's argument is unpersuasive. As discussed in Section III(A)(2)(c) *infra*, Defendants have not put the probity of their internal investigation "at issue in this lawsuit[,]" and thus, there is no basis to waive Defendants' attorney-client privilege. *Koss*, 977 F. Supp. 2d at *29; *see Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427, 432 (D.N.J. 2000) (holding that there is no basis for a waiver of the attorney-client privilege where defendant did not put the advice of counsel at issue). Even if Defendants *had* placed their investigation at issue—which they have not—the documents cited by Plaintiff do not establish that the actions of Stern and Li "were intimately connected to, if not controlling of," the overall investigation, suspension, and termination of Plaintiff. *Koss*, 977 F. Supp. 2d at 30. While Plaintiff points to Deek's testimony that Stern, while acting as an "interim vice president for HR," was involved to some degree with other NJIT administrators in the decision to not renew Plaintiff's contract, Deek Dep. 253:2-21, the balance of evidence cited by Plaintiff does not "necessitate a finding of [Stern's and Li's] participation as [business people] in the

---

[1] In certain Title VII hostile work environment cases, "the *Faragher/Ellerth* defense allows an employer to escape vicarious liability if: (1) the employer exercised reasonable care to prevent and correct any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided." *O'Brien v. Middle E. F.*, 57 F.4th 110, 115 (3d Cir. 2023) (first citing to *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); and then citing to *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)).

[investigation, suspension, and] decision making process such that [their] advice should be subject to disclosure." *Waugh*, 191 F.R.D. at 431.

First, Plaintiff asserts that Stern drafted a suspension letter that was issued to Plaintiff, which, he insists, "clearly points to such decision being pushed by NJIT's General Counsel's office." Pl.'s Br. ¶ 17. Notwithstanding Plaintiff's erroneous assumption that whoever authored the letter made the decision to suspend Plaintiff, Deek specifically did not answer Plaintiff's counsel's questions as to who authored it. Deek Dep. 43:20-45:4. Deek also testified that such letters typically come from several other offices before he signs them. This fact is corroborated by Bloom, who testified that Deek was the final decisionmaker for academic decisions after guidance from other departments in the chain of command. Bloom Dep. 112:20-113:23.

Next, Plaintiff points to Deek's deposition testimony and entries in Defendants' Privilege Log, ECF No. 104-4, to argue that Stern directly participated in the "review" into Plaintiff's speech. Pl.'s Br. ¶ 18. However, the cited testimony states only that Stern was involved in conversations with Deek and other NJIT administrators regarding the "sensitive issues of First Amendment and academic freedom," Deek Dep. 142:13-143:8, suggesting that her involvement was "in furtherance of [her] duties as an attorney, not in the capacity of a decisionmaker or investigator." *Waugh*, 191 F.R.D. at 432-33. Privilege Log entries 22, 25, 26-32, 63-65, 72-74, 78, and 80-83, which show Stern and Li involved in email discussions with other NJIT employees, are similarly consistent with Stern and Li acting as attorneys advising NJIT on its inquiry into Plaintiff. Likewise, Privilege Log entries 258-262, 267-276, and 278-284, do not "reflect ongoing, active participation in the investigation on the part of [Stern and Li] in the form of guidance, advice, and direction" to the Saiber law firm. *Koss*, 977 F. Supp. 2d at 29-30. These documents show Stern and Li forwarding emails and documents to Saiber over a short period less than a week after NJIT retained the law firm, suggesting that Stern and Li were providing Saiber with the information necessary to initiate the investigation, rather than participating in it. Lastly, Plaintiff points to emails between Stern and Li discussing *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, No. 9:16-CV-80655, 2016 WL 7242140 (S.D. Fla. Dec. 15, 2016), which purportedly involves the termination of a professor who "embarrassed the university through his extra-mural speech" based on his "outside activities form." Pl.'s Br. ¶ 19. Plaintiff contends that Stern's and Li's "suspicious" review of the case serves as evidence that they were responsible for deciding not to renew Plaintiff's contract. Pl.'s Br. ¶¶ 11, 19. However, this is merely a *post hoc, ergo propter hoc* conclusion.

As such, the Court finds that Judge Allen's purported failure to acknowledge Stern and Li as direct participants in Defendants' review of Plaintiff was not clearly erroneous, contrary to law, or an abuse of discretion.

        b)      <u>Selective Disclosure of Saiber Report</u>

Plaintiff next argues, in Point II of his brief, that NJIT's communications with counsel regarding Plaintiff's outside activities questionnaire ("<u>OAQ</u>") should be produced because

4

Defendants disclosed the investigation report on the same topic prepared by the Saiber law firm ("Saiber Report"), which Plaintiff presupposes is privileged. Pl.'s Br. ¶¶ 26-31. Faced with this argument below, Judge Allen refuted Plaintiff's presupposition that the Saiber Report is protected by the attorney-client privilege, and citing to *Pallares v. Kohn (In re Chevron Corp.)*, 650 F.3d 276, 289 (3d Cir. 2011), agreed with Defendants' position that their disclosure of and reliance on a non-privileged report cannot serve as a basis for subject-matter waiver of the attorney-client privilege. Allen Op. 15. On appeal, Plaintiff asserts that Judge Allen's opinion "contradicts itself" because she also determined that Katz's communications with counsel regarding Plaintiff's OAQ compliance were privileged and not, as Plaintiff argued, non-privileged business advice. Pl.'s Br. at 19. Accordingly, Plaintiff maintains that either all communications with counsel about Plaintiff's OAQ compliance are non-privileged business communications that should be disclosed, or that any privilege over NJIT's communications on this topic was waived when the Saiber Report was disclosed. Pl.'s Br. ¶ 31.

First, as discussed in Section III(A)(3) *infra*, Plaintiff's assertion that Katz's communications with counsel are non-privileged business documents based on his deposition testimony is unavailing. Further, the Saiber Report is not privileged. The "attorney-client privilege and the work product doctrine do not apply to documents produced in the course of an internal investigation[,]" particularly where, as here, the report conveys factual findings and the investigation was initiated before the commencement of a lawsuit. *Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. CIV.A. 09-5351 SRC, 2010 WL 5139874, at *5 (D.N.J. Dec. 8, 2010); *see also Payton v. N.J. Tpk. Auth.*, 691 A.2d 321, 335 (N.J. 1997). Thus, Judge Allen's determination that the Saiber Report is not privileged and that Plaintiff has not met his burden of showing how reliance on a non-privileged report results in a waiver of the attorney-client privilege is not clearly erroneous, contrary to law, nor an abuse of discretion. *See In re Chevron Corp.*, 650 F.3d at 280 ("[T]he public disclosure of non-privileged communications does not lead to a subject matter waiver of the attorney-client privilege for communications covered by the privilege.").

### c) Reliance on Advice of Counsel under *Rhone*

Plaintiff next argues that Defendants—through deposition testimony and the assertion of affirmative defenses—have placed reliance on advice of counsel regarding Plaintiff's OAQ activities at issue in this litigation, and as such, have waived privilege over communications from all attorneys who have advised NJIT on this subject matter.

The Third Circuit set forth the framework for placing advice of counsel at issue in *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994). In *Rhone*, the Court held that "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id.* at 863. Rather, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense *by disclosing or describing an attorney client communication*." *Id.* (emphasis added). Applying these

5

principles to the instant case, Judge Allen held that "Plaintiff has not demonstrated that Defendants, through the referenced deposition testimony, have placed the advice of counsel or contents of previously identified privileged communications in issue." Allen Op. 23. In support of her determination, Judge Allen found that (1) the testimony of Defendants Deek and Belfield did not "describe or disclose any attorney-client privileged communications in an attempt to refute any essential element of Plaintiff's claims or assert their affirmative defenses"; (2) Defendants have not attempted to "justify their conduct or limit their liability by asserting that Defendants relied on the advice of counsel"; and (3) Defendants "have in no way plead advice of counsel as an affirmative defense." Allen. Op. at 20-23.

Plaintiff's argument on appeal is set out in Points III, IV, and V of his brief. First, Plaintiff argues that Defendants built their good faith and willfulness affirmative defenses around the Saiber Report, and that as such, all of Defendants' communications with the Saiber law firm not reflected in the report have been put in issue and should be disclosed under *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 895 F. Supp. 88 (E.D. Pa. 1995) and *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995). Pl.'s Br. ¶¶ 35-36. Next, Plaintiff argues that once the privilege over Defendants' communications with the Saiber law firm have been waived, the waiver extends to all communications between Defendants and counsel on the same subject, including communications with defense attorneys Tricia O'Reilly and M. Trevor Lyons of the Walsh Pizzi O'Reilly and Falanga law firm, NJIT's current counsel.[2] Pl.'s Br. ¶¶ 38-39. Lastly, Plaintiff argues that Judge Allen's reliance on *Rhone* was in error because *Glenmede* and *Andover* are more apposite. Pl.'s Br. ¶¶ 42-46.

Taking each of these arguments in turn, Plaintiff's reliance on *Glenmede* and *Andover* is unavailing. In *Glenmede*, the plaintiff conceded that it waived its attorney client privilege by explicitly raising reliance on the advice of counsel as an affirmative defense and voluntarily producing a privileged letter in support of that defense. 56 F.3d at 486. Here, Defendants have not asserted reliance on the advice of counsel as an explicit affirmative defense. Further, as discussed in Section III(A)(2)(b) *supra* and contrary to Plaintiff's assertion, the Saiber Report is not an "attorney client communication that has been disclosed," and no waiver is effectuated from its disclosure. Pl.'s Br. ¶ 33.

In *Andover*, defendants moved to compel documents relating to the preparation of a report that the plaintiff attached to its complaint to bolster its claims. While the court held that the underlying communications were never privileged and granted defendants' motion, it noted in the alternative that had "there been any attorney-client privilege attached to the underlying communications, plaintiff would have put those communications into issue and thereby waived the privilege" by attaching the report to its complaint. *Andover*, 895 F. Supp. at 92. Notably, the court's alternative holding relied upon plaintiff's assertion that it *could* have claimed that the report was privileged but preemptively disclosed it in order to avoid

---

[2] Defendants point out that while supposedly quoting a deposition transcript in his brief, Plaintiff refers to Tricia O'Reilly as "Trash O'Reilly" and "Trash et al." Defs.' Br. at 21 n.4, ECF No. 141. The deposition transcript does not contain this same error. The Court finds this error to be wholly inappropriate and expects Plaintiff to ensure that similar mistakes are not made in future filings.

6

waiving the underlying communications. *Id.* at 89 n.1. The court held that plaintiff's strategic disclosure impermissibly used the privilege as a shield and a sword. *Id.* at 92. However, Defendants here have not engaged in such a strategy. Again, as discussed *supra* in Section III(A)(2)(b), the Saiber Report was never privileged, and Defendants' disclosure of and reliance on the report does not result in any waiver. *See In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) ("[T]he risk of a party using the privilege both as a sword and a shield by selectively disclosing communications to gain an advantage in litigation simply does not exist when the selectively disclosed communications were not privileged when made.").

Plaintiff's argument that Judge Allen erred by failing to explain why *Rhone* controls over the instant case instead of *Glenmede* and *Andover* is unsuccessful for these same reasons. Pl.'s Br. ¶¶ 42-46. Plaintiff refutes no other point in Judge Allen's comprehensive analysis of *Rhone*, and the Court finds that Judge Allen's determination that the Defendants have not waived the attorney-client privilege over their communications with counsel regarding Plaintiff's OAQ compliance was not clearly erroneous, contrary to law, or an abuse of discretion. Accordingly, the Court will **AFFIRM** Judge Allen's denial of Plaintiff's application to compel production of written communications on Defendants' Privilege Log and to compel the depositions of attorneys O'Reilly and Lyons.

3.   *Katz's Lack of Intent to Seek Legal Advice*

Lastly, in Point VI of his brief, Plaintiff argues that Katz's deposition testimony provides an "independent ground to negate the privilege claimed for various documents identified in Defendants'[] Privilege Log because the subjective intent of the person seeking to communicate is determinative." Pl.'s Br. ¶ 47. In his deposition, Katz asserted that he never sought legal advice from Belfield, a non-lawyer, when discussing issues concerning Plaintiff. Katz Dep. 36:15-37:1. He also testified that when communicating with Li, he saw Plaintiff's OAQ compliance as a "personnel issue" rather than as a legal issue. Katz Dep. 103:12-104:17. Plaintiff asserts that because Katz did not think he was asking Belfield or Li for legal advice, none of Katz's communications to Belfield or Li in Defendants' Privilege Log are privileged.

Judge Allen did not accept Plaintiff's argument below and denied Plaintiff's application to compel the wholesale production of these communications. Allen Op. 26, 29. Regarding Katz's communications with Belfield, Judge Allen found the nature of Katz's deposition testimony "to support the application of the attorney-client privilege to protect such communications" because "Katz testified that he consulted with Belfield about Plaintiff and his outside activities issues to tell him 'what was going on and asking him what [they] should do about it.'" Allen Op. 26. (quoting Katz Dep. 36). Regarding Katz's communications with Li, Judge Allen determined that Katz's testimony did not suggest that Li was not acting in her capacity as a lawyer when communicating with him, because it appears that Katz's communications were indeed made to address compliance with the law as it relates to Plaintiff's outside activities. Allen Op. 28-29.

7

In his brief before this Court, Plaintiff argues that Judge Allen erred by not addressing any of his cited authority, which purportedly shows that the speaker's subjective intent controls as to whether his or her communications are privileged. Pl.'s Br. ¶ 50. Notably, "the law does not require courts to provide an exhausting analysis of every minor argument that parties raise," *Gutierrez v. Johnson & Johnson*, 743 F. Supp. 2d 418, 423-24 (D.N.J. 2010), and this Court is satisfied that Judge Allen adequately addressed those arguments that most merited discussion whether Plaintiff's cases were explicitly cited or not. Regardless, Plaintiff's cited authority fails to support his assertion that "the subjective intent of the person seeking to communicate is determinative[.]" Pl.'s Br. ¶ 49. First, Plaintiff's cited portions of *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) highlight the distinction between accounting and legal advice but do not opine on whether the speaker's subjective intent is relevant in determining the type of advice given. Likewise, *E.E.O.C. v. Johnson & Higgins, Inc.*, No. 93 CIV. 5481, 1998 WL 778369 (S.D.N.Y. Nov. 6, 1998) notes that the speaker's intent is relevant towards the "confidentiality" requirement of privilege but does not address its relation to the "legal advice" requirement. Finally, Plaintiff's interpretation of *United States v. Rockwell Int'l*, 897 F.2d 1255 (3d Cir. 1990) is similarly unconvincing. While the court did hold that "most vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*[,]" the court specified that the "*district court* must make specific factual findings *as to the nature of the material in [dispute]* in order to determine whether it constituted legal advice for purposes of the privilege." *Id.* at 1264-65 (latter emphasis added) (quotation marks omitted).

Courts consider the nature of the communication, and not just the speaker's subjective intent, when determining whether a communication is considered "legal advice" protected by the privilege. *See, e.g.*, *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016) ("Judicial scrutiny should focus on the nature of the relationship between in-house counsel and others and the type of information or communication involved."). Additionally, in addition to messages *seeking* legal advice, messages between non-attorneys that *implement*, *provide*, or otherwise *reflect* the legal advice of an attorney can be privileged as well. *See Rowe v. E.I. duPont de Nemours & Co.*, No. CIV.06-1810, 2008 WL 4514092, at *11 (D.N.J. Sept. 30, 2008). With these principles in mind, the Court finds that Judge Allen's consideration of the nature and context of the contested privilege log entries, along with Katz's testimony regarding the nature of his communications with Belfield and Li, was not clearly erroneous, contrary to law, or an abuse of discretion.[3] Thus, Judge Allen's judgment denying Plaintiff's application to compel production of communications listed on Defendants' Privilege Log between both Katz and Belfield and Katz and Li is **AFFIRMED.**

---

[3] Further, as Judge Allen noted, accepting "Plaintiff's position that a non-lawyer's perception is dispositive would require a non-lawyer corporate employee to know whether the subject matter to be discussed with corporate counsel is purely business related without any possible legal component before consulting with the attorney." Allen Op. at 29 n.9. Such a result would be unworkable. *See Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981) ("It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant.").

### B. May 1, 2023 Amended Scheduling Order

Separately, Plaintiff appeals Judge Allen's decision to deny Plaintiff's request to file a partial motion for summary judgment in her May 1, 2023 Amended Scheduling Order.[4] ECF No. 137. "[A] summary judgment motion may be filed at any time 'the court orders.'" *Eskridge v. Philadelphia Hous. Auth.,* 722 F. App'x 296, 300 (3d Cir. 2018) (quoting Fed. R. Civ. P. 56 (b)). Additionally, the advisory committee notes to Rule 56 note that the court's discretion permits "[s]cheduling orders [to be] tailored to the needs of the specific case, perhaps adjusted as it progresses, [which is] likely to work better than default rules." *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 45 n.2 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56 comm. n. (2009)) (quotation marks omitted) (alternations in original). At the time Judge Allen issued the Amended Scheduling Order, fact discovery was not yet completed and Plaintiff's appeal of Judge Allen's April 18, 2023 opinion was pending before this Court. Additionally, the order indicates that the Court will entertain any renewed pre-dispositive motion hearing requests following the close of fact discovery. Amended Scheduling Order ¶ 5, ECF No. 135. As such, Judge Allen's denial of the request as premature was not contrary to law, clearly erroneous, or an abuse of discretion. The Court will therefore **AFFIRM** the May 1, 2023 Amended Scheduling Order.

### IV. CONCLUSION

For the reasons set forth above, both of Plaintiff's appeals are **DENIED** and Judge Allen's Orders are **AFFIRMED.** An appropriate Order shall follow.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 9, 2023**

---

[4] The Court notes that while the Amended Scheduling Order refers only to Plaintiff's initial request to file its dispositive motion, the parties separately requested a pre-dispositive motion hearing in January 2023. ECF Nos. 126-27. The Court construes the Amended Scheduling Order to deny this request as well.