UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**JESSICA S. ALLEN**<br>UNITED STATES MAGISTRATE JUDGE | Martin Luther King, Jr. Federal Bldg.<br>& U.S. Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102<br>(973-645-2580) |

**LETTER ORDER**

January 17, 2024

TO:   ALL COUNSEL OF RECORD

Re:   **Jorjani v. New Jersey Institute of Technology, et al.**
      **Civil Action No. 18-11693 (WJM) (JSA)**

Dear Counsel:

Before the Court is Defendants'[1] application in support of sustaining certain objections by defense counsel raised in response to deposition questions posed by Plaintiff's counsel to Defendant Holly Stern. (ECF Nos. 149, 157). Plaintiff, Jason Jorjani ("Plaintiff), opposes the application. (ECF No. 155). No oral argument was heard, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, and for good cause shown, defense counsel's objections are **SUSTAINED IN PART AND OVERRULED IN PART**.

I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts and procedural history of this case are well-known to the parties and detailed in prior opinions and orders. (*See, e.g.*, ECF Nos. 14, 28, 58, 60, 75, 95, 131, 143, & 163). The Court recites only the facts and procedural history relevant to addressing the instant dispute.

Plaintiff filed suit against Defendants, arising from the non-renewal of Plaintiff's contract

---

[1] Defendants are New Jersey Institute of Technology ("NJIT"); Joel S. Bloom ("Bloom"); Kevin J. Belfield ("Belfield"); Gareth J. Russell ("Russell"); Andrew Klobuchar ("Klobuchar"); Neil J. Maher ("Maher"); Fadi P. Deek ("Deek"); Holly Stern (at times, "Stern"); and Christine Li ("Li") (sometimes, collectively, "Defendants").

as a philosophy lecturer at NJIT. In essence, Plaintiff alleges that NJIT and certain members of its administration engaged in a conspiracy to violate Plaintiff's First Amendment rights because they disapproved of his political speech, views, and participation in certain political organizations.

The parties have been engaging in extensive fact discovery since 2019. The current deposition dispute is the sole outstanding fact discovery issue. All other fact discovery has been completed. (*See* ECF No. 156).

## II.   THE CURRENT DISPUTE

Defendant Stern is NJIT's General Counsel. (ECF No. 149 at 1). Her deposition was held on June 22, 2023. (*Id.*) During the deposition, the parties contacted the Undersigned's Chambers advising that disputes had arisen over defense counsel's objections to (and instructions not to answer), certain questions based on the work-product doctrine. (*Id.*) After attempting to resolve the dispute informally, the Undersigned directed the parties to submit letter briefs, outlining their respective positions. The parties complied. (ECF Nos. 149, 155, 157).

After synthesizing the parties' respective submissions, it appears six (6)[2] deposition questions are at issue (at times, the "disputed questions").[3] In support of sustaining defense counsel's objections, Defendants generally contend that Plaintiff's counsel presented Stern with non-privileged documents during her deposition and then asked her to testify about her mental impressions, legal opinions, and conclusions about Plaintiff's activities in the context of his First Amendment legal claims. (ECF No. 149 at 1 & 5). Defendants further contend that Stern's mental

---

[2] Defendants' opening submission identified four (4) questions in dispute. (ECF No. 149 at 2-3). However, Plaintiff's opposition identified six (6) disputed questions. (ECF No. 155 at 5-6). On reply, Defendants addressed all six questions identified in Plaintiff's opposition. (ECF No. 157 at 11-17). Therefore, for completeness's sake, the Court considers all six questions.

[3] The parties had similar disputes regarding deposition questions posed to Defendant Christine Li and defense counsel's objections thereto. Defendants' opening submission addresses the Li deposition issues. (ECF No. 149 at 3). However, in his opposition brief, Plaintiff represents that he has withdrawn his opposition to counsel's objections. (ECF No. 155 at 7). As a result, the Court need not reach the merits of same.

impressions and legal opinions are protected by the work-product doctrine, which formed the basis of defense counsel's objections to the specific disputed questions and instructions not to answer them.  (*Id.* at 4-6).

In opposition, Plaintiff contends that Defendants have asserted a good faith defense that implicates their state of mind, and thus he is entitled to cross-examine Stern regarding "her veracity and her own affirmative assertion of a lack of willfulness." (ECF No. 155 at 4).  Plaintiff continues that Defendants improperly invoked the work product doctrine in response to questions posed to Stern because there was no reasonable expectation of litigation with Plaintiff. And, in any event, Defendants have waived the work product protection through their affirmative defenses and other witnesses' deposition testimony.  (*Id.*)  As to disputed questions one, two, three, and six, Plaintiff argues that the questions posed were proper in that they sought to elicit testimony "to test [Stern's] veracity and to probe her own affirmative defense of a lack of willfulness," as well as her basis for stating that she reasonably anticipated litigation with Plaintiff.  (*Id.* at 6-7).  Plaintiff further contends that counsel's conclusory invocation of work-product protection was insufficient to justify asserting the privilege.  (*Id.*)  As for questions four and five, Plaintiff claims they are "straightforward factual questions" that do not implicate the work-product doctrine.  (ECF No. 155 at 7).

On reply, Defendants contend that the questions implicate Stern's prior or present mental impressions and legal opinions made in anticipation of—or, in fact, during litigation, and thus are shielded by the work-product doctrine.  (ECF No. 157 at 2).  As for any questions inquiring into Stern's pre-suit mental impressions and legal opinions, Defendants contend that Stern reasonably anticipated litigation with Plaintiff as early as 2016, due to "Plaintiff's inflammatory words and his associations with 'alt-right' leaders . . ." and the notion that "other faculty, staff, and students

3

would protest . . . ." (ECF No. 157 at 9).

### III.    LEGAL STANDARD – THE WORK-PRODUCT DOCTRINE

The work-product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

The doctrine itself "shelters the mental processes of the attorney, providing a privileged area within which [the attorney] can analyze and prepare [the] client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 & n.11 (1975)). The party asserting work product protection bears the burden to show the doctrine applies. *See Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir.1982).

Rule 26(b)(3) specifically refers to protection afforded to "documents and tangible things . . . ." Fed. R. Civ. P. 26(b)(3). However, the parties do not dispute that the work-product doctrine can be invoked in response to a deposition question on the basis that the question improperly seeks to reveal an attorney's mental impressions, legal theories, and/or legal opinions and conclusions concerning the instant case. (*See* ECF Nos. 149 at 4 & 155 at 1-2). Indeed, courts within and outside of this Circuit have concluded that the work-product doctrine is not limited to protecting mental impressions found in documents or things. *See Ford v. Phillips Electronics Instruments Co.*, 82 F.R.D. 359, 360-61 (E.D. Pa. 1979) ("The Rule [26(b)(3)] in no way implies that mental

4

impressions not embodied in documents are otherwise discoverable. Such a reading of the Rule would be contrary to the comments of the Advisory Committee on the 1970 amendments to the Federal Rules of Civil Procedure: 'The courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories . . . .'").

The work-product doctrine applies to restrict deposition questioning that could reveal an attorney's opinions, mental processes, or legal theories. *See Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 372 (E.D. Pa. 1988) ("a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation."); *Ford*, 82 F.R.D. at 360-61 (same); *see also Orthobond Corp. v. Burel*, 2023 WL 3867245, at *7 (D.N.J. June 7, 2023) (granting motion for a protective order relating to subpoena served on an attorney for deposition finding, in part, that the testimony would violate the work-product doctrine); *Gebremariam v. Mulugeta*, 2008 WL 11464732, at *5 (D. Minn. Apr. 14, 2008) (collecting various cases applying work-product doctrine in the deposition context). In sum, the work product doctrine provides "near absolute protection from discovery . . . [for] mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," *In re Cendant Corp*, 343 F.3d at 663 (quoting *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)), even if they arise in the context of a deposition. *See Ford*, 82 F.R.D. at 360-61.

IV.   **DISCUSSION**[4]

To properly invoke the work-product doctrine, Defendants must show that Plaintiff's deposition questions sought to reveal Stern's "mental impressions, conclusions, opinions, or legal theories concerning the instant litigation," *Hydramar*, 119 F.R.D. at 372, and prepared in anticipation of, or during, litigation. Against that backdrop, the Court considers the disputed questions.[5]

**DISPUTED QUESTION 1**[6]

> **Q:** What is your understanding of whether or not allegedly racist speech is protected or not, if any?
> **A:** I – that goes to my attorney-client privilege.
> **Q:** That goes – your understanding goes to your attorney-client privilege?
> **A:** Yes. I believe you are trying to elicit –
> **[Mr. Kelly]:** are you going to sustain that Mr. Haefner?
> **Mr. Haefner:** Here's the issue, Mr. Kelly. If you ask the witness, as general counsel of NJIT, everything she knows about the First Amendment, and she tells you 15 things she knows about the First Amendment, especially in the context of Jason Jorjani and allegations of racist speech from Glenda Gilmore, seems to me you then have a complete picture of everything the witness knows about First Amendment and extramural speech.
> **Mr. Kelly:** Not necessarily.
> **Mr. Haefner:** I see that as the problem.
> **Mr. Kelly:** Well, that, though is a question of fact. You might be able to

---

[4] Plaintiff's opposition papers declare, without detailed argument or explanation, that Defendants have waived work-product protection based on their affirmative defenses and prior witness testimony that they acted in good faith and without willfulness. (*See* ECF No. 155 at 4). As a threshold matter, this passing reference to alleged waiver lacks the specifics necessary to properly raise and present an argument. *See, e.g.*, *United States v. Hoffecker*, 530 F.3d 137, 157 (3d Cir. 2008) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments, as [defendant]'s did.") *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)), *superseded by regulation on other grounds as stated in*, *Rad v. Att'y Gen. United States*, 983 F.3d 651, 668 n.13 (3d Cir. 2020); *Read v. Profeta*, 397 F. Supp. 3d 597, 633 n.27 (D.N.J. 2019) ("arguments raised in passing . . . but not squarely argued, are considered waived"). Putting aside this deficiency, the Undersigned previously ruled that Defendants' affirmative defenses and prior deposition testimony did not waive any privilege or place the advice of counsel at issue (*see* ECF No. 132 at 13, 15-17). District Judge Martini affirmed that decision. (*See* ECF No. 163). Accordingly, the Court rejects Plaintiff's waiver argument.

[5] Defendants repeatedly state that they also object to some of the disputed questions on admissibility grounds in that the questions seek to have a fact witness provide an expert opinion regarding legal issues. (*See* ECF No. 157 at 4, 13, 16). Whether or not Defendants' assertion is true, the only issue before the Court is whether defense counsel's objections to the disputed questions should be sustained based on the invocation of the work product doctrine.

[6] The Disputed Questions have been underlined.

>deduce things from that fact, but that's fair game.  As sanctimonious and scared as the privilege allegedly is, it's narrowly construed.
>**Mr. Haefner:** Right.  But if you find out what an attorney knows, what their mental impressions are, that seems to be work product, especially within the context – I mean, I let her answer the question, do you know about the First Amendment, yes, generally.  I let her answer these general questions.  But now we're at a level of specificity, where disclosure of these kinds of questions seems to inextricably lead to a disclosure of attorney work product in the nature of attorney opinion.
>**Mr. Kelly:**  I see Ms. Stern nodding eagerly there.

(Transcript of Stern Deposition ("Tr.") at 86:19-88:10, attached to Declaration of Marc D. Haefner, Esq. ("Haefner Decl.") as Exhibit A; ECF No. 150).

**Decision**:  The Court finds that disputed question 1 does not implicate the work-product doctrine; rather, it asks, generally, whether racist speech is protected by the First Amendment.  As Defendants point out, Stern ultimately answered disputed question 1 as confirmed by this Court's review of the deposition transcript.  (*See* Tr. at 91:8-11) ("Well, I would answer that generally that there's issues between racist speech and antidiscrimination law with regard to what can and can't be said.").  To that end, Defendants contend not only did Stern answer the question but defense counsel did not object to the question before she ultimately answered it. (*See* ECF No. 157 at 11). Accordingly, the Court considers the dispute regarding disputed question 1 resolved.

**DISPUTED QUESTION 2**

>**Q:** Are you not aware that, at least since 1969, allegedly racist speech has been protected under the First Amendment?
>**Mr. Haefner:** I mean, that's not the law, but you can answer the question.
>**A:** I wouldn't agree with that wholesale characterization.  No.
>**Q:** How would you disagree with it, madam?
>**Mr. Haefner:**  Again, Mr. Kelly, now, I mean, you're asking this generally, not in the context of Jason Jorjani, correct?
>**Mr. Kelly:**  That's right.
>**Mr. Haefner:**  You can go ahead and answer your understanding of racist speech into the First Amendment, to the extent you have an answer.
>**A:** Well, I would answer that generally that there's issues between racist speech and antidiscrimination law with regard to what can and can't be said.
>**Q:** But clearly, that would've had no application here; correct?

7

> **Mr. Haefner:** Again, we're asking – now you're asking about her specific mental impressions in regard to these issues.  She's instructed not to answer.
> **Mr. Kelly:** Well, we got to get Judge Allen on the [phone].

(Tr. 90:17-91:20).

**Decision**:  Disputed question 2 asks Stern to reveal her present legal opinions and mental impressions regarding the interplay between racist speech and antidiscrimination law, (Tr. 90), as they relate to Plaintiff's speech and Defendants' actions at issue in this litigation.  The work product doctrine clearly protects against disclosure of current mental impressions and legal conclusions about the issues and claims at the heart of this litigation.  *See Hydramar*, 119 F.R.D. at 372; *see also Ford*, 82 F.R.D. at 360-61.  For those reasons, defense counsel's objection to disputed question 2 is **sustained**.

### DISPUTED QUESTION 3

> **Q:** Do you see that document?
> **A**: Yes
> **Q:** Okay.  Again, the question is, do you see that email from Mr. Haduri to be a threat to Jason Jorjani's First Amendment freedoms?
> **A:** No
> **Q:** Why not?
> **Mr. Haefner:** Objection.  I'm going to instruct the witness not to answer, on the same basis that we've previously discussed.

(Tr. at 100:2-11).

**Decision**:  Defense counsel's objection to disputed question 3 is **sustained**.  Again, answering this question would require Stern to reveal her current mental impressions and legal opinions regarding the legal issues that pertain to Plaintiff's First Amendment claims.  As a result, work-product protection applies.  *See Hydramar*, 119 F.R.D. at 372; *see also Ford*, 82 F.R.D. at 360-61.

### DISPUTED QUESTION 4

> **Q:** Now, your office oversaw this investigation into the OAQ matter, did it

> not?
> **A:** I – there was no investigation.  Rather, there were attempts to help him file properly.
> **Q:** <u>Wasn't there a review of his OAQ being conducted by Christine Li and by yourself</u>?
> **Mr. Haefner:** Objection.  I'm going to instruct the witness not to answer the role of general counsel in ---
> **Mr. Kelly:** Please mark that for a ruling as well.

(Tr. at 112:13-24).

**Decision**:  This question asks about factual information, specifically whether Stern and Li conducted a review of Jorjani's OAQ.  Answering that question would not reveal the mental impressions or opinions of counsel.  The work-product doctrine does not protect factual inquiry about whether Stern did or did not conduct a review.  *See, e.g., Koch Materials v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121-22 (D.N.J. 2002) (although the work product doctrine protects against the disclosure of protected documents or communications, it does not protect the underlying facts); *Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 518 (D.N.J. 1987) (same).  Accordingly, defense counsel's objection to disputed question 4 is **overruled**.

### DISPUTED QUESTION 5

> **Q:** <u>Isn't it true that the general counsel's office considered Jorjani's OAQ to be an ongoing ethics matter, at that point in time depicted in Exhibits 11, 12, and 13</u>?
> **Mr. Haefner:** Objection to the form of the question.  I'm going to instruct the witness not to answer as to the position of general counsel's office on the matter.
> **Mr. Kelly:** Please mark that for a ruling.

(Tr. at 113:9-18).

**Decision**:  The question asks for the specific legal position of the Office of General Counsel at the time depicted in three exhibits from Stern's deposition—Exhibits 11, 12, and 13—all of which are emails dated April 20, 2017.  (*See* Haefner Cert., Exs. D-F; ECF No. 150).  Plaintiff contends that the work-product doctrine does not apply to ethical matters as compared with legal

9

matters. According to Plaintiff, "[i]f these were ethics matters in the regular course of business, rather than legal issues, there is no basis for any privilege." (ECF No. 155 at 7).

Plaintiff's argument misses the mark because it is based on the false assumption that compliance with ethics rules and regulations cannot be legal issues. Indeed they can be as it is an attorney's job to determine the legal implications, if any, of ethical matters, including regulations. Moreover, the Court rejects Plaintiff's contention that Stern's mental impressions and legal opinions in April 2017 are not protected by the work-product doctrine because she did not reasonably anticipate litigation with Jorjani at that time (*see* ECF No. 155 at 4). Stern testified that she anticipated potential litigation with Jorjani as early as December 2016. (ECF No. 157 at 7). Given the nature of the alleged speech at issue and the reaction of both the NJIT community and the broader outside community to Jorjani's speech, the Court concludes that it was reasonable for Stern to anticipate litigation with Jorjani in April 2017. *See Maertin*, 172 F.R.D. at 148. Thus, the Court finds the work product doctrine protects against such disclosure. *See Ford*, 82 F.R.D. at 360-61. Therefore, defense counsel's objection to disputed question 5 is **sustained**.

### DISPUTED QUESTION 6

> **Q:** Well, but if its extramural speech, it's not discrimination within the university, by definition, correct?
> **Mr. Haefner:** Objection to the form of the question.
> **A:** Not correct.
> **Q:** Not correct. Well, in this case it was; correct?
> **Mr. Haefner:** She's not going to answer questions that are specifically about her thoughts and mental impressions on this case. So we can make a list of these to present to Judge Allen at the end, perhaps, about these sort of attorney-client, work product, mental impression questions.

(Tr. at 177:17-178:6).

**Decision**: For the same reasons this Court sustained defense counsel's objection to disputed question 2, the Court **sustains** defense counsel's objection to disputed question 6. *See*

*Ford*, 82 F.R.D. at 360-61.

## V. CONCLUSION

For the reasons set forth above, the Court **OVERRULES IN PART AND SUSTAINS IN PART** defense counsel's objections.  In particular, the Court **SUSTAINS** the objections to disputed questions 2, 3, 5, and 6 and **OVERRULES** the objection to disputed question 4.  Plaintiff is allowed an additional fifteen (15) minutes to depose Stern, limited in scope to disputed question 4 and any follow up questions regarding underlying facts regarding any such OAQ review, but no inquiries into Stern's mental impressions, legal conclusions, legal opinions, and/or legal theories. Alternatively, Plaintiff may serve Stern with a deposition request by written questions about the foregoing limited subject matter, pursuant to Federal Rule of Civil Procedure 31.  This limited additional deposition must be completed **on or before February 15, 2024**. The Court finds that Stern answered Disputed Question 1, and therefore, the dispute over that question is moot.

No other discovery shall be permitted consistent with the parties' prior representations that fact discovery is otherwise completed.  As required by the Court's December 18, 2023 Text Order, (ECF No. 167), the parties shall submit a joint letter by **January 30, 2024**, addressing whether Plaintiff's counsel intends to further depose Stern by February 15, 2024, consistent with the rulings herein, and confirming whether expert discovery is complete so that the Court can issue a briefing schedule for filing motions for summary judgment.

**SO ORDERED**.

s/Jessica S. Allen<br>
**Hon. Jessica S. Allen**<br>
**United States Magistrate Judge**

cc:  Hon. William J. Martini, U.S.D.J.