UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JASON JORJANI,

        Plaintiff,

v.

NEW JERSEY INSTITUTE OF
TECHNOLOGY et al.,

        Defendants.

No. 18-cv-11693 (WJM)

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter returns to the Court after the Third Circuit vacated and remanded the Court's grant of summary judgment to Defendants New Jersey Institute of Technology ("NJIT"), Joel Bloom, Kevin J. Belfield, Fadi P. Deek, Holly Stern, and Christine Li ("Individual Defendants"). 2024 WL 3594401 (D.N.J. July 29, 2024) (ECF No. 188) (the "First SJ Opinion"); *Jorjani v. N.J. Inst. Tech.*, 151 F.4th 135 (3d Cir. 2025) ("Third Circuit Opinion"). After a status conference, the parties renewed their cross motions for summary judgment on grounds not decided by the Third Circuit. ECF No. 203 ("Defendants' Motion"); ECF No. 202 ("Plaintiff's Motion"). The Court decides the motions without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

**I.    BACKGROUND**

The Court incorporates the statement of facts set forth in the First SJ Opinion and the Third Circuit Opinion. In short, Plaintiff was a non-tenured lecturer at NJIT who was recorded at a bar off campus commenting on matters of race, immigration, and politics. Plaintiff's Statement of Material Facts ("Pl.'s SMF"), ECF No. 121, ¶¶ 1-2, 69, 76; Defendants' Statement of Material Facts ("Defs.' SMF"), ECF No. 181-1, ¶¶ 1, 4-5. After the recording emerged, NJIT administrators sent an email condemning his comments, placed him on paid administrative leave, and, following an investigation by an outside firm, declined to renew his contract in 2018. *Id.* ¶ 35, 73; Pl.'s SMF ¶ 93, 95.

Plaintiff then filed suit in July 2018. ECF No. 1. Following motion practice, Plaintiff's claims of First Amendment retaliation against NJIT and Bloom, as well as conspiracy against the Individual Defendants, proceeded to summary judgment. ECF Nos. 30, 56. This Court granted summary judgment to all Defendants, concluding that Plaintiff's speech was not protected by the First Amendment under the balancing test established by *Pickering v. Board of Education*, 391 U.S. 563 (1968). First SJ Op. 19.

1

Applying *Pickering*, the Third Circuit vacated and remanded, reasoning that the "interest in Jorjani's speeches, writings, and discussions carries some significance to balance" compared to NJIT's "need 'as an employer' to promote 'the efficiency of the public services it performs.'" 151 F.4th at 142 (quoting *Pickering*, 391 U.S. at 568). The Third Circuit concluded that "[t]he minimal evidence of disruption that NJIT cites," which included that "[s]ome students and alumni disagreed with Jorjani's views," that there were "pointed letters denouncing Jorjani published by faculty in the pages of the student newspaper," and approximately "fifty emails received about Jorjani"—do "not outweigh even minimal interest in Jorjani's speech." *Id.* at 142-44. The Third Circuit emphasized the lack of "objective evidence that students questioned Jorjani's ability to teach, grade, or supervise his classes" and "evidence of specific student protests, upheaval, or unwillingness to abide by university policies," determining that the "the cited disputes among Jorjani and his colleagues are not disruption" under *Pickering* and "differ[] little from the ordinary operation of a public university." *Id.* The Third Circuit did not rule on the remaining elements and qualified immunity. *Id.* at 140 n.4.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Davenport v. Borough of Homestead*, 870 F.3d 273, 278 (3d Cir. 2017) (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)).

## III.  DISCUSSION

The Court begins with the Individual Defendants' motion for summary judgment based on qualified immunity. Defs.' Mot. 11-15. Defendants argue that the law was not clearly established, but even if it were, the Defendants acted objectively reasonably. *Id.* Because qualified immunity disposes of the entire case, the Court need not address Plaintiff's Motion for partial summary judgment against Defendants Bloom and Belfield for liability and Defendants' argument for summary judgment on the grounds that Plaintiff's contract would not have been renewed in the absence of his speech.

### A.  Qualified Immunity

Qualified immunity has two prongs: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Because the Third Circuit held that Plaintiff's speech is entitled to First Amendment protection under *Pickering*, the only dispute is whether the right was clearly established as of 2018, the date of the latest allegedly adverse action.

The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A right is clearly established only if "existing precedent must have placed the statutory or constitutional

2

question beyond debate." *Id.* at 741. Accordingly, clearly established law "must have a sufficiently clear foundation in then-existing precedent," such that the rule "is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). When there are no "factually analogous precedents of the Supreme Court and the Third Circuit," courts "examine persuasive authorities, such as [the Third Circuit's] nonprecedential opinions and decisions from other Courts of Appeals," as well as district court cases. *James v. N.J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020); *Peroza-Benitez v. Smith*, 994 F.3d 157, 165-66 (3d Cir. 2021) ("We may also take into account district court cases."). A case's nonprecedential status "renders it useless as precedent." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 451 (3d Cir. 2020).

Based on this framework, the Court (1) defines the right at issue, (2) considers whether there is binding precedent clearly establishing that right, and then (3) evaluates whether there is a "robust consensus of cases of persuasive authority in the Courts of Appeals" and district courts. *Eades v. Wetzel*, 841 F. App'x 489, 491 (3d Cir. 2021).

### 1.    Defining the right

At the outset, the Court must define the right at issue. *See Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017) (noting the importance of defining the right at issue). The Court must "frame the right 'in light of the specific context of the case, not as a broad general proposition.'" *Peroza-Benitez*, 994 F.3d at 165 (quoting *Saucier*, 533 U.S. at 201). Courts should "define the right with greater specificity" at summary judgment than at the pleadings stage. *Int'l Sec., LLC v. Berry*, No. 24-2207, 2025 WL 3124646, at *3 (3d Cir. Nov. 7, 2025). However, "[e]ven when the general rule has long been clearly established (for instance, the First Amendment bars retaliation for protected speech), the substantive legal doctrine on which the plaintiff relies may facilitate summary judgment" when "there may be doubt as to the illegality of the defendant's particular conduct." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). The Court must frame the right at issue in a manner that encompasses all material aspects of the case in the appropriate context. *See Reichle v. Howards*, 566 U.S. 658, 665 (2012) (in a case involving an allegedly retaliatory arrest, defining the right as "not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause"); *accord Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018).

For example, in a religious liberty case involving an inmate, the Third Circuit adopted a middle-ground framing of the right as the "right to engage in prayer free of substantial, deliberate, repeated, and unjustified disruption by prison officials," which encompasses both the plaintiff's "portrayal of the harm he experienced" and the "[d]efendants' failure to tie their behavior to any legitimate penological interest." *Mack v. Yost*, 63 F.4th 211, 230 (3d Cir. 2023). Similarly, in a case involving the suspension of a security license before a hearing, the Third Circuit defined the right as whether "it violated due process to temporarily suspend a private security agency's business license, pending a post-deprivation hearing, after the officer obtained proof that the agency violated multiple

3

licensing and reporting requirements related to public safety." *Int'l Sec.*, 2025 WL 3124646, at \*3. And in *HIRA*, the Third Circuit rejected a "general constitutional rule that government officials cannot interfere with the free exercise of religion," instead framing the right to encompass the allegedly unconstitutional conduct: whether there is "any precedential case prohibiting legislators from speaking against the sale of state-owned property or from extending preferential treatment to certain recipients of government contracts." *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 191 (3d Cir. 2021).

In the specific context of speech-based retaliation, the Third Circuit has emphasized the nature of the retaliation and the context of the employee's speech. *See McKee v. Hart*, 436 F.3d 165, 172-73 (3d Cir. 2006) (noting the "dearth of precedent of sufficient specificity (and factual similarity to this case) regarding a public employee's First Amendment right to be free from retaliatory harassment by his or her employer at the time"); *see also Jensen v. Brown*, 131 F.4th 677, 694 (9th Cir. 2025) ("It is insufficient simply to show that the generic First Amendment right to free speech or the right to be free from speech-based retaliatory discharge was clearly established." (citation modified)). Likewise, in a retaliation case involving complaints about governmental conduct, the Third Circuit articulated a "sufficiently specific expression of the right at issue" as "the right of a public employee to be free from retaliatory discharge for making statements to an elected official that were unrelated to the public employee's job duties and critical of the official's policies." *Trent v. Cnty. of Somerset*, No. 22-2891, 2024 WL 4144403, at \*5 (3d Cir. Sept. 11, 2024) (collecting cases regarding the firing of an employee for speech critical of a public official).

Accordingly, Plaintiff's cases are not sufficiently specific. *See* ECF No. 206 ("Plaintiff's Opposition"), at 7-8. Although *Keyishian v. Board of Regents*, 385 U.S. 589 (1967), and *Kunda v. Muhlenberg College*, 621 F.2d 532, 547 (3d Cir. 1980), establish that academic speech is generally protected, neither case addresses the extent of constitutional limits on speech. *See Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) ("A public employer accordingly may impose speech restrictions that are necessary for efficient and effective operations"); *Jorjani*, 151 F.4th at 143 n.9 (distinguishing *Kunda*); *see also Est. of DeRosa v. Murphy*, No. 25-1283, 2026 WL 185076, at \*5 (3d Cir. Jan. 23, 2026) ("On their own, these abstract principles do not provide clear notice that Defendants' conduct would violate the [Plaintiffs'] rights.").

Based on these cases, the Court must frame Mr. Jorjani's speech right in a manner that encompasses all the material components of this case: (1) his status as an educator;[1] (2) the nature and context of his speech; and (3) the resultant disruption. The Court adopts

---

[1] Mr. Jorjani's status as a teacher is important in defining the right at issue here. *See Jorjani*, 151 F.4th at 143 (noting that "challenges to 'employee harmony'" are "irrelevant inside the university where professors serve the needs of their students, not fellow academics"); *Munroe*, 805 F.3d at 473 (emphasizing the speech interests connected with plaintiff's status as a teacher compared to those of a business and operations manager).

the following framing: whether it was clearly established for a teacher to speak outside the workplace on non-workplace matters of public concern free from retaliation where the speech caused minimal disruption that differed little from the ordinary operations of the workplace. This framing applies the context and facts of this case to the material elements of the right at issue. *See Jorjani*, 151 F.4th at 141-42 (articulating the elements of *Pickering* balancing). With this right defined, the Court turns to the precedent in 2018.

        2.     *Binding law*

Clearly established law exists when "the legal principle established in a precedential case must 'clearly prohibit the official's conduct in the particular circumstances before him.'" *HIRA*, 991 F.3d at 191 (quoting *Wesby*, 583 U.S. at 581) (citation modified). A precedential case must be "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63; *accord Rossiter v. City of Phila.*, 674 F. App'x 192, 196 (3d Cir. 2016). When the law was not clearly established at the time, qualified immunity is proper because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although the Third Circuit Opinion clearly establishes as of 2025 the extramural free speech rights of university professors when faced with legally minimal disruption, it does not resolve "the state of the law at the relevant time period." *See Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018).

This Court cannot identify any binding case protecting a public employee's extramural speech *unrelated* to the workplace before now, much less speech of a teacher, particularly where there was some evidence of disruption. Instead, as of 2018, it was clearly established that a public employer could not retaliate against an employee for extramural speech *related* to workplace criticism. *See Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 993-94 (3d Cir. 2014) (holding that speech that "purport[ed] to expose the malfeasance of a government official with whom [the plaintiff] has no close working relationship—is exactly the type of speech deserving protection" and collecting cases involving employee complaints). *McGreevy v. Stroup* illustrates this point, as there, the protected speech involved advocacy to and criticism of governmental agencies. 413 F.3d 359, 362 (3d Cir. 2005). The *McGreevy* court identified a string of precedential cases protecting speech involving criticism of the government or internal employee matters, not purely extramural speech unrelated in any way to any governmental entity. *Id.* at 367 (citing *Czurlanis v. Albanese*, 721 F.2d 98, 108, 100 (3d Cir. 1983) (criticism of a supervisor and governmental efficiency); *Monsanto v. Quinn*, 674 F.2d 990, 991 (3d Cir. 1982) (criticism of the government); *Trotman v. Bd. of Trs. of Lincoln Univ.*, 635 F.2d 216, 219 (3d Cir. 1980) (faculty criticism of university policies)). So too here, as Plaintiff's speech did not concern objections to government impropriety.

Even without a directly on point case, the Court must consider two important principles in this context: (1) whether Defendants identified any "legitimate countervailing

5

interests" and (2) whether "the balance of cognizable interests weighs so heavily in an employee's favor." *McGreevy*, 413 F.3d at 367.

First, Defendants here point to multiple legitimate countervailing interests, unlike in *McGreevy*. *Contrast* Defs.' Mot. 14-15 (referring to the "influx of communications" relating to Mr. Jorjani and the perceived disruption to the community), *and Jorjani*, 151 F.4th at 142-44 (acknowledging "NJIT's need as an employer to promote the efficiency of the public services it performs" and its "interest in providing a non-denigrating environment" (citation modified)), *with McGreevy*, 413 F.3d at 367 (reversing a grant of summary judgment on clearly established law grounds, highlighting the lack of "any legitimate countervailing interests in limiting" the speech).

Second, as of 2018, it was not beyond debate that *Pickering* balancing weighed "so heavily" in Mr. Jorjani's favor. *See Jorjani*, 151 F.4th at 142-44 (recognizing that NJIT identified some evidence of disruption, including that "[s]ome students and alumni disagreed with Jorjani's views," that there were "challenges to 'employee harmony,'" and there was a "minor uptick in communications"). Only a few years prior, the Third Circuit in held that qualified immunity was appropriate in a case where a teacher's blog posts about "work stuff" (in the teacher's own words) was unprotected under *Pickering* balancing. *Munroe*, 805 F.3d at 458, 480. That case also generated a dissent that balanced the interests differently, showing that the law on *Pickering* balancing in an academic context was not clearly established as of then. *Id.* at 483-84 (Ambro, J., dissenting); *see also People of Three Mile Island v. Nuclear Regul. Comm'rs*, 747 F.2d 139, 147 (3d Cir. 1984) (referencing the presence of a dissent and affirming qualified immunity on clearly established law grounds). The Individual Defendants lacked the benefit of the Third Circuit's wisdom in this case, which concluded for the first time in a precedential opinion that extramural speech unrelated to the workplace was protected in light of the evidence of disruption that Defendants presented. *See Jorjani*, 151 F.4th at 141-42; *Cordero v. Kelley*, No. 23-1815, 2026 WL 777959, at *1-2 (3d Cir. Mar. 19, 2026) (per curiam) (affirming a grant of qualified immunity for lack of clearly established law (second appeal) after vacating and remanding the district court's prior decision finding no material fact dispute (first appeal)).

Based on this survey of case law, the Court concludes that there was no sufficiently specific binding case law clearly establishing Mr. Jorjani's speech rights as of 2018.

### 3.    *Persuasive law*

Next, the Court turns to persuasive authority in the other circuits and in the district courts of this Circuit. The Court does not consider the approach of some circuits that emphasizes that the mere application of *Pickering* balancing makes it near-impossible for the right to be clearly established. *See McGreevy*, 413 F.3d at 366 (disagreeing with "decisions of our sister circuits which hold that because *Pickering*'s constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered clearly established for the purposes of the *Harlow* qualified immunity standard" (citation modified)). Instead, the Court must determine whether in this context, there is "space for good faith

6

disagreement" under the then-existing law. *Zaloga v. Borough of Moosic*, 841 F.3d 170, 177 (3d Cir. 2016).

There has been an uptick in circuit law since 2018. Recently, the Ninth Circuit, in a similar retaliation case, held in a precedential opinion that student discomfort and anger was insufficient disruption when compared to a professor's speech. *Reges v. Cauce*, 162 F.4th 979, 1004 (9th Cir. 2025) (holding that under *Pickering* balancing, the university employee's interest in speech outweighed the demonstrated disruption).[2] A few years ago, the Sixth Circuit held that the refusal to follow the university's policy to refer to students by their preferred pronouns was protected speech. *Meriwether v. Hartop*, 992 F.3d 492, 498, 510 (6th Cir. 2021) (recognizing that universities may not "discipline professors, students, and staff any time their speech might cause offense"). Although these other circuits point in favor of Plaintiff, these published decisions came out after the relevant events, underscoring that until recently, the law was unsettled.

Within the Third Circuit, other district courts considering unpopular but potentially provocative or disruptive speech under *Pickering* have found the speech to be unprotected. *Compare, e.g., Dennis v. Bd. of Educ. of S. Orange-Maplewood*, No. 04-cv-1218, 2006 WL 8457607, at *6 (D.N.J. Aug. 28, 2006) (concluding that "wearing [a] racially offensive pin and demanding that students pick sides is not protected speech because such actions triggered disharmony between Black and White co-workers, and among [a teacher's] students"); *with Fenico v. City of Phila.*, 755 F. Supp. 3d 602, 637 (E.D. Pa. 2024) (granting summary judgment to all defendants after conducting a *Pickering* analysis regarding police officers' speech about race relations, immigration, and other hot-button topics, emphasizing the "disruption actually or likely caused"). These cases show a lack of clear consensus at the district court level before the Third Circuit Opinion regarding extramural speech on topics traditionally seen as offensive or provocative, where there was some showing of disruption.

Therefore, the Court concludes that there was no consensus of persuasive authority protecting the extramural speech of an educator on topics unrelated to the workplace, where there was a showing of some, albeit legally minimal, disruption, until long after the relevant events in this case. This lack of consensus, combined with the lack of binding authority, compels the Court to **grant** qualified immunity to all Individual Defendants. Additionally, Defendants correctly note that Plaintiff fails to mention any facts involving Individual Defendants Li, Stern, and Deek, so qualified immunity is appropriate for them independently. *See* ECF No. 208 ("Defendants' Reply"), at 7; *Brown v. Armenti*, 247 F.3d 69, 79 (3d Cir. 2001) (granting qualified immunity "because no actual constitutional violation was alleged"); *Minor v. Del. River & Bay Auth.*, 70 F.4th 168, 172 (3d Cir. 2023) (requiring the district court to analyze each individual's conduct separately).

---

[2] Judge Thomas partially dissented, concluding that *Pickering* balancing favored the university, further demonstrating that the law remains unsettled. *Reges*, 162 F.4th at 1006.

7

### B.    Claim Against NJIT

Finally, Plaintiff's claim against NJIT as a public entity derives from *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), and its progeny, which permit damages suits against municipalities and certain state entities where, *inter alia*, there is an official policy or practice, or where the state entity ratified the decision of its subordinates. *See Yan Yan v. Penn State Univ.*, 529 F. App'x 167, 172 (3d Cir. 2013) (applying *Monell* to First Amendment claims against a state university); *Park v. Temple Univ.*, 757 F. App'x 102, 108 n.11 (3d Cir. 2018) (recognizing that "[t]he only possible theory of liability against Temple" University is based on *Monell*). A *Monell* claim cannot proceed absent a constitutional claim against an individual defendant. *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). As pleaded, Plaintiff's First Amendment claim against NJIT depends exclusively on a ratification theory. *See* Am. Compl., ECF No. 30, ¶¶ 47-50 (alleging that "Defendant NJIT (through the Board of Trustees) ratified Defendant Bloom's actions, which were unconstitutional" and describing NJIT's actions vis-à-vis its Board of Trustees, the official policymaker on behalf of NJIT, *id.* ¶ 6d, as ratification). Therefore, because all Individual Defendants have qualified immunity, Plaintiff cannot pursue his claim against NJIT. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (affirming dismissal of claims against a county where qualified immunity was granted against all individual defendants based on the lack of clearly established law); *Groenewold v. Kelley*, 888 F.3d 365, 374 (8th Cir. 2018) (affirming dismissal of a claim against state defendants where there was no underlying constitutional violation due to qualified immunity); *see also Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 219, 224-25 (3d Cir. 2004) (affirming a *sua sponte* grant of summary judgment where, as here, the issue was purely legal, the record was fully developed, and the failure to give notice did not prejudice the non-moving party, who had the ability to present all relevant evidence in opposition).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**. An appropriate Order follows.

DATE: April 20, 2026

_____
WILLIAM J. MARTINI, U.S.D.J.

8